UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 1:12-cv-22439-MGC

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA, a sovereign nation and
Federally recognized Indian tribe,

          Plaintiff,

vs.

BILLY CYPRESS; DEXTER WAYNE
LEHTINEN, ESQUIRE; MORGAN STANLEY
SMITH BARNET; JULIO MARTINEZ;
MIGUEL HERNANDEZ; GUY LEWIS,
ESQUIRE; MICHAEL TEIN, ESQUIRE; AND
LEWIS TEIN, PL, A PROFESSIONAL
ASSOCIATION,

          Defendants.

_____/

**DEFENDANTS, GUY LEWIS, ESQUIRE, MICHAEL TEIN, ESQUIRE,
AND LEWIS TEIN, PL'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

      Defendants Guy Lewis, Esquire ("Lewis"), Michael Tein, Esquire ("Tein"), and Lewis Tein, PL ("Lewis Tein") (collectively, "Lewis Tein") request the Court to dismiss Plaintiff's Second Amended Complaint pursuant to Fed.R.Civ.P. 12 for failure to state a claim upon which relief can be granted.

## INTRODUCTION

      Plaintiff, the Miccosukee Tribe of Indians of Florida (the "Tribe"), has advanced a scandalous and baseless pleading against its former attorneys, Lewis Tein, that attempts to state a claim sounding in the federal and Florida Racketeer Influenced and Corruption Organization Act ("RICO"), conspiracy to commit RICO, fraud, and breach of fiduciary duty.

      The Tribe echoes buzz words enumerated within the relevant statutes, but has completely failed to identify a single, specific fact upon which they base their claims against Lewis Tein.

Rather, the Tribe advances broad, conclusory, and outrageous allegations of deceit and conspiracy that ring hollow. Notably, this Court already found that the Tribe did not sufficiently advance its RICO claim with requisite particularity when it issued its October 10, 2012 Order Granting in Part and Denying in Part Defendants' Guy Lewis, Esquire, Michael Tein, Esquire, and Lewis Tein, PL's Motion to Require Plaintiff to File a RICO Case Statement (DE 55). Pursuant to that Order, this Court required the Tribe to amend its complaint so as to state the RICO claim with sufficient specificity.

Although the Second Amended Complaint is longer, it suffers from the same defect that warranted this Court's October 10 Order. Despite listing hundreds of invoices purporting to identify legal services rendered to the Tribe, juxtaposed with a litany of Lewis and Tein's alleged household purchases, the Second Amended Complaint does not identify a single incident of purported fraud. The allegations do not provide any basis upon which Lewis or Tein can defend themselves. Furthermore, because the Court has already given the Tribe the opportunity to allege their RICO claim with the requisite particularity, there is no basis for giving the Tribe yet another opportunity. Simply stated, if the Tribe had the ability to advance a claim for fraud or RICO, it would have done so. The Court should dismiss this case with prejudice as to Lewis Tein.

## ARGUMENT

I.   **THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION OVER THE UNDERLYING ESSSENCE OF THE ENTIRE CAUSE OF ACTION.**

As a threshold matter, the Court should dismiss this lawsuit for lack of jurisdiction because it originated out of an intra-tribal dispute regarding the scope of the Chair's authority within the Tribe to spend tribal funds, and federal courts have explained that an Indian tribe "like other sovereigns, is immune from suit for alleged RICO violations." *See Smith v. Babbitt*, 100 F.3d 556, 559 (8th Cir. 1996) ("We agree with the district court that this is essentially an intra-tribal dispute. As such, this court does not have jurisdiction to consider this appeal. Consequently, we find that this case is most properly left to tribal authorities…."). *Cf. Snowbird Constr. Co. v. United States*, 666 F. Supp. 1437, 1440–41 (D. Idaho 1987) (holding that tribal sovereign immunity did not bar RICO suit only after concluding that "sue and be sued" clause in tribal ordinance "unequivocally expressed" waiver of sovereign immunity).

As Chairman, Cypress was a member of the Miccosukee Business Council and a member of the General Council. (DE 75 at 3). According to the Second Amended Complaint, "[t]he authority of the [Tribe] is vested in the Miccosukee General Council." (DE 75 at 3). The Tribe further alleges that "[a]s the heads of the finance department, Defendants MARTINEZ and HERNANDEZ knowingly approved the invoices of Defendants LEWIS, TEIN, and LEWIS TEIN, P.L. containing exorbitant and fictitious legal fees, subject only to CYPRESS's final approval." (Second Amended Complaint at ¶33, DE 75 at 10; See also Second Amended Complaint at ¶¶40-41, DE 75 at 12). The Tribe also alleges that Cypress was "the elected Chairman of the [Tribe] during the relevant period of time, which is 2005 through and including January 2010. In this capacity, Defendant CYPRESS oversaw, controlled, supervised and had unrestricted access and control over all the financial funds and records of the [Tribe] which are the subject of this lawsuit." (DE 75 at 4).

Therefore, the central underlying issue before the Court is whether Cypress improperly abused his tribal authority by using tribal funds in a manner within his discretion. This Court's jurisdiction does not extend to the dispute between Cypress and his Tribe or the manner through which Cypress spent tribal funds that he controlled. Such a dispute is appropriately adjudicated by tribal authorities under tribal law. Neither Lewis nor Tein are members of the Tribe, but all allegations against them center around the underlying question of whether Cypress improperly hired, directed or paid Lewis Tein under Tribal law. Therefore, this dispute is not about Lewis Tein, but instead concerns a dispute between Cypress, other Tribal officials, and the Tribe. *See In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litigation*, 340 F.3d 749, 763 (8th Cir. 2003) (finding federal courts lack jurisdiction to hear RICO suit based on "a form of relief that the federal courts cannot provide, namely, resolution of the internal tribal leadership dispute.").

