**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No. 12-CV-22439-COOKE/Bandstra

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA, a sovereign nation and
Federally recognized Indian tribe,

      Plaintiff,

vs.

BILLY CYPRESS; DEXTER WAYNE
LEHTINEN, ESQUIRE; MORGAN
STANLEY SMITH BARNEY, JULIO
MARTINEZ; MIGUEL HERNANDEZ;
GUY LEWIS, ESQUIRE; MICHAEL
TEIN, ESQUIRE; AND LEWIS TEIN, PL,
A Professional Association,

      Defendants.

_____/

**MICCOSUKEE TRIBE OF INDIANS OF FLORIDA'S RESPONSE IN OPPOSITION TO DEFENDANT BILLY CYPRESS' MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM AND SUPPORTING MEMORANDUM OF LAW AND JOINDER IN ALL RESPONSES TO MOTIONS TO DISMISS TO ALL OTHER DEFENDANTS**

COMES NOW Plaintiff, the Miccosukee Tribe of Indians of Florida (hereinafter, "the Miccosukee Tribe"), by and through the undersigned, and files this Response to Defendant Billy Cypress' (hereinafter, "Defendant Cypress") Motion to Dismiss Plaintiff's Second Amended Complaint For Lack of Subject Matter Jurisdiction and for Failure to State a Claim and Incorporated Memorandum of Law. Additionally, the Miccosukee Tribe hereby incorporates by reference, adopts, and realleges as if set forth fully herein the arguments made in all of the Miccosukee Tribe's Responses in Opposition to all Defendants' Motions to Dismiss. In Support of its Response the Miccosukee Tribe states:

1

**<u>INTRODUCTION</u>**

Defendant Cypress was the Chairman of the Miccosukee Tribe for over two decades. In his position as Chairman of the Miccosukee Tribe and one of the members of the Business Council, he was entrusted with the overall well-being of the Miccosukee Tribe and Tribal Members. In order to fulfill this intended role, Defendant Cypress oversaw, controlled, supervised and had access to all the financial funds and records of the Miccosukee Tribe which are the subject of this lawsuit. *See* Second Am. Compl, D.E. No. 75 at ¶ 6. The authority that was vested upon Defendant Cypress was by virtue of his position as Chairman and of being one of the members of the Business Council, and his actions were to inure to the benefit of the Miccosukee Tribe. In his role as Chairman, Defendant Cypress had a legal and fiduciary duty to maintain, protect and preserve the property of the Miccosukee Tribe. Second Am. Compl, D.E. No. 75 at ¶ 444. Unfortunately, Defendant Cypress converted this trust responsibility into "unrestricted access" to steal the hard earned money of the Miccosukee Tribe. Contrary to Defendant Cypress' contention that all the acts alleged against him in the present lawsuit were authorized and taken in his "official capacity" as the duly elected Tribal leader, in pursuing this unlawful course of action by lying, cheating, stealing and embezzling from the Miccosukee Tribe he went beyond the scope of his authority as Chairman. *See* Cypress Mtn. to Dismiss, D.E. No. 104 at 3.

On July 1st, 2010, the Miccosukee General Council, which is the governing body of the Miccosukee Tribe and is composed of adult members 18 years of age and over, acting in its official capacity at an official meeting, passed General Council Resolution No. MGC- 03-10, attached herein as Exhibit 1, where it determined that Defendant Cypress' use of tribal funds was "improper and unauthorized." The resolution states in relevant part:

Whereas, the Miccosukee Tribe conducted a review of its financial records and found improper and unauthorized use of Tribal funds by former Chairman Billy Cypress while a member of the Miccosukee Business Council. Whereas, the Miccosukee Tribe finds former Chairman Billy Cypress' conduct detrimental and harmful to the welfare of the Miccosukee Tribe and its members. Whereas, former Chairman Billy Cypress, shall reimburse the Miccosukee Tribe all unauthorized and improperly used funds. Whereas, former Chairman Billy Cypress, is forever barred of holding political office or a position in the Miccosukee Business Counsel. Whereas, the terms of this Resolution shall apply to any current or future member of the Miccosukee Tribe that engaged in unauthorized or improper use of Tribal funds.

It is farfetched for Defendant Cypress to argue that his misappropriation of funds of the Miccosukee Tribe was somehow within the exercise of his authority as Chairman. Cypress Mtn. to Dismiss, D.E. No. 104 at 2. The Miccosukee Tribe never gave Defendant Cypress "unrestricted access" to these funds. As Chairman, Defendant Cypress' authority was unrestricted only in the sense of acting in the best interests of the Miccosukee Tribe. The other named Defendants, not the Miccosukee Tribe, were the ones who knowingly, willfully, and improperly enabled Defendant Cypress' misappropriation of Tribal funds. *See generally* Second Am. Compl, D.E. No. 75. The credit card charges and cash withdrawals by Defendant Cypress served no Tribal purpose, and were specifically for his personal benefit and enjoyment. The Second Amended Complaint constantly reiterates that Defendant Cypress' actions forming the basis of the complaint were unauthorized and without the knowledge and consent of the Miccosukee Tribe. Second Am. Compl, D.E. No. 75 at ¶¶ 28, 29, 34, 35(c), 39, 40, 49, 106, 107, 108(e), 108(i), 125, 126, 127(e), 127(i), 140, 141, 142(e), 142(i),161, 196, 197, 441, 448 and 458(c). Any act which was not in pursuance of the Miccosukee Tribe's best interest was clearly beyond the scope of Defendant Cypress' authority as Chairman.

