UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 12-cv-22439-MGC

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA,

    Plaintiff,

v.

BILLY CYPRESS, *et al.*,

    Defendants.

_____/

**DEFENDANT DEXTER LEHTINEN'S REPLY IN FURTHER SUPPORT
OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendant Dexter Lehtinen ("Mr. Lehtinen") hereby replies to the Miccosukee Tribe's Response in Opposition to Defendant Dexter Lehtinen's Motion to Dismiss Second Amended Complaint (D.E. 129) (the "Response") and states as follows:

**Introduction**

Notwithstanding that Plaintiff made the fatal allegation that the Tribe gave Mr. Cypress "***unrestricted access and control*** over all the financial funds and records of the MICCOSUKEE TRIBE which are the subject of this lawsuit" (Complaint, ¶ 6 (emphasis added))—a fact repeatedly pointed out by Mr. Lehtinen in the Motion to Dismiss—Plaintiff completely ignores addressing that issue in its Response. Since Plaintiff alleges that the Tribe's own express authorization enabled Mr. Cypress to do what he allegedly did, it therefore necessarily follows that third parties (such as Mr. Lehtinen) could not have possibly engaged in wrongful conduct.

The ostensible reason for Plaintiff trying to draw attention away from that admission is that it dooms Plaintiff's claims in their entirety as a matter of pleading, both in terms of subject matter jurisdiction and the underlying claims of legal violations. Indeed, Plaintiff should have

addressed that issue in response to the argument that this is an intra-tribal dispute. Instead, Plaintiff dug itself into a deeper hole in the Response by confirming that this is an intra-tribal dispute that is motivated by political ambitions. (See Response at 3-4 and Exhibit 1 thereto.)

Likewise, rather than confront Mr. Lehtinen's observation that Plaintiff merely alleges in the Complaint, at most, that Mr. Lehtinen saw unidentified "records subject to this lawsuit," Plaintiff continues to rely on its assertion that Mr. Lehtinen saw documents "subject to this lawsuit" in its Response. As in the Complaint, in the Response Plaintiff repeatedly speculates that Mr. Lehtinen saw "all the financial records relevant to this case" and "all the relevant financial transactions and records subject to this lawsuit." (Response at 2.) As Plaintiff is pursuing specious fraud and racketeering claims against Mr. Lehtinen, it is certainly incumbent upon Plaintiff to allege far more than Mr. Lehtinen saw "records subject to this lawsuit." This bare bones (and evasive) allegation is the linchpin to Plaintiff's claims against Mr. Lehtinen.

## Argument

### I.     PLAINTIFF MISCHARACTERIZES THE MOTION TO DISMISS STANDARD.

As a threshold matter, Plaintiff asserts that the "Standard for Motion to Dismiss" is merely "to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." (Response at 3 (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990).) Plaintiff seems to overlook that Plaintiff merely set forth the standard on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. In doing so, Plaintiff completely ignores the fact that the Motion to Dismiss is also premised on Rule 12(b)(6) for failure to state a cause of action. As noted in the Motion to Dismiss, Plaintiff's Complaint is also governed by the pleading standards articulated in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). The Complaint does not comply with Iqbal/Twombly.

2

In any event, if the allegations in the Complaint are taken as true for purposes of subject matter jurisdiction and the same standard applies on a Rule 12(b)(6) motion (as Plaintiff contends), then Plaintiff has a huge problem.[1]  As noted in the Motion to Dismiss, Plaintiff has failed to assert "well-pleaded facts" against Mr. Lehtinen that "infer more than the mere possibility of misconduct."  See Iqbal, 556 U.S. at 679.  A plaintiff must state a claim that is "plausible on its face."  Id. at 678.  Basing a claim on a tribal chairman having "unrestricted access and control" over the funds, and then vaguely alleging that an attorney saw unidentified "records" does not present well-pleaded facts and a claim that is plausible on its face.

## II.   PLAINTIFF COMPLETELY IGNORES THE KEY OBSERVATION IN MR. LEHTINEN'S SUBJECT MATTER JURISDICTION ARGUMENT.

Mr. Lehtinen noted that a key aspect in his argument that this is merely an intra-tribal dispute where subject matter jurisdiction is lacking is Plaintiff's own allegation in Paragraph 6 of the Complaint wherein Plaintiff admits that it gave Defendant Cypress "unrestricted access and control" over the funds at issue.  Plaintiff does not address that damning allegation.