In *Smith*, Tribal Plaintiffs alleged that an executive governing body of a tribe (the "Defendant Community") and individual members of that executive body (the "Defendant Individuals") violated several federal statutes, including RICO, and the Community's Constitution. *See Smith*, 875 F. Supp. at 1356. The court concluded it had no basis to assert jurisdiction over an intra-tribal dispute regarding membership—a subject matter governed by tribal code—despite the reference to RICO and mail fraud. *Id*. at 1366 *judgment aff'd*, *appeal dismissed in part*, 100 F.3d 556 (8th Cir. 1996).

As in *Smith*, the essence of the RICO allegations against Lewis Tein in this case revolve entirely around allegations of misconduct by the Tribe's Chair and between a Tribal subgroup—the Business Council and General Council, (DE 75 at 3)—and involve a matter falling entirely within Tribal jurisdiction, the Tribe's finances. The Tribe has essentially elevated an intra-tribal dispute to a federal claim by recasting a challenge to Cypress's authority that is governed by tribal law as a RICO claim, placing Lewis Tein and other defendants unfairly in the middle. *See Smith*, 875 F. Supp. at 1366 (even when "couched in terms…of RICO violation," an intra-tribal dispute is "within the exclusive jurisdiction and sovereign power" of the Tribe). "The Plaintiffs cannot circumvent the Community's exclusive jurisdiction simply by recasting these determinations as RICO violations." *See Smith*, 875 F. Supp. at 1366. The Tribe should not be allowed to cast such a wide net by artful pleading when the essence of the underlying claim is whether Cypress betrayed his obligations to the Tribe. Accordingly, this Court should dismiss the RICO and conspiracy claims for lack of subject matter jurisdiction.

II.   **THE SECOND AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR FRAUD OR RICO BECAUSE IT MERELY ADVANCES CONCLUSORY, IMPLAUSIBLE ALLEGATIONS AND FAILS TO SATISFY THE REQUISITE LEVEL OF SPECIFICITY.**

   A.   **General allegations must be plausible and not mere legal conclusions.**

Ordinarily, to state a claim in federal court, a plaintiff must give the defendant notice of the basis for the cause of action. Fed.R.Civ.P. 8(a). Generally, notice pleading is all that is required. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082. But the United States Supreme Court has established parameters upon the application of this paradigm. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). In applying *Twombly,* the Eleventh Circuit Court of Appeals explained:

> First, the [United States Supreme] Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint **is inapplicable to legal conclusions**." *Id.* Second, restating the plausibility standard, the Court held that "where the well-pleaded facts do not permit the court to infer more than the **mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief**.'" *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). The Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles: 1) **eliminate any allegations in the complaint that are merely legal conclusions**; and 2) where there are well-pleaded factual allegations, "assume their veracity and then **determine whether they plausibly give rise to an entitlement to relief**." *Id.*

*American Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir. 2010) (emphasis added).

The Eleventh Circuit also cited *Twombly* and a more recent decision, *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), for the conclusion that "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *American Dental Ass'n,* 605 F.3d at 1290 (citing *Iqbal* at 1951–52 (quoting *Twombly,* 550 U.S. at 567)). Under *Twombly* and *Iqbal,* a federal court cannot blindly accept at face value those factual allegations that are implausible or for which there are obvious alternative explanations.

As the Supreme Court explained in *Twombly,* "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting that conclusory allegations are not accepted as true for purposes of a motion to dismiss). Moreover, "when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly,* 540 U.S. at 570. As in *Twombly* and *Iqbal,* the Court should reject the legal conclusions throughout the Second Amended Complaint and reject those claims that have not crossed "the line from conceivable to plausible."

Further, in addition to the requirement that general civil allegations meet a plausibility standard, a plaintiff is subject to an even higher pleading standard when alleging a fraud or RICO claim or, as in this case, a RICO claim that is based entirely upon an underlying predicate of alleged fraudulent conduct. To satisfy Federal Rule of Civil Procedure 9(b), the "plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1380–81 (11th Cir. 1997). This means that to withstand a Motion to Dismiss, the Tribe had an obligation to plead with the requisite specificity set forth in Rule 9(b) and, as set forth in *Twombly,* legal conclusions or allegations that are implausible need not be accepted as true.

**B.      Like claims for fraud, RICO must be pled with a heightened degree of specificity.**

Like claims for fraud, "civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity under Rule 9(b)." *Am. Dental Ass'n,* 605 F.3d at 1290-91. Further, when a plaintiff alleges the same underlying conduct to support both a fraud and civil RICO violation, the plaintiff must allege the fraud underlying both causes of action with specificity. *See Liquidation Comm'n of Banco Int'l, S.A. v. Renta,* 530 F.3d 1339, 1355-56 (11th Cir. 2008) (holding that RICO predicate acts must be pled with specificity when "the same misrepresentation forms the basis of both the fraud and the non-fraud claim."); *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997); *Bivens v. Roberts*, 208CV026, 2009 WL 891859, at *5 (S.D. Ga. March 31, 2009). "The critical concern reflected in Rule 9(b) is that the allegations sufficiently alert Defendants "to the 'precise misconduct with which they are charged.'" *Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1377 (S.D. Fla. 2012) (citations omitted).

**C.      The entire lawsuit against Lewis Tein is premised upon a faulty underlying premise that falls far short of satisfying the requisite level of specificity for a fraud or RICO claim.**

The Second Amended Complaint is loaded with vague, conclusory, and implausible allegations that lack any legal merit and do nothing more than place two respected attorneys and their law firm in a negative light. Essentially, the Tribe advances a single set of facts to support the fraud, RICO, and breach of fiduciary duty claims. According to the Tribe, Lewis Tein performed unnecessary legal work combined with "some legitimate legal work" and charged "unreasonable and excessive legal fees." (DE 75 at 125). The Tribe further contends that Lewis Tein performed legal services for Defendant Cypress that was "non-tribal work" paid for by the Tribe and "disguised and reflected as 'loans.'" (DE 75 at 125). The Tribe also alleges that Lewis Tein knew that these loans "were fictitious and that in practice they had only been created to justify the excessive and unreasonable legal fees authorized by Defendant Cypress." (DE 75 at 126). The final component of this alleged "secret scheme" is that Lewis Tein would "return some of their unreasonable and excessive legal fees" to Defendant Cypress so that he "could support his gambling habit, invest in real estate, purchase luxury vehicles, and pay a small fraction of the

millions of dollars for personal items that he charged to several charge cards issued by the Tribe." (DE 75 at 127).[1]