Defendant Cypress attempts to characterize this lawsuit as a Tribal political dispute and as a result, turns this Court into the political arena that he no longer enjoys at the Miccosukee

Tribe because he is banned from holding elected office within the Miccosukee Tribe.[1] Cypress Mtn. to Dismiss, D.E. No. 104 at 1; *see* General Council Resolution No. MGC-03-10, Ex. 1. Defendant Cypress' utter disdain for the Miccosukee Tribe is reflected by his outrageous explanation to the Internal Revenue Service, supported and argued by Defendants Guy Lewis, Michael Tein, and Lewis Tein, P.L. in defending Defendant Cypress, that the $11,508,304.71 withdrawn from ATM machines at various casinos across the United States was due to him testing the operation of the Class II machines. Tr. of Lucky Jerry Cypress Decl., 45-46, Sept. 26, 2012, attached as Exhibit 2.   Mr. Jerry Cypress also confirms that these withdrawals by Defendant Cypress could not have been loans because the amount for loans was limited. Ex. 2 18:1-25.

Defendant Cypress did not have "unrestricted access" to the funds described in this lawsuit.  Mr. Jerry Cypress, the current Treasurer for the Miccosukee Tribe and one of the members of the Business Council and former Lawmaker, unequivocally refutes this argument through his recent declaration, under oath, which shows that Defendant Cypress' expenses, like any other tribal employee, were specifically limited. Ex. 2 12:1-13: 22; 14:1-25. These specific limitations, which also applied to credit card charges, Ex. 2 14:1-22; 16:23-25; 17:1-2, were in effect during the relevant periods described in the Second Amended Complaint. Ex. 2 16:23-17:2.  Pursuant to tribal policy, the credit card statements would come to the finance department. Ex. 214:8-24. Mr. Jerry Cypress confirms that it was the Miccosukee Finance Department to which Defendant Cypress would have to account for expenses. Ex. 2 42:14-24. Mr. Jerry Cypress also confirms that neither Defendant Cypress' charge card expenses nor his

---

[1] Defendant Cypress quotes to the Miccosukee Tribe's Constitution and states that the Constitution is attached as Exhibit "A" to the Motion to Dismiss. Cypress Mtn. to Dismiss, D.E. No. 104 at 3. The Miccosukee Tribe would like to make note that there was no attachment to Defendant Cypress' Motion to Dismiss and that the quotation to the Miccosukee Tribe's Constitution was inaccurate.

business expenses were disclosed at the General Council Meetings. Ex. 2 50:23-25; 52:5-22; 54:18-25. The Miccosukee Tribe's policies that applied to the Miccosukee tribal officers and members of the tribe, applied equally to Defendant Cypress.. *See* Ex. 2 24:18-25:10. The following testimony was provided by Mr. Jerry Cypress on September 26, 2012,

[Direct Examination by I.R.S Agent James Furnas]

Q.     And do employees have to account for any advances that they get for expenses?

A.     They have three days to do the—I can't remembers what they called it, but they do have three days to submit the report.

Q.     Is that like a travel voucher?

A.     Yes.

Q.     So they have three days—and are they required to account to the tribe for their expenses?

A.     Yes.

Q.     So they're required to provide details of lodging?

A.     Well it is approved in advance where they're staying and how much they're going to be using.

Q.     Okay, and does the tribe advance money for that travel?

A.     Yes.

Q.     Okay, and they're required to account for how they use those advances?

A.     Yes.

Q.     Do the same policies apply to elected officials?

A.     Yes.

Ex. 2 12:18-13:17.

This lawsuit is not about an intratribal dispute, as alleged by Defendant Cypress. This lawsuit is about the Defendants' violations of federal and state law, corroborated by the Internal Revenue Service's finding that Defendant Cypress misappropriated Miccosukee Tribe funds, which have resulted in millions of dollars worth of damages to the Miccosukee Tribe. *See* United States' Mtn. to Den. Pets. To Quash, *Miccosukee Tribe v. United States*, No. 10-cv-21332 (S.D. Fla. June 1, 2010), attached as Exhibit 3.

## STANDARD OF REVIEW

In deciding a motion to dismiss "the Court must view the allegations in the complaint in the light most favorable to Plaintiff, consider the allegations in the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey,* 334 F. 3d 1246, 1247 (11th Cir.2003).

The test for dismissal of a claim based on subject matter jurisdiction "is whether the cause of action alleged is so patently without merit as to justify... the court's dismissal for want of jurisdiction." *Simanonok v. Simanono*k, 787 F. 2d 1517, 1519 (11th Cir. 1986) (quoting *Duke Power Co. v. Carolina Envt'l Study Group*, 438 U.S. 59, 70, 98 S.Ct. 2620, 2629 (1978)).