Instead, Plaintiff improperly relies on a tribal General Council Resolution.  (See Response at 4.)  Putting aside that this additional material should not be considered on a motion to dismiss, Plaintiff's reliance on that document actually makes Plaintiff's position worse.  Indeed, that resolution clearly indicates that this is an intra-tribal dispute and confirms that the dispute is colored by "political" overtones. (See Response, Exhibit 1.)  In any case, Plaintiff has to live with its allegation in Paragraph 6 that it gave Defendant Cypress "unrestricted access and control."  Plaintiff appears to admit that issues of tribal self-governance and control of internal relations would be considered intra-tribal matters.  (See Response at 5.)  Since Plaintiff has

---

[1]  Obviously, Plaintiff believes that it has a fatal problem with the face of the Complaint, particularly since it improperly (and desperately) attempts to salvage its claim through the improper attachment of extraneous materials to its Response (which is addressed below).

expressly framed this case in the context of the tribal chairman's "control," this squarely fits within issues of tribal self-governance or internal relations. Notably, while Plaintiff blithely contends that Mr. Lehtinen has not provided authority confirming that this is an intra-tribal dispute (In re Sac and Fox Tribe is not "inapposite" as Plaintiff contends), Plaintiff does not provide authority to indicate that courts have recognized jurisdiction when a tribe is suing its chairman and tribal counsel for racketeering, not to mention a case where its chairman was authorized to conduct such transactions.

Plaintiff's argument that the conclusion should differ when conduct occurred "outside Indian country and the majority of the Defendants are non Indian" (Response at 6) does not necessarily advance its position. Plaintiff relies on Goodface v. Grassrope, 708 F.2d 335 (8th Cir. 1983), to support that argument. However, that case involved the Bureau of Indian Affairs, and the court determined that Section 1331 conferred jurisdiction on federal courts to review certain federal agency actions but noted that the jurisdiction was limited (and reversed the district court, in part, on jurisdictional grounds). Id. at 338-39. That situation is not present here. Indeed, it has been held that the presence of nonmembers of a tribe as parties to a suit does not necessarily preclude a finding of lack of subject matter jurisdiction. See, e.g., Smith v. Babbitt, 100 F.3d 556 (8th Cir. 1997) (in RICO case involving nonmembers, holding that federal courts lacked jurisdiction for what was "essentially an intra-tribal dispute"), cert. denied, 522 U.S. 807 (1997).

### III. PLAINTIFF DOES NOT PROPERLY SET FORTH THE STANDARD FOR SUPPLEMENTAL JURISDICTION.

Curiously, Plaintiff contends that "supplemental jurisdiction" is dictated by the concept of "pendent personal jurisdiction." (See Response at 6 (quoting Koch v. Royal Wine Merchants, Ltd., 847 F. Supp. 2d 1370, 1374 (S.D. Fla. 2012).) In doing so, Plaintiff relies on the discussion in Koch regarding the assertion of personal jurisdiction over non-resident entities. See id. Mr.

4

Lehtinen has not invoked lack of personal jurisdiction as a defense. Plaintiff therefore articulates a completely inapplicable standard. The Court should follow the standard for supplemental jurisdiction set forth in Mr. Lehtinen's Motion to Dismiss. (See Motion to Dismiss at 3-4.)

After setting forth the wrong legal standard for supplemental jurisdiction, Plaintiff then embarks on a rambling, non-sensical recitation as to how an IRS audit and legal advice concerning a tax reserve fund are intertwined with Plaintiff's dispute with Defendant Cypress and his use of credit cards and ATM machines. Contrary to Plaintiff's bare bones theory that Mr. Lehtinen concealed financial activities, Plaintiff's IRS theory takes the contrary view— that Mr. Lehtinen failed to object to IRS subpoenas and produced too much information. Plaintiff cannot have it both ways.[2] Of course, Plaintiff does not explain the inconsistency in its tax-related claims with the fact that it has sued Mr. Lehtinen in the Miami-Dade Circuit Court for the same thing (indeed, as noted in the Motion to Dismiss, Plaintiff relied on state court materials in the Complaint). Apparently, Plaintiff thought that there was such a lack of a "common nucleus of operative fact" that there was a need to file a duplicative state court action.