The Second Amended Complaint does not contain the requisite specificity to state a claim for either fraud or RICO, and this deficiency is particularly troubling because this Court already deemed the Tribe's RICO allegations insufficient and required it to file an amended complaint (DE 55 at 3). The Tribe's efforts to bolster its RICO claim through the Second Amended Complaint relies upon volume rather than substance. Moreover, as in *Twombly,* the allegations are completely implausible. The Tribe has concocted a gripping tale for purposes of catching media attention, but fails to meet this Court's requirements under Fed.R.Civ.P. 8 and *Twombly,* or Fed.R.Civ.P. 9, which requires fraud and fraud-based RICO claims to be alleged without mere legal and accusatory conclusions.

Furthermore, the Tribe relies upon the identical allegations of mail fraud to support its RICO claims. The Tribe alleges that Lewis Tein violated 18 U.S.C. § 1962 by committing a pattern of "racketeering activity," codified in 18 U.S.C. §1961. These same allegations of mail fraud pursuant to 18 U.S.C. § 1961 constitute the "unlawful activity" predicates required to state a claim for the other two acts of "racketeering activity" the Tribe alleges Lewis Tein to have committed: money laundering in violation of 18 U.S.C. § 1956, and engaging in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957. All three of these "racketeering activity" statutory predicates are based upon nothing more than the Tribe's conclusory assertion that Lewis Tein fraudulently performed and billed for "fictitious" legal services through the mail (*See, e.g.*, DE 75 at 123-24, 127, 148-53, 172, 173-76).

These conclusory allegations of mail fraud provide no detail or information as to any of the components of the so-called scheme. Even by the most liberal standard, the Second Amended Complaint read *in para materia,* does not establish with specificity the precise statements, documents or misrepresentations that are fraudulent; the time, place or person responsible for the statement; or the content and manner in which the statements misled the Tribe. And the generic

---

[1] The Tribe's conclusory allegations that Lewis Tein "further[ed] the common purpose of the Enterprise" through "a money laundering/kickback scheme" involving "exorbitant fees for fictitious, unnecessary, inflated, substandard and exaggerated legal work to funnel a part thereof to Defendant CYPRESS" without the "knowledge or consent" of the Tribe are strewn throughout the Second Amended Complaint. (*See, e.g.*, DE 75 at 9, ¶¶ 29-30).

7

assertion that Lewis Tein gained money from the Tribe for performing legal services through the so-called scheme is nothing more than an attempt to shoehorn imprecise allegations of fraud or breach of fiduciary duty into a RICO claim, without identifying which funds Lewis Tein procured through these alleged wrongful acts.

Specifically, the Tribe alleges that Cypress was "the elected Chairman of the [Tribe] during the relevant period of time, which is 2005 through and including January 2010. In this capacity, Defendant CYPRESS oversaw, controlled, supervised and had unrestricted access and control over all the financial funds and records of the [Tribe] which are the subject of this lawsuit." (DE 75 at 4). As Chairman, Cypress was a member of the Miccosukee Business Council and a member of the General Council. (DE 75 at 3.). "The authority of the [Tribe] is vested in the Miccosukee General Council." (DE 75 at 3). Nowhere in the over three hundred pages of the allegations in the Complaint does the Tribe ever suggest how it is that Lewis Tein knew that Cypress was assigning both "legitimate" and allegedly "fictitious" legal work to them or how they knew that Cypress—the representative of the Tribe authorized to conduct the Tribe's business with Lewis Tein—was secretly combining Lewis Tein's legitimate legal services with "fictitious" legal services that Cypress intended to use to defraud the Tribe.

As the Tribe alleges, "Defendant CYPRESS, with the intention of perpetrating a scheme to enrich himself at the expense of the MICCOSUKEE TRIBE, arbitrarily recruited and maintained a group of individuals, which were strategically chosen based on their profession and skills to further and conceal the common purpose of the Enterprise."  Accepted as true, those allegations give rise to the equally plausible inference that, while Cypress had the intent as the mastermind of the scheme, Lewis Tein could have believed they were being hired in good faith for the purpose they were alleged to have been hired: to provide professional (legal) services. *See also* (DE 75 at 8) ("Defendant CYPRESS arbitrarily and without proper approval from the MICCOSUKEE TRIBE, recruited Defendant LEWIS and Defendant TEIN to simultaneously represent him and the MICCOSUKEE TRIBE in legal matters.").

When the Tribe complains regarding "excessive" legal fees for "substandard" work, the "obvious alternative explanation" that suggests lawful conduct and defeats the Tribe's claims against Lewis Tein is that the Tribe is complaining about legal services that Cypress, its own representative, hired, authorized, and paid on the Tribe's behalf. *See American Dental Ass'n*, 605 F.3d at 1290. Thus, and as noted above, Lewis Tein is merely caught in the middle of an intra-

tribal dispute, and the Court should not allow this lawsuit to proceed against them based upon conclusory allegations of wrongdoing that lack plausibility as alleged. (DE 75 at 12; 125; 150; and 173). But even if the Court deemed the conclusory assertions of wrongdoing in the Second Amended Complaint to be "plausible" by *Twombly* and *Iqbal's* standards, they do not state a claim because there is not a single instance of specific wrongdoing alleged. Rather, the Tribe repeats the same conclusory mantra throughout the pleading: that Lewis Tein performed "unnecessary legal work, which was combined with some legitimate legal work" and accepted payment through loans that Lewis Tein knew were "fictitious" in order to funnel money back to Billy Cypress (DE 75 at 9, 10, 12, 14, 55, 82, 101, 125-28, 131, 150-54, 173-76, 178, 199). Yet the entire pleading is devoid of any identification of a date, amount, account, transaction, check or instance to indicate Lewis Tein funneled money anywhere. This is the central mechanism through which Lewis Tein supposedly defrauded the Tribe; however, it does not pass muster for purposes of stating a fraud or RICO claim.