This is a facial attack on subject matter jurisdiction. In a facial attack "the challenger asserts that the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer,* 373 F. 3d 1035, 1039 (9th Cir. 2004). A facial attack to subject matter jurisdiction "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar,* 919 F. 2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.,* 613 F. 2d 507, 511 (5th Cir.1980), *cert. denied,* 449 U.S. 953, 101 S. Ct. 358.

## MEMORANDUM OF LAW

## I.  THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE MICCOSUKEE TRIBE'S SECOND AMENDED COMPLAINT

This Court has subject matter jurisdiction over this case as alleged in the Second Amended Complaint. This case is about whether Defendant Cypress' abuse of tribal authority and Defendants Martinez, Hernandez, Lewis, Tein, Lewis Tein P.L., Lehtinen, and Morgan Stanley's actions, in concert with Defendant Cypress and each other, constitute a violation of

RICO, conspiracy to commit RICO, civil theft, fraud, aiding and abetting fraud, Florida RICO, Florida RICO Conspiracy, embezzlement, breach of fiduciary duty, and fraudulent misrepresentation. There are no issues presented by the Second Amended Complaint that are outside this Court's jurisdiction.

### A.   The Claims Alleged Against Defendant Cypress Do Not Touch Upon Purely Intra-Tribal Matters

This Court has subject matter jurisdiction over all the claims alleged as to all Defendants, including Defendant Cypress. Defendant Cypress alleges that "this is a 'purely intramural matter' which is exclusively governed by the Tribe's customs and traditions." Cypress Mtn. to Dismiss, D.E. No. 104 at 7. An intra tribal dispute is that which involves a matter of tribal self governance and relates to the control of internal relations. *Montana v. United States*, 450 U.S. 544, 564 (1981). "Jurisdiction to resolve internal tribal disputes and to interpret tribal constitutions and laws lies with the Indian tribes and not the district courts." *United States v. Wheeler,* 435 U.S. 313, 323–36, 98 S.Ct. 1079 (1978). This case does not present a matter of tribal self governance and does not relate to the control of internal relations.

A federal law of general applicability, such as RICO, applies with equal force to Indians except if: "(1) the law touches 'exclusive rights of self-governance in purely intramural matters;' (2) the application of the law to the tribe would 'abrogate rights guaranteed by Indian treaties;' or (3) there is proof 'by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations." *Donavan v. Coeur d'Alene Tribal Farm*, 751 F. 2d 1113, 1113-16 (9th Cir. 1985) (quoting *United States v. Farris*, 624 F. 2d 890 (9th Cir. 1980), *cert. denied*, 449 U.S. 11, 101 S.Ct. 919 (1981)).

Defendant Cypress argues that his federal RICO violations against the Miccosukee Tribe are purely intramural matters and therefore the exception to the rule of general applicability

applies. Cypress Mtn. to Dismiss, D.E. No. 104 at 6 – 8. A tribal official's misappropriation of tribal funds does not create a "political question not justiciable by the federal courts." *Cheyenne-Arapaho Tribes of Okla. v. Beard*, 554 F. Supp. 1, 4 (W.D. Okla. 1980).

Defendant Cypress attempts to expand the definition of "purely intramural matters" to any matters involving an Indian Tribe and a tribal member or tribal official. Cypress Mtn. to Dismiss, D.E. No. 104 at 7. This is a clearly erroneous interpretation. The tribal self-government exception has been defined as applying to "conditions of tribal membership, inheritance rules, and domestic relations." *Donavan*, 751 F. 2d at 1116; *see Farris*, 624 F. 2d at 893. Courts have also found the following to be intra-tribal disputes: issues regarding an internal controversy among Indians over tribal government (*Motah v. United States*, 402 F. 2d 1 (10th Cir. 1968)); issues regarding the right to vote in tribal elections (*Harjo v. Kepple*, 420 F. Supp. 1110, 1117 (D.C. Dist. 1976); issues regarding which tribal council is rightly in place under the tribal constitution (*In re Sac and Fox Tribe of the Miss. in Iowa v. Bear*, 258 F. Supp. 2d 938 (N.D. Ia. 2003); election disputes between competing tribal councils over which council is authorized to govern tribe and casino (*In re Sac and Fox Tribe of Miss. in Iowa, Election Bd. v. Bureau of Indian Affairs*, 439 F. 3d 832 (8th Cir. 2006); issues regarding the appointment of a tribal official under tribal law (*Kaw Nation ex rel. McCauley v. Lujan*, 378 F. 3d 1139 (10th Cir. 2004); dispute between tribal members and members of the tribal council over who controls the financial assets of the tribe (*Wade v. Blue*, 369 F. 3d 407 (4th Cir. 2004); issues regarding the validity of a tribal resolution under tribal law (*Potts v. Bruce*, 533 F. 2d 527 (10th Cir. 1976); and criteria to determine if someone is of Indian blood (*Groundhog v. Keeler*, 442 F. 2d 674 (10th Cir. 1971). The RICO claims against Defendant Cypress cannot be categorized into any of the types of matters excluded by the rule of general applicability.