**IV.  PLAINTIFF'S SECTION ON ITS COMPLIANCE WITH PLEADING STANDARDS DRIVES HOME THE POINT THAT IT HAS FAILED TO ALLEGE A PROPER CAUSE OF ACTION AGAINST MR. LEHTINEN.**

Plaintiff has included a half-page section in its Response titled "The Complaint Complies With Pleading Standards." (Response at 9.) Plaintiff takes issue with Mr. Lehtinen's argument that Plaintiff's allegations against him are "evasive and skeletal." (Id.) Plaintiff then asserts that "the Second Amended Complaint details, with specificity, the duties owed, documents reviewed, knowledge known, fraudulent assertions and omissions made, motives, and benefits received." (Id.) If Plaintiff were really serious about that argument, Plaintiff would have cited to specific

---

[2]  This is also the basis, in part, for Plaintiff's breach of fiduciary duty claim. Plaintiff's arguments in the Response on the fiduciary duty claim are wholly conclusory.

allegations in the Complaint to support that conclusory, self-serving statement. The reason that Plaintiff declined to do so is that there are no such allegations in the Complaint. For that reason alone, the Complaint should be dismissed as to Mr. Lehtinen.

V. **PLAINTIFF'S ARGUMENT THAT ITS PLEADING SUPPORTS ITS THEORY MAKES NEW ALLEGATIONS BEYOND THOSE IN THE COMPLAINT.**

Sensing that Plaintiff has a huge defect in its claims against Mr. Lehtinen in that they are completely premised on Plaintiff's vague assertion that Mr. Lehtinen allegedly saw unidentified "financial transactions and records," Plaintiff now desperately resorts to recharacterizing its Complaint to include facts that were never alleged. Plaintiff seems to agree that it did not squarely allege that Mr. Lehtinen, in fact, saw the records concerning Mr. Cypress's use of credit cards and ATM machines. (See Response at 10-12.) In a complete about-face, in order to avoid the issue, Plaintiff now claims that "the ATM and credit card transactions are ***not*** the 'crux' of the Second Amended Complaint." (Id. at 11 (emphasis added).) Notwithstanding, the focal point of the Complaint clearly is Mr. Cypress's use of ATM machines and credit cards.

However, Plaintiff took it a step further. Plaintiff now fabricates new allegations in the Response. Plaintiff now contends that Mr. Lehtinen was "knowingly preparing and presenting legal and financial statements" and that "Defendant Lehtinen presented legal reports which included a financial section and other relevant financial reporting." (Response at 11.) Plaintiff refers to Paragraphs 301 through 311 of the Complaint to make this assertion. A review of those paragraphs reveals that there are absolutely no allegations therein that Mr. Lehtinen prepared and presented "financial statements"[3] and that he prepared legal reports with a "financial section and other relevant financial reporting." In Paragraphs 301 through 311, Plaintiff merely states that

---

[3] It should be noted that "financial statements" is an accounting term. There are no allegations that Mr. Lehtinen generated "financial statements" such as accountants would generate.

6

Mr. Lehtinen "presented a legal report and was present during the presentation of the financial report." (Complaint, ¶ 301.)[4] Plaintiff makes the leap by stating: "It is a reasonable inference from the allegations in the Second Amended Complaint that Defendant Lehtinen could not have drafted and discussed his legal and financial reports without first examining and reviewing the relevant financial documents subject to this lawsuit." (Response at 11.) In addition to the fact that Plaintiff avoids identification of the "relevant financial documents," this self-serving conclusory statement does not comply with the dictates of Iqbal and Twombly.

**VI.  THE NEW DOCUMENTS ATTACHED TO THE COMPLAINT, AS WELL AS PLAINTIFF'S NEW FACTUAL ASSERTIONS THAT ARE OUTSIDE THE FOUR CORNERS OF THE COMPLAINT, SHOULD BE DISREGARDED.**

On motions to dismiss, courts frequently refuse to consider a plaintiff's factual assertions and extraneous materials which go beyond the four corners of the complaint. See Valdes v. Fisher Safety, 2012 WL 1405685, at *2 (S.D. Fla. Apr. 23, 2012); Mangravite v. Univ. of Miami, 2010 WL 4702358, at *3 n.2 (S.D. Fla. Nov. 12, 2010)); Bruhl v. PricewaterhouseCoopers Int'l, 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007). As one court noted in striking responses where the plaintiff relied on an affidavit, "the responses, read liberally, are more of an attempt at amending the complaint than they are an attempt to respond to the various motions to dismiss." Cowan v. MTGLQ Investors, L.P., 2012 WL 1058124, at * 3 (M.D. Fla. Mar. 28, 2012).