Critically, the Tribe does not identify a single legal matter that was "fictitious" or which funds constituted "disguised" loans. Instead, the Tribe alleges that Lewis Tein represented the Tribe from 2005 through 2010 and identifies approximately 358 invoices for legal services during that period, without distinguishing between those that constitute allegedly "unnecessary" legal work and those that correspond with the admittedly "legitimate" legal work. (DE 75 at 12; 106-122; 125; 150; 173). The Tribe then juxtaposes the invoices with a list of household and automotive purchases by Lewis and Tein and alleges that Lewis and Tein used the funds the Tribe paid them in order to purchase the listed items. The Tribe then contends that "upon information and belief, Defendant Lewis, Defendant Tein, and Defendant Lewis Tein, P.L. knowingly failed to report all or some of the income reflected in the 1099 forms in their tax return." (DE 75 at 128).  Merely identifying dates of payment and a total amount of legal fees paid, followed by a list of purchased items, does not approach the requisite level of specificity to allege fraud or RICO. This shotgun approach is the antithesis of Rule 9(b) requirements.

Similarly, the Tribe's allegation that Lewis Tein performed "substandard and exaggerated legal work," does not state a predicate for fraud or RICO. *See Baumer v. Pachl*, 8 F. 3d 1341, 1344 (9th Cir. 1993) (rejecting a RICO claim and concluding that "[w]hether [the attorney] rendered his services well or poorly, properly or improperly, is irrelevant . . . ."). But even if such accusations did support such claims, the Tribe does not identify what legal work was

substandard or exaggerated or <u>why</u> the work was substandard. See (DE 75 at 9). The point of pleading with specificity is to enable Lewis Tein to defend against these scandalous allegations. *See Koch v. Royal Wine Merchants*, Ltd., 847 F. Supp. 2d 1370, 1377 (S.D. Fla. 2012) ("The critical concern reflected in Rule 9(b) is that the allegations sufficiently alert Defendants "to the 'precise misconduct with which they are charged.'") (citations omitted). Lewis Tein cannot defend itself from a claim that it performed fictitious, substandard or exaggerated legal work when the Tribe does not differentiate between the "legitimate" or "fictitious" representation or specify any legal work that was "substandard," or "exaggerated."

A recent decision, *American Dental Assoc. v. Cigna Corp.,* 605 F.3d 1283 (11th Cir. 2010), is instructive and should guide this Court's analysis. In that case, the Eleventh Circuit Court of Appeals affirmed Southern District Chief Judge Fredrico A. Moreno's Order dismissing a RICO claim when the plaintiff failed to plausibly or particularly allege a pattern of racketeering activity predicated on a scheme to commit acts of mail and wire fraud. Specifically, the Court examined whether the plaintiff satisfied Fed.R.Civ.P. 9(b). *Id.* at 1286. The plaintiffs in *Cigna* were comprised of a group of dentists who alleged that dental insurance company defendants engaged in a "systematic fraudulent scheme to diminish payments" to the plaintiff-dentists.[2] *Id.* The plaintiffs therein alleged that Cigna engaged in mail or wire fraud in order to intentionally defraud the plaintiffs of funds and used mails or wires in furtherance of that scheme. *Id.* at 1290. The Eleventh Circuit, analyzing the sufficiency of the allegations, noted that because the claim was based upon a pattern of racketeering consisting entirely of predicate acts of mail and wire fraud, plaintiffs needed to meet both the "plausibility criteria" set forth in *Twombly* and *Iqbal* and Fed.R.Civ.P. 9(b)'s heightened pleading standard. *Id.*

Like the case at hand, the plaintiffs in American Dental alleged "a single scheme consisting of identical conduct in which all Defendants agreed to participate." *Id.* at 1291. Thus, the Eleventh Circuit held that plaintiffs were required to "plausibly and particularly allege facts showing related instances of mail and wire fraud" and "plausibly allege facts showing that a conspiracy created the alleged scheme." *Id.* In affirming dismissal, the Eleventh Circuit noted

---

[2] Like in this case, Judge Moreno gave the plaintiffs more than one opportunity to reallege their RICO claims with appropriate specificity. When plaintiffs failed to do so, he dismissed the complaint with prejudice, as Lewis Tein respectfully requests the Court to do in this case. *American Dental Ass'n,* 605 So. 2d at 1288.

that "[t]hough the complaint sets out at least six examples of e-mail and letter communications between Defendants and Plaintiffs . . . Plaintiffs do not point to a single specific misrepresentation by Defendants . . . nor do they allege the manner in which they were misled by the documents, as they are required to do under Rule 9(b)." *Id.* at 1291-92.

"We have held that a plaintiff must allege that some kind of deceptive conduct occurred in order to plead a RICO violation predicated on mail fraud." *Id.* at 1291. The Eleventh Circuit then rejected the plaintiffs' allegations as insufficient and noted that "Plaintiffs' complaint provides a list of mailings and wires, without ever identifying any actual fraud. If the specific misrepresentations do not exist, it follows that the complaint has not alleged a right to relief that is 'plausible on its face.'" *Id.* at 1292 (citing *Twombly,* 550 U.S. at 570). The Eleventh Circuit then held that "we cannot infer a scheme-driven deception from a complaint that provides no details of fraud or conspiracy." *Id.* at 1293.