To accept Defendant Cypress' argument that the RICO violations against him are "exclusively governed by the Tribe's customs and traditions" would bring all acts, including the illegal ones alleged in the present case, committed by a tribal official, within the embrace of "tribal self-government." The *Donovan* Court did not agree with such a broad interpretation. *See generally Donovan,* 751 F. 2d 1113. Therefore, Defendant Cypress' misappropriation of the Miccosukee Tribe's funds which were used for: gambling and other personal expenses not only in Florida but also across state lines, namely in Mississippi, Nevada, Pennsylvania, Louisiana, New Mexico, North Carolina, New Jersey, Arizona; his purchases of luxury vehicles for personal use; and vacations throughout and outside of the United States, is not governed by the tribal self-government exception. *See Donovan,* 751 F. 2d at 1116 (The court determined that the operation of a farm which was selling produce on the open market and in interstate commerce is not an aspect of tribal self-government.).

In the alternative, if the Court finds that there is some intra tribal issue involved in this case, it is not purely an intra tribal dispute because the majority of the unauthorized and illegal conduct of the Defendants took place in non Indian country and the majority of the Defendants are non Indian. *See Goodface v. Grassrope*, 708 F. 2d 335 (8th Cir. 1983) (not an intra-tribal dispute because there were non Indian defendants and it involved the review of agency action by the federal government). Consequently, this Court's exercise of subject matter jurisdiction is not impaired by the tribal self-government exception.

**B.    Defendant Cypress Cannot Assert Sovereign Immunity Against The Miccosukee Tribe**

The crux of Defendant Cypress' Motion to Dismiss is that he is immune from suit under the doctrine of tribal sovereign immunity. Cypress Mtn. to Dismiss, D.E. No. 104 at 2, 4, 5, 9. This is a misguided theory because Defendant Cypress is being sued by the sovereign, the

Miccosukee Tribe. It would lead to an absurd result if tribal officials could pursue a pattern of misconduct against the tribe, such as the misconduct perpetrated by Defendant Cypress, and consequently shield themselves from suit by the tribe with tribal sovereign immunity. There is absolutely no legal authority for the proposition that a tribal official is immune from suit by the tribe. Defendant Cypress' claim of sovereign immunity includes a recitation of case law discussing the history and origins of tribal sovereign immunity. *See* Cypress Mtn. to Dismiss, D.E. No. 104 at 4-5. Such background of tribal sovereign immunity would be relevant if the Miccosukee Tribe or a tribal official were being sued by an individual or corporation, but it proves meaningless when the suit is being initiated by the tribe itself against a tribal officer accused of criminal activities.

Defendant Cypress, through his false sense of entitlement, requests that this Court find that an Indian Tribe cannot sue a former tribal officer for acts it has determined were unauthorized and beyond the scope of his authority, because that former tribal officer can assert the tribe's own sovereign immunity against it. Cypress Mtn. to Dismiss, D.E. No. 104 at 4-5. This requires this Court to erroneously read Indian law and turn it on its head. Tribal sovereign immunity cannot be used against the sovereign. *Miccosukee Tribe of Indians of Florida v. United States*, 698 F. 3d 1326, 1331 (11th Cir. 2012). An Indian tribe's immunity only extends to a tribal officer if that tribal officer's actions are within his or her official capacity. *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 177 F. 3d 1212, 1225 (11th Cir. 1999); *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Florida*, No. 10 Civ. 60483, 2011 WL 1303163 *10 (S.D. Fla. March 31, 2011); *Lobo v. Miccosukee Tribe of Indians of Fla.*, 279 Fed. Appx. 926, 927, 2008 WL 2222074 * 1 (11th Cir. May 30, 2008); *Fletcher v. United States*, 116 F. 3d 1315, 1324 (10th Cir. 1997); *Teneco Oil Co. v. Sac & Fox Tribe of Indians*, 725 F. 2d 572,

576 (10th Cir. 1984); *Snow v. Quinault Indian Nation*, 709 F.2d 1319, 1321 (9th Cir. 1983), cert. den. 467 U.S. 1214 (1984); *Terry v. Smith*, No. 09 Civ. 00722, 2011 WL 4915167 * 7 (S.D. Ala. July 20, 2011); *United States v. Menominee Tribal Enterprises*, No. 07 Civ. 316, 2008 WL 2273285 *10 (E.D. Wis. June 2, 2008); *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 86 (S.D. N.Y. 2002); *Buchanan v. Sokaogon Chippewa Tribe*, 40 F. Supp. 2d 1043, 1048 (E.D. Wis. 1999). It is no surprise that Defendant Cypress fails to cite to any of the above cases in his recitation of the history and development of tribal sovereign immunity. *See* Cypress Mtn. to Dismiss, D.E. No. 104. The above string of cases demonstrates that Defendant Cypress is clearly not entitled to the protection of tribal sovereign immunity.