**VII.  PLAINTIFF DOES NOT SUBSTANTIATE ITS FRAUD AND AIDING AND ABETTING CLAIMS.**

In attempting to combat the argument that the purported fraud was pleaded in conclusory form, Plaintiff argues that it should be permitted to plead under a more "relaxed requirement." (Response at 13.) However, even the authority relied upon by Plaintiff indicates that a plaintiff

---

[4] It should also be noted that the transcript attached to the Complaint demonstrates that Mr. Lehtinen was generally not present for the presentation of the financial report.

must plead a fraud claim at least in some detail. Plaintiff's argument as to Mr. Lehtinen is merely asserted in skeletal form, and it does not even adhere to a more "relaxed requirement."

As a prime example of how poor Plaintiff's contentions are, Plaintiff attaches a transcript to its Response to support the proposition that Mr. Lehtinen made some sort of "outrageous explanation to the I.R.S." (Response at 12; Response at Exhibit 4.) However, the cited portion of the attached exhibit does not even mention Mr. Lehtinen.

Plaintiff purports that it has alleged the "who, what, where, when, and how" of an alleged fraud by Mr. Lehtinen. (See Response at 12.) However, each and every example cited by Plaintiff to support that assertion is either a conclusory statement or a reference to actions that are otherwise innocuous. In sum, when boiled down to its essence, Plaintiff states that Mr. Lehtinen was an attorney and that he attended Business and General Council meetings. That is not an assertion of a fraud claim in compliance with Rule 9(b). Notably, Plaintiff contends that Mr. Lehtinen reaped "financial benefits" (however, Plaintiff never alleges that Mr. Lehtinen ever received even a penny of any of the funds concerning the ATM withdrawals or credit card charges at issue), but Plaintiff goes on to allege the following in the Complaint:

> During his tenure as General Counsel and main attorney for the MICCOSUKEE TRIBE, and with the assistance and support of Defendant CYPRESS, Defendant LEHTINEN represented the MICCOSUKE [sic] TRIBE in most legal issues, including, but not limited to: gaming; Indian law; environmental law; real estate; zoning; federal and state regulatory matters; federal and state taxation; contract disputes; personal injury; federal and state administrative matters; required institutional audits under the Indian Gaming Regulatory Act; and lobbying matters.

(Complaint, ¶ 298.) By Plaintiff's admission, Mr. Lehtinen was doing a large volume of legitimate legal work, which explains his compensation. Of course, the one thing that is missing from Plaintiff's characterization of Mr. Lehtinen's role at the Tribe (which Plaintiff says dates to the 1990s) was the monitoring of individuals' use of ATM and credit cards. Rule 9(b) states that

a plaintiff "must state with particularity the circumstances ***constituting fraud***." (Fed. R. Civ. P. 9(b) (emphasis added).)  Where the only allegations where there is any attempt at detail are otherwise innocuous events, that certainly cannot be compliance with Rule 9(b).

**VIII.   PLAINTIFF'S RESPONSE ON THE RICO CLAIMS IS WEAK.**

In response to Mr. Lehtinen's argument that he is specifically excluded from Plaintiff's definition of the RICO "enterprise" (see Complaint, ¶ 20), Plaintiff makes feeble explanations, such as Mr. Lehtinen must be part of the enterprise because "[t]he title of Count VI in the Second Amended Complaint is 'Florida Civil Rico as to All Defendants.'" (Response at 16.)  In addition to the fact that the title of the count does not constitute an allegation, the title does not assert that Mr. Lehtinen was part of the enterprise.  Plaintiff's exclusion of Mr. Lehtinen from the express definition of the "enterprise" in Paragraph 20 must have been deliberate.  Plaintiff's argument that the title of its claim or references to "all Defendants" does not trump the point that Plaintiff expressly excluded Mr. Lehtinen from the "enterprise."  Indeed, Plaintiff consciously excluded Mr. Lehtinen from the federal RICO claim in its totality.

Plaintiff then shifts to its argument that it has alleged a RICO pattern.  Plaintiff contends that "reinvestment in the enterprise was made by way of silence, which allowed the enterprise to maintain its operation for years and to the detriment of the Miccosukee tribe in millions of dollars." (Response at 17.)  In addition to the fact that such statement is unintelligible (and demonstrates a complete lack of understanding of RICO law on claims based on "reinvestment"), no "reinvestment" or "reinvestment injury" is alleged in the Complaint.

Plaintiff argues that Mr. Lehtinen could have been operating or managing the enterprise as attorney (citing language that an attorney can be "the very core of the enterprise"). (See Response at 17-18.)  However, as noted above, Mr. Lehtinen was not even alleged to have been in the enterprise at all, so it cannot be that he was allegedly managing it.  Moreover, Plaintiff

goes to great lengths to stress that Mr. Lehtinen was providing traditional legal services. (See, e.g., Complaint, ¶¶ 296-98.) That belies the contention that he was operating a RICO enterprise.