The Tribe's claims of deception and fraud fall within the same category of allegations rejected by this Court and the Eleventh Circuit in *American Dental.* Merely setting forth a list of invoice numbers and advancing wild allegations that those invoices represent some legitimate legal work and some fictitious legal work, all as part of a grand conspiracy to route funds away from the Tribe and back to Billy Cypress, are grossly deficient. As in *American Dental,* The Second Amended Complaint does not identify a single instance of so-called fraudulent conduct or "fictitious" legal representation, and the invoices do not portend any fraudulent conduct whatsoever. Accordingly, the Court should dismiss the fraud and RICO claims contained within the Second Amended Complaint with prejudice.

## III.   THE TRIBE DOES NOT ALLEGE THE NECESSARY ELEMENTS OF A RICO CLAIM

Even if the Court concludes that the Tribe alleged fraud and RICO violations with the requisite level of specificity, the Second Amended Complaint remains deficient on several additional grounds warranting dismissal. The elements of a RICO civil action are: (1) violation of 18 U.S.C. § 1962; (2) injury to business or property; and (3) that the violation caused the alleged injury. *See Bill Buck Chevrolet, Inc. v. GTE Florida, Inc.*, 54 F. Supp. 2d 1127, 1132 (M.D. Fla. 1999) *aff'd*, 216 F.3d 1092 (11th Cir. 2000). To state a valid claim for a violation of civil RICO a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that (5) results in an injury to business or property (6) by reason of the

11

substantive RICO violation. *See Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006). Additional deficiencies mar the Second Amended Complaint with respect to each of the foregoing elements.

**A.    The Second Amended Complaint fails to adequately allege that Lewis Tein participated in "Conduct" for purposes of the civil RICO statute because the provision of legal services does not, as a matter of law, constitute "Operation and Management" of an Enterprise**

The RICO claim fails because the Tribe does not plead "conduct" under 18 U.S.C. § 1962 as required. To adequately plead the "conduct" element of a RICO claim, a party must do more than allege mere knowledge of or participation in the alleged enterprise; a party must allege facts sufficient to establish that each of the named defendants participated in the operation and management of the enterprise alleged in the complaint. *Reves v. Ernst & Young*, 507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993).

The Tribe's conclusory allegations that Lewis, Tein, and Lewis Tein "went beyond traditional legal representation, by actively participating in the kickback scheme and effectively managing or operating the affairs of the Enterprise," (DE 75 at 123-24 ¶105(b), 149 ¶124(b) and 172 ¶139(b)), are not sufficient to withstand a motion to dismiss. *See Comcast of S. Fla. II, Inc. v. Best Cable Supply, Inc.*, 07-22335-CIV, 2008 WL 190584, at *8 (S.D. Fla. Jan. 22, 2008) (finding conclusory allegations that the defendants "conducted the affairs of the Enterprise" and "operat[ed] the enterprise" were not sufficient to survive a motion to dismiss because they do not indicate actual participation in the operation or management of the enterprise). *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1189 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.").

Attorneys cannot be held liable under Civil RICO for the performance of legal services, even if those services involved fraud, because the performance of legal services does not constitute "operation and management" of an Enterprise. *See Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F. Supp. 2d 1356, 1381 (S.D. Fla. 2010); *Design Pallets, Inc. v. Gray Robinson, P.A.*, No. 6:07-cv-655-Orl-3KRS, 2008 WL 3200275, at *5 (M.D. Fla. Aug. 5, 2008). *See also Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997); *Baumer v. Pachl*, 8 F. 3d 1341, 1344 (9th Cir. 1993).

Section 1962(c) makes it unlawful, in pertinent part:

"for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

In order for a person to "'conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), [he or she] must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993). Concomitantly, "[i]n order to survive a 12(b)(6) motion, a plaintiff must offer specific factual assertions as to how the defendants participated in the **operation or management** of the RICO enterprise." *See Heise v. Porcelli*, 8:07-CIV-1866-T-24-MAP, 2008 WL 4190270, at *3 (M.D. Fla. Sept. 8, 2008) (citing *In re Managed Care Litigation*, 298 F. Supp. 2d 1259, 1276-77 (S.D. Fla. 2003)) (emphasis added). "The key to RICO liability is actual participation in the operation or management of the enterprise, not job titles or mere employment." *Comcast of S. Fla. II, Inc. v. Best Cable Supply, Inc.*, 07-22335-CIV, 2008 WL 190584, at *8 (S.D. Fla. Jan. 22, 2008).

At bottom, the allegations of Lewis Tein fail because, other than a conclusory assertion that Lewis Tein was part of the enterprise, this cannot be reconciled with the allegation that Lewis Tein performed "legitimate" legal work. "[A]n attorney or other professional does not conduct an enterprise's affairs through run-of-the-mill provision of professional services." *Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997). *See Design Pallets, Inc. v. Gray Robinson, P.A.*, No. 6:07-cv-655-Orl-3KRS, 2008 WL 3200275, at *5 (M.D. Fla. Aug. 5, 2008) (holding evidence of a law firm's "actions in facilitating the scheme" as legal counsel to the enterprise are not sufficient to demonstrate operation and management of the enterprise itself). *See also, e.g.*, *University of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (if an accounting firm provides "materially deficient financial services" that "ultimately benefit the enterprise does not mean that [it] becomes liable under RICO as a result").

An attorney's representation of an alleged illegal enterprise does not amount to a RICO violation because it does not "cross the line between traditional rendition of legal services and active participation in the directing of the enterprise." *Design Pallets, Inc.*, 2008 WL 300275, at *5 (M.D. Fla. Aug. 5, 2008) (holding that, even if the law firm breached its duty of candor by

13

failing to disclose the scheme and by making false statements to its client, even if true, did not rise to the level of a RICO violation).