The Miccosukee Tribe has already determined that Defendant Cypress was not acting in his official capacity when he pillaged the coffers of the Miccosukee Tribe. *See* above; General Council Resolution No. MGC- 03-10, Ex. 1. As a result, tribal sovereign immunity does not extend to Defendant Cypress' unauthorized actions. First, Tribal sovereign immunity cannot be used against the superior sovereign. *See Miccosukee Tribe of Indians of Florida v. United States*, 698 F. 3d 1326, 1331 (11th Cir. 2012) (citing *Fla. Paraplegic Ass'n*, 166 F.3d at 1135; *Reich v. Mashantucket Sand & Gravel*, 95 F. 3d 174, 182 (2d Cir. 1996); *Quileute Indian Tribe v. Babbitt*, 18 F. 3d 1456, 1459–60 (9th Cir. 1994); *United States v. Red Lake Band of Chippewa Indians*, 827 F. 2d 380, 382 (8th Cir.1987) and holding that "Indian tribes may not rely on tribal sovereign immunity to bar a suit by a superior sovereign.").Thus, it is the next and only logical conclusion that an employee or tribal officer cannot use tribal sovereign immunity to bar a suit by the sovereign whom is the holder of the immunity.

Second, an Indian tribe's immunity only extends to a tribal officer if that tribal officer's actions are within his or her official capacity. *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 177 F. 3d 1212, 1225 (11th Cir. 1999); *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Florida*, No. 10 Civ. 60483, 2011 WL 1303163 *10 (S.D. Fla. March 31, 2011); *Lobo v. Miccosukee Tribe of Indians of Fla.*, 279 Fed. Appx. 926, 927, 2008 WL 2222074 * 1 (11th Cir. May 30, 2008); *Fletcher v. United States*, 116 F. 3d 1315, 1324 (10th Cir. 1997); *Teneco Oil Co. v. Sac & Fox Tribe of Indians*, 725 F. 2d 572, 576 (10th Cir. 1984); *Snow v. Quinault Indian Nation*, 709 F. 2d 1319, 1321 (9th Cir. 1983), cert. den. 467 U.S. 1214 (1984); *Terry v. Smith*, No. 09 Civ. 00722, 2011 WL 4915167 * 7 (S.D. Ala. July 20, 2011); *United States v. Menominee Tribal Enterprises*, No. 07 Civ. 316, 2008 WL 2273285 *10 (E.D. Wis. June 2, 2008); *Catskill Development, L.L.C. v. Park Place Entertainment Corp*., 206 F.R.D. 78, 86 (S.D. N.Y. 2002); *Buchanan v. Sokaogon Chippewa Tribe*, 40 F. Supp. 2d 1043, 1048 (E.D. Wis. 1999). Because the Miccosukee Tribe determined that Defendant Cypress was not acting in his official capacity when he pillaged the coffers of the Miccosukee Tribe, tribal sovereign immunity does not extend to Defendant Cypress to protect him from suit by the Miccosukee Tribe for his unauthorized actions. It seems that Defendant Cypress does not understand that the purpose of tribal sovereign immunity is to protect the **tribe's** sovereignty and not his personal plundering of the Miccosukee Tribe. Defendant Cypress continues to believe, wrongfully, that he is the Miccosukee Tribe.

Defendant Cypress relies primarily on *Linneen v. Gila River Indian Community*, 276 F.3d 489, 492 (9th Cir. 2002) and *Hardin v. White Mountain Apache Tribe*, 779 F. 2d 476, 479, 480 (9th Cir. 1985) for the proposition that he is protected from suit by the doctrine of tribal

sovereign immunity. Cypress Mtn. to Dismiss, D.E. No. 104 at 5 – 6. Both cases prove to be inapposite to Defendant Cypress' argument.

In *Linneen*, a non-Indian family drove through reservation land, was allegedly stopped and detained by a tribal ranger for three hours with a gun to their heads, and the family filed suit against the tribe and the tribal officials for the alleged unlawful detention. 276 F. 3d at 491. The court found that it lacked subject matter jurisdiction because the tribe had not waived its tribal sovereign immunity. *Id.* at 492. This case does not support Defendant Cypress' argument because the actual tribe was a defendant in *Linneen* and the sovereign immunity enjoyed by an Indian tribe is superior to that of tribal officials *See Miccosukee Tribe of Indians of Florida*, 698 F. 3d at 1331 (citing *Fla. Paraplegic Ass'n*, 166 F. 3d at 1135; *Reich*, 95 F. 3d at 182; *Quileute Indian Tribe*, 18 F. 3d at 1459–60; *Red Lake Band of Chippewa Indians*, 827 F. 2d at 382 and holding that "Indian tribes may not rely on tribal sovereign immunity to bar a suit by a superior sovereign."). In the case at bar, Defendant Cypress, a former tribal official, is being sued by the Tribe for improper acts which well exceeded the scope of his authority. *Linneen* did not involve a tribe suing a former tribal official for misconduct, nor does it state that a tribe would be barred from suing a tribal official for misconduct under the doctrine of tribal sovereign immunity and is inapplicable to the case at bar. *See id.*

Similarly, in *Hardin* a nonmember sued a tribe and tribal officials for excluding him from reservation land to which he had a lease. 779 F. 2d at 478. The Court held that the suit was barred by the doctrine of tribal sovereign immunity and that the individual defendants, as tribal officials acting in their official capacity and within the scope of their authority, were also protected by tribal sovereign immunity. *Id.* at 479-80. The *Hardin* Court emphasizes the rights and powers of the Indian Tribe to exclude whomever they want from reservation land and any

tribal official exercising that right on behalf of the tribe is protected by the tribe's sovereign immunity. *See id.* Once again, the *Hardin* case does little to further Defendant Cypress' argument because it involved a nonmember suing both the tribe and tribal officials acting in their official capacity and within their authority. In the present case, the Miccosukee Tribe is not being sued and Defendant Cypress acted outside the scope of his authority.