## IX. PLAINTIFF AVOIDS THE ISSUE ON THE FRAUDULENT MISREPRESENTATION CLAIM.

Plaintiff admits that the Court directed Plaintiff to comply with Rule 9(b). (See Response at 18 (citing D.E. 55 at 3).) Despite acknowledging that this Court ordered Plaintiff to identify, *inter alia*, "the precise statements, documents, or misrepresentations made" and "the time, place, and person responsible for the statement," Plaintiff contends that it is not required to comply with that mandate. Rather, Plaintiff once again asserts that it is entitled to rely on a "relaxed requirement." (Response at 18-19.) However, the "relaxed requirement" that Plaintiff invokes is premised on preventing "substantial unfairness to private litigants who could not possibly have detailed knowledge of all the circumstances surrounding the alleged fraud." (Response at 19 (citation omitted).) In this case, Plaintiff accuses Mr. Lehtinen of perpetrating fraud publicly in the presence of an entire Indian tribe. If the allegations were true, then Plaintiff would know the details that were ordered by this Court.

## Conclusion

For the foregoing reasons, Plaintiff's claims against Mr. Lehtinen should be dismissed with prejudice. While Plaintiff requests that the Court grant it leave to file a fourth complaint in the event that the motions to dismiss are granted, Plaintiff has had more than enough chances to attempt to assert a viable claim, and Plaintiff's request for leave to amend should be denied. Indeed, after Plaintiff filed its initial Amended Complaint (D.E. 13), Mr. Lehtinen had filed a motion to dismiss as to that Amended Complaint (D.E. 41). Therefore, Plaintiff knew what arguments Mr. Lehtinen intended to raise as to Plaintiff's pleading, and Plaintiff still failed to rectify the fatal deficiencies.

**TEW CARDENAS LLP**
*Attorneys for Dexter Lehtinen*
1441 Brickell Avenue, 15th Floor
Miami, FL 33131
Telephone:	(305) 536-1112
Facsimile:	(305) 536-1116

/s/     Bryan T. West
    BRYAN T. WEST
    Florida Bar No. 83526
    btw@tewlaw.com

11

TEW CARDENAS  LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 · 305-536-1112

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **January 28, 2013**, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the Service List below via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/   Bryan T. West
BRYAN T. WEST

\

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 · 305-536-1112

**SERVICE LIST**

**Bernardo Roman, III**
**Yesenia Fatima Rey**
**Yinet Pino**
Law Office of Bernardo Roman III
1250 SW 27th Avenue
Suite 506
Miami, Florida 33135
(305) 643-7993
yesenia@bromanlaw.com
ypino@bromanlaw.com
bromanlaw@bellsouth.net
*Attorneys for Miccosukee Tribe of Indians of Florida*

**Jeffrey Michael Cohen**
**Paul Calli**
**Jack Reiter**
Carlton Fields
100 SE 2nd Street
Suite 4200
Miami, FL 33131
305-530-0050
Fax: 305-530-0055
jmcohen@carltonfields.com
pcalli@carltonfields.com
*Attorney for Michael R. Tein, Guy Lewis, and Lewis Tein, PL*

**Steven M. Goldsmith, Esq.**
STEVEN M. GOLDSMITH, P.A.
5355 Town Center Road, Suite 801
Boca Raton, FL 33486
Tel: (561) 391-4900
Fax: (561) 391-6973
steve.goldsmith@sgoldsmithlaw.com
*Attorney for Billy Cypress*

**Robert O. Saunooke**
18620 SW 39th Court
Miramar, FL 33029
561-302-5297
Fax: 954-499-0598
ndnlawyer@hotmail.com
*Attorney for Billy Cypress*

**Manuel Avila**
Manuel A. Avila & Associates, P.A.
11120 N. Kendall Drive
Miami, Florida 33176
(305) 249-1111
mavila@avilalegal.com
*Attorney for Julio Martinez*

**Bruce S. Rogow**
Bruce S. Rogow, PA
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, Florida 33394
(954) 767-1530
brogow@rogowlaw.com
*Attorney for Morgan Stanley Smith Barney, LLC*

**Scott Alan Lazar**
Koltun & Lazar
7901 SW 67th Avenue
Miami, Florida 33143
(305) 595-6791
scott@koltunlazar.com
*Attorneys for Miguel Hernandez*