**B.   The Tribe cannot show that Lewis Tein participated in a "pattern" of "racketeering activity"**

To allege a valid "pattern of racketeering activity" for purposes of the RICO statute, a plaintiff must allege that: "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

The "predicate acts" of "racketeering activity" are defined in 18 U.S.C. § 1961(1), which enumerates criminal statutes, with the violation of any one of the statutes constituting "racketeering activity" for purposes of a RICO claim under 18 U.S.C. §1962. A "pattern of racketeering activity" is statutorily defined as two or more of the "predicate acts" of racketeering activity, enumerated in §1961(1), that occur within a 10 year period. *See* 18 U.S.C. § 1961(5). Thus, to survive a motion to dismiss, a plaintiff must allege facts sufficient to support at least two of the predicate acts of racketeering activity. *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 949 (11th Cir. 1997). The Second Amended Complaint fails because the Tribe has failed to plead the pattern of racketeering activity with requisite specificity and failed to establish the existence of continuity between predicate acts it alleges Lewis Tein to have committed.

**1.   The Tribe has not alleged predicate acts of racketeering activity with adequate specificity**

To adequately plead "racketeering activity," a plaintiff must allege two or more predicate acts of racketeering with sufficient specificity. *See Am. Dental Ass'n*, 605 F.3d at 1290-91; *See, e.g.*, *Smart Sci. Lab., Inc. v. Promotional Mktg. Services, Inc.*, 807-CV-1554-T-24EAJ, 2008 WL 2790219, at *6 (M.D. Fla. July 18, 2008) (noting that absent sufficient factual allegations about a defendant's "involvement in specific acts of mail and wire fraud as required by Rule 9(b), Federal Rules of Civil Procedure," a plaintiff does not sufficiently allege the predicate acts necessary to maintain a claim). Acts of "racketeering activity" are defined with reference to specific criminal statutes enumerated in 18 U.S.C. § 1961(1).

The Second Amended Complaint is deficient as to this element because the Tribe does not allege "the time, place and person responsible for each act." *See, e.g.*, *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–82 (11th Cir. 1997); *Plunkett v. Poyner*, 75

14

Fed. R. Serv. 3d 811 (S.D. Fla. 2009); *Ageloff v. Kiley*, 318 F. Supp. 2d 1157, 1159 (S.D. Fla. 2004); *Durso v. Summer Brook Preserve Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1265–66 (M.D. Fla. 2008).

Further, while the Second Amended Complaint alleges violation of RICO in general conclusory terms, in that Lewis, Tein, and Lewis Tein are claimed to have "designed, agreed, and implemented a secret scheme for their mutual benefit and to the detriment of the Miccosukee Tribe," *see* (DE 75 at 124), there are no facts from which that conclusion can be properly inferred. The Tribe alleges only that "Defendant CYPRESS, with the intention of perpetrating a scheme to enrich himself at the expense of the MICCOSUKEE TRIBE, arbitrarily recruited and maintained a group of individuals, which were strategically chosen based on their profession and skills to further and conceal the common purpose of the Enterprise."  This transparent legal conclusion does not offer requisite specificity as to how, when, or where these professionals were "arbitrarily recruited"; and the allegations, accepted as true, at best only suggest the requisite scienter with respect to Defendant Cypress, who is the only defendant alleged to have the "intention," with the aim of "concealing the common purpose" of the claimed enterprise.

Moreover, if accepted as true, those allegations give rise to the equally plausible inference that, while Cypress had the intent as the mastermind of the scheme, Lewis Tein could have believed they were being hired in good faith for the purpose they were alleged to have been hired: to provide professional (legal) services. *See also* (DE 75 at 8) ("Defendant CYPRESS arbitrarily and without proper approval from the MICCOSUKEE TRIBE, recruited Defendant LEWIS and Defendant TEIN to simultaneous represent him and the MICCOSUKEE TRIBE in legal matters.").

Additionally, the Second Amended Complaint fails to present each predicate act of racketeering activity by number—"e.g., 'Predicate Act #1,' 'Predicate Act #2,' etc." as required. *See Koch*, 847 F. Supp. 2d at 1377 (S.D. Fla. 2012). It also fails to plead essential facts relevant to each predicate act such as: (1) the date and place of each alleged violation; (2) the identity of the precise individual at Lews Tein responsible for each allegedly fraudulent act; (3) the identity of the individual representing the Tribe to whom the allegedly fraudulent misrepresentation was made; (4) the specific act or legal services constituting the allegedly fraudulent transaction; (5) the precise misrepresentation made to the Tribe as part of that allegedly fraudulent provision of legal services and subsequent billing for those services; (6) the amount alleged to have been

fraudulently charged by Lewis, Tein, or Lewis Tein for the supposedly fraudulent legal services as contrasted to those that were "legitimate"; (7) any fax, e-mail, or telephonic communication constituting an inducement to retain legal services, the date of the supposed communication, the name of the maker (sender or speaker) of the communication, the name of the recipient, and the content of the allegedly fraudulent communication upon which the Tribe relied in connection with the alleged misrepresentation; and (8) if the mail or a private interstate common carrier was involved in the transaction, the specifics of that use. *See, e.g., Koch*, 847 F. Supp. 2d at 1377 (S.D. Fla. 2012) (dismissing RICO claim RICO violation that induced plaintiff to purchase wines at a price "far in excess of their true value"). *Cf. Aeropower, Ltd. v. Matherly*, 511 F. Supp. 2d 1139, 1150-51 (M.D. Ala. 2007) (finding Rule 9(b) particularity was met where plaintiff (1) identified each document by Bates stamp, provided (2) the date of each letter, invoice, facsimile or statement, (3) the name of the sender and recipient for each document, (4) the geographic location of each sender and recipient, and (5) a brief description of what the document was regarding).

Further, the same lack of specificity that makes the Second Amended Complaint deficient under Rule 9(b) also undermines the identification of predicate acts as required. For example, the Tribe alleges that defendants Martinez and Hernandez issued and sent Lewis Tein payment for "invoices containing fictitious and unnecessary legal work" (*see* DE 75 at 130-31, 154-55, 177, 178). But the Second Amended Complaint does not identify the specific time the mailings of invoices or payments occurred, whether those invoices or payments were sent via mail or private carrier, the precise items in each invoice that correspond to the allegedly "fictitious" or "unnecessary" legal work, or which itemized amounts of payment reflect the allegedly-"fictitious" or "unnecessary" services rendered. Without such specificity, the Tribe has failed to articulate predicate acts as required under RICO. *See Bivens*, 2009 WL 891859, at *7 (dismissing the RICO claim where none of the § 1961 predicate acts had the sufficient particularity required to state a valid mail fraud claim, including "the time the mailings occurred, the precise statements made in the mailings" and "the content of the mailings").