"[A]s a matter of federal law, an **Indian tribe** is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs. Inc.,* 523 U.S. 751, 754, 118 S.Ct. 1700 (1998) (emphasis added). The rationale behind cloaking tribal officials with the sovereign immunity of the tribe was because most times a suit against a tribal official is equivalent to a suit against the tribe. *See United Nuclear Corp. v. Clark,* 584 F. Supp 107, 109 (D.D.C. 1984); *Bottomly v. Passamaquoddy Tribe,* 599 F. 2d 1061, 1067 (1st Cir. 1979) ("[T]o say that this tribe is exempt from civil suit on its contracts, and yet compel its principal chief(s), by judicial process, to take funds from its treasury, and turn them over to the court to be applied in discharge of its contracts, is to destroy in practice the very exemption which at the outset is conceded as a legal right."); *Larson v. Domestic and Foreign Commerce Corp.,* 337 US 682, 687-689, 69 S. Ct. 1457, 1460-61 (1949). Essentially, the purpose of providing a tribal official with tribal sovereign immunity was to protect the tribe from incurring the burden of litigation on behalf of the tribal official and to prevent the interruption of the tribe's governmental functions. *See id.* In the present case, since it is the Miccosukee Tribe suing the former Chairman, Defendant Cypress, there is no need to protect the Miccosukee Tribe because the Miccosukee Tribe will not incur the burdens of litigating on behalf of Defendant Cypress and the government functions of the Miccosukee Tribe will not be interrupted.

Because sovereign immunity is an issue when an Indian tribe is subject to suit, and because the Miccosukee Tribe's suit against Defendant Cypress is not equivalent to a suit against the Miccosukee Tribe, then sovereign immunity is not a privilege that Defendant Cypress can assert. As repeatedly alleged in the Second Amended Complaint (D.E. No. 75) and as demonstrated by the Miccosukee General Council Resolution No. 03-10 (Ex. 1), it is clear that Defendant Cypress' actions were never authorized, beyond the scope of his authority as a tribal official, and any claim to tribal sovereign immunity by Defendant Cypress was lost by virtue of his improper and harmful actions taken against the Miccosukee Tribe, which were not within the scope of his authority. Allowing Defendant Cypress to invoke tribal sovereign immunity against the Miccosukee Tribe to prevent adjudication of the case against him would go against existing legal principles and concepts of justice and fairness.

## II.   THE SECOND AMENDED COMPLAINT CLEARLY STATES A CAUSE OF ACTION AGAINST DEFENDANT CYPRESS UNDER RICO

### A.   Because This Is A Civil Lawsuit, The Law For Criminal Jurisdiction As Proposed By Defendant Cypress Is Inapplicable

Defendant Cypress relies upon the Indian Major Crimes Act (hereinafter, "IMCA"), 18 U.S.C. § 1153, *et seq*., for his argument that this Court lacks jurisdiction to hear this matter because none of the claims against Defendant Cypress are among the sixteen (16) specific enumerated crimes that may occur within "Indian Country" and are committed by an Indian giving jurisdiction to a federal court. Cypress Mtn. to Dismiss, D.E. No. 104 at 7 – 8. This argument is mistaken and a clear misapplication of the law. IMCA governs the primary apportionment of criminal jurisdiction for crimes committed by Indians in Indian country. *United States v. Jadusingh*, 300 Fed. Appx. 721, 722 (11th Cir. 2008) ("the Major Crimes Act limits the authority of the district court to the prosecution of offenses committed by an Indian on a reservation."). This is not a criminal prosecution, therefore IMCA is inapplicable. *See id.* Neither

15

IMCA nor any other statute or authority bars the exercise of federal court jurisdiction "over civil causes of action arising between Indians within 'Indian Country.'" *Cheyenne-Arapaho Tribes of Okla.*, 554 F. Supp. at 4.

Because this is a federal civil action being brought by an Indian Tribe, this Court has jurisdiction under both 28 U.S.C. § 1331 and 28 U.S.C. § 1362. *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 783, 111 S. Ct. 2578, 2583 (1991) (Indian tribes were given access to federal courts for civil actions arising under the Constitution, laws, or treaties of the United States in § 1331. Therefore, 18 U.S.C. § 1362 merely serves to extend "arising under" jurisdiction to Indian tribes for claims under the required $10,000 amount in controversy.). Additionally, the federal RICO statute provides a private civil remedy provision.[2] Since IMCA does not govern the present civil lawsuit against Defendant Cypress and because the claims arise under the laws of the United States providing a private right of action, this Court's exercise of jurisdiction over this lawsuit is not barred.