> **2.    The Second Amended Complaint fails to sufficiently allege scienter, which is a required element for each of the predicates the Tribe has alleged**

The Second Amended Complaint is also deficient because it does not allege the scienter element of each alleged predicate act with the necessary factual specificity. *See Bill Buck*

*Chevrolet*, 54 F. Supp. 2d at 1132-33 ("In the absence of allegations demonstrating that Defendant had the scienter necessary to commit mail or wire fraud, Plaintiff has not stated a RICO claim.").

A RICO plaintiff's allegations of scienter cannot be "merely conclusory and unsupported by any factual allegations." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997) (quoting *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989) (dismissing RICO conspiracy claim), *cert. denied*, 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990)).

All three of the statutory violations the Tribe alleges defendants Lewis, Tein, and Lewis Tein to have committed—mail fraud in violation of 18 U.S.C. § 1341, money laundering in violation of 18 U.S.C. § 1956, and engaging in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957—involve an element of scienter. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997). *See also*, *e.g.*, *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir.) (mail fraud under section 1341 requires intent to defraud), *cert. denied*, 502 U.S. 855, 112 S. Ct. 167, 116 L.Ed.2d 131 (1991); *United States v. Awan*, 966 F.2d 1415, 1424 (11th Cir. 1992) (section 1956 requires that the defendant "knew that the proceeds stemmed from felonious activity"); *United States v. Baker*, 19 F.3d 605, 614 (11th Cir.1994) (section 1957 "requires that the defendant know that the property is 'criminally derived'").

Because the Tribe's Second Amended Complaint fails to allege with adequate factual particularity a civil RICO violation based on three criminal predicates stemming from the same alleged misrepresentations, and because each alleged statutory predicate requires scienter to be pled as an element, this Court should dismiss the RICO claim against Lewis Tein.

3.     **The Second Amended Complaint fails to allege the requisite continuity between predicate acts**

To state a valid "pattern of racketeering activity" for purposes of alleging a RICO violation, a plaintiff must plead facts sufficient to demonstrate "continuity"—or "criminal conduct of a continuing nature"—that is either closed or open-ended. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 230, 109 S. Ct. 2893, 2896, 106 L. Ed. 2d 195 (1989). A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related

predicates extending over a substantial period of time. *Id.* at 242, 109 S.Ct. at 2902. *Cf.* (DE 75 at 7 ¶ 24 (alleging a "closed period of time, which extended from 2005 until 2010).

When the RICO allegations concern only a single scheme with a discrete goal, however, without any allegation that the purported scheme would extend to other persons or entities in the future, courts refuse to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1267 (11th Cir. 2004); *See Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992) (plaintiffs failed to establish continuity where the allegations were of a single scheme to accomplish a discrete goal, with no potential to extend to other persons or entities). *See also*, *e.g.*, *Efron v. Embassy Suites (P. R.), Inc.*, 223 F.3d 12, 18 (1st Cir. 2000) (noting that "the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims" supports the conclusion that there is no continuity).[3]

The Second Amended Complaint falls squarely within the principle that an alleged "scheme" that involves a singular objective, toward a singular, targeted "victim" does not sufficiently demonstrate the requisite continuity to state a claim under RICO. The Tribe alleges that Lewis Tein specifically targeted the Tribe and, through a five-year period charged excessive legal fees in order to perform some "legitimate" legal work and some "fictitious" legal work. Notwithstanding the other deficiencies outlined through this Motion, if accepted as true, the Tribe has attempted to articulate a specific method of conduct toward a specific entity. This fails to establish the continuity requirement of RICO and provides yet another basis for dismissing this pleading with prejudice.

---

[3] *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C.Cir.1995) (predicate acts occurring over three year period insufficient to allege pattern of racketeering when complaint alleged a single scheme with a single goal); *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 780 (7th Cir. 1994) (various factors besides temporal span should be considered in assessing continuity, including the number of victims, the presence of separate schemes, and the occurrence of distinct injuries); *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993) (in addition to duration, weighing "extensiveness" of the RICO scheme, including number of victims, number and variety of racketeering acts, whether the injuries caused were distinct, the complexity and size of the scheme, and the nature or character of the enterprise or the unlawful activity); *United States v. Pelullo*, 964 F.2d 193, 208 (3d Cir.1992) ("We have eschewed the notion that continuity is solely a temporal concept, though duration remains the most significant factor."); *U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1269 (7th Cir.1990) ("[I]t is not irrelevant, in analyzing the continuity requirement, that there is only one scheme." (internal quotation marks and citation omitted)).

## IV.  THE SECOND AMENDED COMPLAINT DOES NOT ESTABLISH A CONSPIRACY CLAIM.

The Second Amended Complaint fails to state a claim for RICO conspiracy because when a conspiracy count does not contain any additional allegations, once a primary RICO claim fails, the conspiracy to commit a RICO claim also fails. *Am. Dental Ass'n*, 605 F.3d 1283, 1296 n. 6 (11th Cir.2010); *Horace-Manasse v. Wells Fargo Bank*, N.A, 10-81623-CV, 2012 WL 1232016 (S.D. Fla. Apr. 12, 2012).

Additionally, the Tribe has failed to adequately allege that Lewis Tein participated in a conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d). *Carter v. MGA, Inc.*, 189 Fed. App'x. 893, 895 (11th Cir. 2006) (holding general allegations that defendants conspired and agreed with each other to violate 18 U.S.C. § 1962(c) with reference to violations described above were insufficient to maintain a claim for RICO conspiracy). Without facts to show how, or to create a reasonable inference that the defendants made an agreement, the Tribe's conclusory allegations that Lewis, Tein, and Lewis Tein conspired with each other are insufficient to survive a motion to dismiss. *See Jaharis*, 297 F.3d at 1198.