> **B.     The Indian Gaming Regulatory Act Does Not Bar The Claims Against Defendant Cypress Nor Does It Provide An Adequate Alternative**

Defendant Cypress makes the incoherent and implausible argument that because the Indian Gaming Regulatory Act (hereinafter, "IGRA") 25 U.S.C. § 2701, *et seq.* (1988), which was intended to regulate gaming within Indian Country and to prevent "criminal activity, including organized crime" from impacting enterprises operating within Indian Country, was passed by Congress notwithstanding the existence of RICO, which was passed to deal with organized crime and racketeering, then Congress must have intended for IGRA to be the sole law to deal with organized crime and criminal activity within Indian Country. Cypress Mtn. to

---

[2] "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

Dismiss, D.E. No. 104 at 8 – 9. This argument is difficult to follow because IGRA is wholly irrelevant to the issues presented in this lawsuit. It is clear that Congress' sole purpose for passing IGRA was not to prevent organized crime within Indian gaming operations, but "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." IGRA, 18 U.S.C. § 2702(1). Congress specifically "intended to expressly preempt the field in the governance of gaming activities on Indian lands. Consequently, Federal courts should not balance competing Federal, State, and tribal interests to determine the extent to which various gaming activities are allowed." S. Rep. No. 100-446, at 6 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 3071, 3076. Defendant Cypress' use of IGRA in his argument is amusing. It seems that he erroneously believes that because he was using some of the misappropriated funds he stole from the Miccosukee Tribe, for his gaming and gambling habits, that IGRA is somehow the applicable statute. While the argument is creative and entertaining, it is far from accurate and carries no legal weight. Additionally, Defendant Cypress should err on the side of caution when discussing other federal statutes, under which he may have criminal and or civil liability.

IGRA was not intended to usurp the private civil remedies provided by RICO for a pattern of racketeering activity such as the one carried out by Defendant Cypress and all of the Defendants in this case. *See Fla. v. Seminole Tribe of Fla.,* 181 F. 3d 1237, 1247 (11th Cir. 1999). It is mystifying how Defendant Cypress would think that IGRA forecloses a private RICO cause of action against him.

### C.   Defendant Cypress' Acts Against The Miccosukee Tribe Were Not Committed Exclusively In Indian Country

Even if this Court determined that the conduct alleged against Defendant Cypress in this case falls within the conduct and activities that IMCA and IGRA were intended to govern,

Defendant Cypress' argument suffers from a fatal flaw. Cypress Mtn. to Dismiss, D.E. No. 104 at 7 – 8. Both IMCA and IGRA deal exclusively with acts taking place in Indian Country. *See* 18 U.S.C. § 1153, *et seq.*; 25 U.S.C. § 2701, *et seq.* Defendant Cypress' improper and unauthorized acts were not restricted to the Reservation.  In fact, Defendant Cypress committed his trespasses and unlawful acts against the Miccosukee Tribe throughout the entire United States and abroad. Namely, Defendant Cypress traveled to Mississippi, Nevada, Pennsylvania, Louisiana, New Mexico, North Carolina, New Jersey and Arizona. Second Am. Compl., D.E. No.75 at ¶ 35(a)-(c). Defendant Cypress traveled to different states and countries, stayed in luxurious hotels, dined in expensive restaurants, and gambled in both Indian and non-Indian owned and operated casinos with tribal funds which he was misappropriating. *Id.* The Second Amended Complaint is explicit in its description of Defendant Cypress' activities off the Reservation which included dozens of cash withdrawals in numerous and renowned gambling institutions and credit card expenditures spanning the length of the United States. *See Morgan Stanley Smith Barney FMA Account Year End Summaries for 2006 through 2009 reflecting Defendant Cypress' ATM withdrawals, attached as Exhibit 4.*

## III.   LEAVE TO AMEND COMPLAINT IS PROPER SHOULD THIS COURT FIND THE COMPLAINT DEFECTIVE

Alternatively, if this Court finds that the Miccosukee Tribe's Second Amended Complaint is defective, the appropriate remedy is to allow the Miccosukee Tribe to file a Third Amended Complaint. "When a plaintiff has imperfectly stated what may be an arguable claim, leave to amend is ordinarily in order." *Alley v. Resolution Trust Corp.*, 984 F. 2d 1201, 1207 (D.C. Cir. 1993).  "Where a more carefully drafted complaint for failure to state a cause of action might state a claim, the plaintiff must be given **at least** one chance to amend the complaint…" *Bank v. Pitt*, 928 F. 2d 1108, 1112 (11th Cir. 1991)(emphasis added). Should this Court find that

the Miccosukee Tribe's Second Amended Complaint is insufficient, in the interest of justice, as well as according to relevant and binding authority, the Court should grant the Miccosukee Tribe leave to amend its Third Amended Complaint.