## V.  BECAUSE THE RICO COUNT IS THE SOLE BASIS FOR THIS COURT'S SUBJECT MATTER JURISDICTION, THIS COURT SHOULD DISMISS ALL REMAINING CLAIMS

As with the federal RICO count, the Second Amended Complaint's Florida RICO and RICO conspiracy counts (Counts VI and VII) are based on allegations of fraud, with the identical three statutory predicates enumerated in § 1961(1) alleged: violation of 18 U.S.C. §§ 1956, 1957 and 1341 (*See* DE 75 at 289-294; 296-299).

Because the Tribe uses the same predicates and makes the same allegations under Florida RICO as the Federal RICO statute, because the same deficiencies pursuant to 9(b) that plagued the federal RICO are simply re-alleged as part of the Florida RICO and RICO conspiracy counts, and because the Florida RICO statute is patterned on the Federal RICO statute, if the federal RICO and RICO conspiracy counts fail, the Florida Rico and Florida RICO Conspiracy Counts fail, too. *See Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1319 (11th Cir. 1998) ("Perceiving no reason for applying a different rationale to Count II [Fla. RICO] than the one we applied in rejecting Count I [RICO], we affirm the district court's decision granting judgment as a matter of law for the reasons we have affirmed its judgment on Count I.").

Finally, this Court must dismiss all remaining claims because the sole basis for federal court subject matter jurisdiction in this matter is the allegation of violation of the federal RICO statute, *see* DE 75 at 2). Because the Florida RICO and RICO Conspiracy counts fail, only state law claims remain:  Count IV, alleging Fraud (DE 75 at 206); Count V alleging Aiding and Abetting Fraud (DE 75 at 278); and Count IX alleging breach of fiduciary duty (DE 75 at 300). Accordingly, the court should dismiss all remaining claims as well. *See Koch*, 847 F. Supp. 2d at 1378 ("[H]aving found that Plaintiff's claim under the RICO Act must be dismissed, the Court must also dismiss the state law claims unless Plaintiff can independently establish personal jurisdiction with respect to those claims."). "[I]f the only jurisdictionally sufficient claim is dropped or dismissed, particularly if that occurs early in the litigation, the pendant claim should be dismissed as well." *Id.*

## CONCLUSION

For the reasons articulated herein, the Court should dismiss the Second Amended Complaint with prejudice for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

Respectfully submitted,
CARLTON FIELDS, P.A.

By:    /s/ Jack R. Reiter
Jack R. Reiter
Florida Bar No. 0028304
Paul A. Calli
Florida Bar No. 994121
Jeffrey Michael Cohen
Florida Bar No. 091495
Email: jmcohen@carltonfields.com
pcalli@carltonfields.com
pwatson@carltonfields.com
cbussone@carltonfields.com
miaecf@cfdom.net
*Attorneys for Defendants / Counter-Plaintiffs*
100 S.E. Second Street, Suite 4200
Miami, Florida  33131

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 19, 2012 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.


By:  /s/ Jack R. Reiter
       Jack R. Reiter
       Florida Bar No. 0028304

| | |
|---|---|
| **Bruce S. Rogow, Esquire**<br>**Tara A. Campion, Esquire**<br>Bruce S. Rogow, P.A.<br>500 E. Broward Blvd., Ste. 1930<br>Fort Lauderdale, FL 33394<br>Telephone: 954-767-8909<br>Facsimile: 954-767-1530<br>E-mail: brogow@rogowlaw.com<br>E-mail: tcampion@rogolaw.com<br>*Counsel for Defendant Morgan Stanley* | **Bryan T. West, Esquire**<br>**Tew Cardenas LLP**<br>1441 Brickell Avenue, 15th Floor<br>Miami, FL 33131<br>Telephone: (305) 536-1112<br>Facsimile: (305) 536-1116<br>E-mail: btw@tewlaw.com<br>*Counsel for Defendant Dexter W. Lehtinen,*<br>*Esquire* |
| **Manuel A. Avila, Esquire**<br>Manuel A. Avila, Esq.<br>& Associates, P.A.,<br>11120 N. Kendall Drive<br>Suite 200<br>Miami, Florida 33176<br>Telephone: (305) 249-1111<br>Facsimile: (305) 647-0686<br>E-mail: mavila@avilalegal.com<br>*Counsel for Defendant Julio Martinez* | **Robert O. Saunooke, Esquire**<br>SAUNOOKE LAW FIRM, P.A.<br>18620 SW 39th Court<br>Miramar, FL 33029<br>Telephone: 561-302-5297<br>Facsimile: 954-499-0598<br>E-mail: ndnlawyer@hotmail.com<br><br>*and*<br><br>**Steven M. Goldsmith, Esq.**<br>STEVEN M. GOLDSMITH, P.A.<br>5355 Town Center Road, Suite 801<br>Boca Raton, FL 33486<br>Telephone: 561-391-4900<br>Facsimile: 561-391-6973<br>E-mail: steve.goldsmith@sgoldsmithlaw.com<br>*Counsel for Defendant Billy Cypress* |
| **Scott Alan Lazar, Esquire**<br>Koltun & Lazar<br>7901 SW 67th Ave.<br>Suite 100<br>Miami, FL 33143<br>Telephone: (305)-595-6791<br>Facsimile: (305)-595-5400<br>E-mail: scott@koltunlazar.com<br>*Counsel for Defendant Miguel Hernandez* | **Bernardo Roman III, Esquire**<br>Tribal Attorney, Miccosukee Tribe of<br>Indians of Florida<br>P.O. Box 440021, Tamiami Station<br>Miami, Florida 33144<br>Telephone: (305) 894-5214<br>Facsimile: (305) 894-5212<br>E-mail: bromanlaw@bellsouth.net<br>*Counsel for Plaintiff* |