## CONCLUSION

This Court has already noted that the Miccosukee Tribe "provided great detail of the alleged pattern of racketeering/criminal activity against Defendant Billy Cypress and Defendant Julio Martinez." D.E. 55 at 5. That observation was made as to the Miccosukee Tribe's First Amended Complaint, which the Miccosukee Tribe filed as of right. D.E. No. 13. The Miccosukee Tribe's Second Amended Complaint provides an even more detailed description of the plan Defendant Cypress carried out in order to misappropriate the funds of the Miccosukee Tribe. Firstly, Defendant Cypress cannot shield himself from this lawsuit by claiming tribal sovereign immunity because the Miccosukee Tribe is the superior sovereign and Defendant Cypress was acting outside the scope of his authority. Secondly, the claims against Defendant Cypress do not present matters which are characterized as intra-tribal disputes. Thirdly, neither IMCA nor IGRA foreclose the Miccosukee Tribe's lawsuit against Defendant Cypress.

Wherefore, the Miccosukee Tribe respectfully requests this Honorable Court to DENY the Motion of Defendant, Billy Cypress, to Dismiss Second Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim and Supporting Memorandum of Law. In the alternative, should this Court find the Second Amended Complaint deficient, it should grant the Miccosukee Tribe Leave to Amend its Second Amended Complaint.

Respectfully submitted on this 14th day of January 2013.

/s/Bernardo Roman III
**Bernardo Roman III, Esquire**
Fla. Bar No. 0002739
Tribal Attorney, Miccosukee Tribe of
Indians of Florida
P.O. Box 440021, Tamiami Station
Miami, Florida 33144
Tel: (305) 894-5214
Fax: (305) 894-5212
E-mail: bromanlaw@bellsouth.net
**Yinet Pino, Esquire**
Fla. Bar No. 085272
Attorney for the Miccosukee Tribe of
Indians of Florida
1250 SW 27th Avenue, Suite 506
Miami, Florida 33135
Telephone: (305) 643-7993
Facsimile: (305) 643-7995
E-mail: yinet@bromanlaw.com
**Yesenia Rey, Esquire**
Fla. Bar No. 89577
Attorney for the Miccosukee Tribe of
Indians of Florida
1250 SW 27th Avenue, Suite 506
Miami, Florida 33135
Telephone: (305) 643-7993
Facsimile: (305) 643-7995
E-mail: yesenia@bromanlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 14, 2013 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

s/Bernardo Roman III
Bernardo Roman III, Esq.

## SERVICE LIST

*Miccosukee Tribe of Indians of Florida v. Cypress*
Case No. 12-22439-COOKE/Bandstra
United States District Court for the Southern District of Florida

**Jeffrey M. Cohen, Esquire**
**Marissel Descalzo, Esquire**
**Paul A. Calli, Esquire**
**Charles Short, Esquire**
Carlton Fields, P.A.
100 S.E. 2nd Street, Suite 4000
Miami, FL 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
E-mail: jmcohen@carltonfields.com
E-mail: mdescalzo@carltonfields.com
E-mail: pcalli@carltonfields.com
E-mail: cshort@carltonfields.com
E-mail: pwatson@carltonfields.com
E-mail: miaecf@cfdom.net
*Counsel for Defendants Guy Lewis, Esquire, Michael Tein, Esquire, and Lewis Tein, PL*

**Manuel A. Avila, Esquire**
Manuel A. Avila, Esq.
& Associates, P.A.,
11120 N. Kendall Drive
Suite 200
Miami, Florida 33176
Telephone: (305) 249-1111
Facsimile: (305) 647-0686
E-mail: mavila@avilalegal.com
*Counsel for Defendant Julio Martinez*

**Scott Alan Lazar, Esquire**
Koltun & Lazar
7901 SW 67th Ave.
Suite 100
Miami, FL 33143
Telephone: (305)-595-6791
Facsimile: (305)-595-5400
E-mail: scott@koltunlazar.com
*Counsel for Defendant Miguel Hernandez*

**Bruce S. Rogow, Esquire**
**Tara A. Campion, Esquire**
Bruce S. Rogow, P.A.
500 E. Broward Blvd., Ste. 1930
Fort Lauderdale, FL 33394
Telephone: 954-767-8909
Facsimile: 954-767-1530
E-mail: brogow@rogowlaw.com
E-mail: tcampion@rogolaw.com
*Counsel for Defendant Morgan Stanley*

**Bryan T. West, Esquire**
Tew Cardenas LLP
1441 Brickell Avenue, 15th Floor
Miami, FL 33131
Telephone: (305) 536-1112
Facsimile: (305) 536-1116
E-mail: btw@tewlaw.com
*Counsel for Defendant Dexter W. Lehtinen, Esquire*

**Robert O. Saunooke, Esq.**
Saunooke Law Firm, P.A
18620 SW 39th Court
Miramar, FL 33029
Tel: (561) 302-5297
Fax: (954) 499-0598
E-mail: ndnlawyer@hotmail.com
*Counsel for Defendant Billy Cypress*

**Steven M. Goldsmith, Esq.**
STEVEN M. GOLDSMITH, P.A.
*Co-Counsel for Billy Cypress*
5355 Town Center Road, Suite 801
Boca Raton, FL 33486
Tel: (561) 391-4900
Fax: (561) 391-6973
Email:steve.goldsmith@sgoldsmithlaw.com
*Counsel for Defendant Billy Cypress*