UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA Miami Division

Case No. 1:12-cv-22439-MGC

MICCOSUKEE TRIBE OF INDIANS OF
FLORIDA, a sovereign nation and Federally
recognized Indian tribe,

        Plaintiff,

vs.

BILLY CYPRESS; DEXTER WAYNE
LEHTINEN, ESQUIRE; MORGAN
STANLEY SMITH BARNET; JULIO
MARTINEZ; MIGUEL HERNANDEZ;
GUY LEWIS, ESQUIRE; MICHAEL TEIN,
ESQUIRE; AND LEWIS TEIN, PL, A
PROFESSIONAL ASSOCIATION,

        Defendants.

_____ /

## DEFENDANT JULIO MARTINEZ'S REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant Julio Martinez ("**Mr. Martinez**") submits this Reply in Support of his Motion to Dismiss (D.E. 105, "**Motion to Dismiss**") the Second Amended Complaint (D.E. 75, the "**Complaint**")

### SUMMARY

Plaintiff, the Miccosukee Tribe of Indians of Florida (the "**Tribe**"), has failed to adequately respond to the arguments and legal authority raised in Mr. Martinez's Motion to Dismiss and rather than distinguish the facts of Plaintiff's claims from the arguments raised in the Motion to Dismiss, Plaintiff's Response (D.E. 120, the "**Response**") actually serves to enforce the factual and legal basis for dismissal with prejudice of Plaintiff's claims.  By attaching documents to the Response meant to support the Complaint, Plaintiff in fact admits to the current pleading inadequacies of the Complaint and also demonstrates how those pleading inadequacies are not repairable by receiving further opportunities to amend the Complaint.

The Tribe's Response improperly attaches documents which the Tribe seeks to use in it's defense against the improper/inadequate pleading arguments raised by Mr. Martinez, that the Complaint violates Federal Rules of Civil Procedure 9(a), 9(b), 9(d), 9(e) (*See*, Motion to Dismiss, D.E. 105, pgs. 4 – 7).  In attaching the new set of documents to the Response, the Tribe confirms the argument that the Complaint was inadequately pled to begin with and should accordingly be dismissed.

The Tribe's conflicting arguments in the Response confirm the Tribe's own prior admission in the Amended Complaint (D.E. 13, ¶ 6), that this Lawsuit actually is motivated by an internal tribal political dispute. The Complaint alleges that Defendant Billy Cypress was given unrestricted authority to manage the finances of the Tribe and moreover, the Complaint repeatedly alleges that all of the transactions now complained about against Mr. Martinez and the other Defendants were previously expressly reviewed and approved by the Tribe's two governing bodies, the Tribal Business Council and the Tribal General Council, at the regular meetings of those bodies. The Tribe's Response and the documents attached to the Response only serve to further clarify and confirm the intra-tribal dispute nature of this matter and the Court's lack of jurisdiction to enter into that fray.

On the issue of whether the Tribe has waived its sovereign immunity, the Tribe's Response utterly fails to point out where in the Complaint the Tribe alleges a waiver of its sovereign immunity for the purpose of allowing the Tribe to bring this Lawsuit before this Court. Plainly, no such waiver is alleged in the Complaint. Incredibly, the Tribe's Response serves to affirms that, while the Tribe wishes to have the Court exercise its jurisdiction as a sword against Defendants, the Tribe indeed appears to take the contradictory position that it <u>has not</u> waived its sovereign immunity for all issues arising from this matter as a consequence of seeking the Court's exercise of power and authority to adjudicate the dispute against Defendants (*See*, D.E. 120, Response, p. 7 – 10). The Tribe affirms in its Response that indeed it desires to "have its cake and eat it too" by not anywhere directly agreeing that this Court has the jurisdiction or legal authority to impose the Court's own Orders against the Tribe for any or all purposes arising from this Lawsuit, such as imposition of this Court's discovery orders, entertaining counter-claims raised by Defendants arising from this matter or compelling payment by the Tribe of Court ordered sanctions. Thus, the Tribe Response's vague, yet contradictory position as to whether it has waived sovereign immunity, or the extent of its waiver of sovereign immunity, is procedurally untenable for this Lawsuit, as the Tribe is telegraphing to the Court it's intention not to comply with or recognize this Court's jurisdiction and authority to impose Court Orders against the Tribe, in this very matter.

As argued in the Motion to Dismiss, the Complaint fails to set forth the requisite specific facts upon which the Tribe bases its causes of action and the Tribe's Response fails to cure those deficiencies or distinguish this matter from the legal authority cited in the Motion to Dismiss.

Accordingly, the lawsuit against Mr. Martinez should now be dismissed with prejudice, because the Court already gave the Tribe a prior opportunity to remedy the deficient pleading and the Tribe's own

admissions of fact in its Response show that the pleadings cannot be adequately corrected to comply with the law.

## ARGUMENT

**I. THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION BECAUSE THE COMPLAINT'S CLAIMS REST UPON ALLEGATIONS THAT THE TRIBAL CHAIR ENGAGED IN WRONGDOING, WITH THE PRIOR REVIEW AND APPROVAL OF THE TWO TRIBAL COUNCILS AND THAT SUBSEQUENTLY, BASED ON THE ALLEGATIONS CONTAINED ONLY IN THE RESPONSE, THE TRIBE VIA SPLIT DECISION VOTED TO REVOKE THOSE PRIOR APPROVALS, AND SUCH A DISPUTE IS CLEARLY AN INTRA-TRIBAL MATTER.**

The Tribe's prior versions of the Complaint, the current Second Amended Complaint and now the Tribe's Response, all serve to demonstrate the intra-tribal nature of the dispute which is the essence of the Tribe's claims against Mr. Martinez and the other Defendants.

The Response inferentially admits that the Complaint and it's prior versions, are self-contradictory and inadequately pled.  The Complaint alleges the authority of the former Tribal Chairman, Defendant Billy Cypress, by alleging, "Defendant CYPRESS oversaw, controlled, supervised and **had unrestricted** access and **control over all the financial funds** and records of the MICCOSUKEE TRIBE which are the subject of this lawsuit." (*See*, Complaint, ¶6, DE 75 at 4)(Emphasis added). Moreover, the Complaint alleges *the opposite* of a finding of any liability by the official governing bodies of the Tribe against Mr. Cypress or other Defendants -- in that the Complaint alleges that the Tribal General Council (which governs Plaintiff Tribe) and the Tribal Business Council (which is responsible for the daily administrative operation of the Tribe) both regularly had meetings and reviewed the financial transactions complained of in the Complaint and both of those Tribal governing bodies discussed and, by inference, previously approved the financial transactions which are the purported subject of this Lawsuit (*See*, Complaint, DE 75 at 3, 72 – 80).

The Response attempts and fails to correct this obvious pleading failure of the Complaint, by inappropriately attaching to the Response a document which Plaintiff hopes to use for the purpose of correcting the patent contradictions contained in the Complaint respecting Mr. Cypress's authority and the review and approval by the two Tribal Councils respecting the complained of financial transactions. The Response belatedly attempts to boot-strap the Complaint's insufficient pleading allegations by attaching as Exhibit B to the Response the Tribe's "General Council Resolution No. MGC-03-10." (the "**Resolution**").

However, rather than assist the Complaint's claims, the Resolution serves to confirm the appropriateness of a dismissal with prejudice of those claims, because:

1)      The Resolution was not filed as an exhibit to the Complaint and thus, the Complaint's allegations are thus **still** self-contradictory, given the Complaint's factual allegations supporting the authorized and approved nature of the alleged transactions by the Tribe's governing bodies, while at the same time, the Complaint contradicts those pled facts by making the bald legal conclusion allegations as to the wrongful nature of the same transactions (as alleged by the Response on D.E. 120, pg. 3);

2)      The Resolution itself demonstrates that the Tribe only subsequently, via split vote amongst the Tribal Council Members, determined that the transactions were allegedly wrongful in nature.  The fourth "WHEREAS" Paragraph of the Resolution states, "WHEREAS, the Miccosukee Tribe conducted a review of its Financial records and found improper and unauthorized use of Tribal funds by former Chairman Billy Cypress while a member of the Miccosukee Business Council." (*See*, D.E. 120, Response, Exhibit 2).  Thus, the Resolution is itself contradictory to the allegations of the Complaint which expressly allege that Mr. Cypress was authorized to have unrestricted access and control over all the financial funds of the Tribe and that the Tribal Business Council and Tribal General Council had those very same financial transactions presented to them and previously approved them.  Thus, the Court is being directly asked to interpret and determine the issue of the ex-post facto revocation of expressly granted authority and expressly reviewed/approved financial transactions by and between Tribal officials.  As presented by the Tribe in its Complaint and now also in its Response, this ex-post facto revocation of previously approved transactions is clearly an intra-tribal matter for which the Court does not possess and should not exercise jurisdiction;

3)      The Resolution was a split decision among the Tribal General Council.  The vote for passage of the Resolution was, "54 for, 31 against, 06 abstentions." (*See*, D.E. 120, Resolution, Exhibit 2, pg. 2).  Thus, the Tribe has demonstrated that indeed there exists an intra-tribal dispute as to whether the alleged financial transactions were wrongful in nature or authorized and approved by the Tribal General Council.  Instead of supporting the Tribe's position, exhibition of the Resolution further supports Mr. Martinez's position that an intra-tribal dispute exists on the very nature of the claims presented to the Court;

4)      The Resolution utterly fails to address the issue of whether the Tribe authorized the initiation of this Lawsuit, whether the Tribe authorized the waiver of its sovereign immunity, or the extent of any such intended waiver of the Tribe's sovereign immunity.  The Resolution merely provides that, "NOW, THEREFORE, BE IT RESOLVED, that the Miccosukee Business Counsel, is authorized to implement the terms of this Resolution, including the execution of any and all necessary documentation to effectuate this purpose." (See, D.E. 120, Resolution, Exhibit 2, pg. 2).  Nowhere does the Resolution state that ANY lawsuit was to be initiated by the Tribal Business Council.  The Tribe has, internally, numerous ways to regulate its members, including but not limited to the withholding of the regular quarterly tribal distributions paid to members.  Without expressly stating so anywhere in either the Complaint or its Response, Plaintiff is attempting to have the Court **simply assume** that the filing of this Federal Lawsuit was actually officially approved by the Tribe and that waiver of the Tribe's sovereign immunity was approved.  Mr. Martinez believes that the Tribe's silence respecting these basic factual authorization matters is not merely sloppy or inattentive drafting of pleadings or the Resolution.  The Tribe is slyly attempting to preserve for itself the opportunity to subsequently claim that it never waived its sovereign immunity and that even the filing of this Lawsuit was never officially granted by the Tribal General Council. The Tribe should not be permitted by the Court to have it both ways, to both proceed with this Lawsuit and yet to subsequently be in a position to argue that the Tribe never actually waived its immunity or approved this frivolous Lawsuit and the legal consequences that arise therefrom.

As a matter of law based upon the allegations made thus far by the Tribe in its Complaint and Response, the Resolution constitutes an intra-tribal revocation of previously authorized, reviewed and approved transactions conducted by Mr. Cypress.  The interpretation and application of a Tribal resolution is a matter for Tribal interpretation. *Native Am. Church of N. Am.* v. *Navajo Tribal Council*, 272 F.2d 131, 134 (10th Cir. 1959) ("No law is cited and none has been found which undertakes to subject the Navajo tribe to the laws of the United States with respect to their internal affairs, such as police powers and ordinances passed for the purposes of regulating the conduct of the members of the tribe on the reservation. It follows that the Federal courts are without jurisdiction over matters involving purely penal ordinances passed by the Navajo

legislative body for the regulation of life on the reservation."); *United States* v. *Tsosie,* 92 F.3d 1037, 1044 (10th Cir. 1996) ("tribal courts are best qualified to interpret and apply tribal law").

The Tribe's Response agrees with Mr. Martinez's legal contention that this Court lacks jurisdiction to resolve any intra-tribal disputes.  The Tribe cites to *United States v. Wheeler*, 435 U.S. 313, 323-36 (1978), for the holding, "[j]urisdiction to resolve internal tribal disputes and to interpret tribal constitutions and laws lies with the Indian tribes and not the district courts." (*See*, D.E. 120, Response, p. 4).  The Tribe nevertheless attempts to distinguish the alleged facts of this Lawsuit by arguing that the facts of this case do not qualify as an intra-tribal dispute (in spite of the conflicting evidence presented by the split vote of the Resolution), and then the Tribe cites to prior legal decisions which *actually support* Mr. Martinez's contention that this matter is indeed an intra-tribal dispute.

In Response pages 4 and 5, the Tribe admits that the following federal cases have found an intra-tribal dispute to exist:

1)      *Motah v United States*, 402 F. 2d 1 (10ᵗʰ Cir. 1968), which Plaintiff cites to admit that "issues regarding an internal controversy among Indians over tribal government" constitute an intra-tribal dispute. The Tribe's Response shows that a dispute exists in the very voting which resulted in the Resolution, as that vote was divided according to the Resolution and that 31 of the Tribe's General Council Members were against the allegations/statements of the Resolution, with six Tribal General Council Members abstaining and only 54 actually agreeing to adopt those statements.  Thus, the facts regarding the tribal dispute and disagreement as to the passage of the Resolution, alleged by Plaintiff in its Response, appear to be the very definition of an issue regarding an internal controversy among Indians over tribal government.

2)      *Kaw Nation ex rel. McCauley v. Lujan*, 378 F.3d 1139 (10ᵗʰ Cir. 2004), which Plaintiff cites to admit that "issues regarding the appointment of a tribal official under tribal law" constitute an intra-tribal dispute.  The Tribe's Complaint and Response show that central issues of the Lawsuit are the questions of: (1) the extent of Mr. Cypress's appointed financial authority as the former Tribal Chairman respecting the alleged financial transactions; (2)  and the validity and enforceability of the prior review and approval of financial transactions by the Tribal Business Council and the Tribal General Council, as alleged by the Complaint and

6

subsequently withdrawn in ex post facto manner by the Resolution.  Thus, this Lawsuit inescapably involves tribal official appointment and authority issues under Miccosukee tribal law.

       3)    *Wade v Blue*, 369 F. 3d 407 (4th Cir 2004), which Plaintiff cites to admit that a "dispute between tribal members and members of the tribal council over who controls the financial assets of the tribe" constitute an intra-tribal dispute.  The issue of whether Mr. Cypress had authority to control the financial assets of the Tribe in the manner in which he did, as subsequently reviewed/approved by the two Tribal Councils according to the Complaint, and still later ex-post facto disapproved by the split decision of the Tribal General Council according to the Response, is the major central issue of this entire case.

       4)    *Potts v. Bruce*, 533 F.2d 527 (10th Cir. 1976),  which Plaintiff cites to admit that "issues regarding the validity of a tribal resolution under tribal law" constitute an intra-tribal dispute.  Plaintiff's Complaint admits Mr. Cypress's "unrestricted" grant of official authority to control the Tribe's finances and it admits the prior review/approval of the financial transactions by the Tribe's two governing bodies.  The Response then submits that a divided Tribal General Council passed a Resolution invalidating the previously alleged official authority and previously alleged approval of transactions.  The issue of whether such an ex post facto resolution by a divided Tribe is legally valid is certainly a central issue of the controversy before the Court, but as admitted by Plaintiff, the Court lacks jurisdiction to entertain that issue and thus this entire intra-tribal controversy.

       The Response further attempts to inappropriately defend the adequacy of the pled Complaint, by seeking the Court's consideration of the I.R.S. sworn interview of Mr. Jerry Cypress, yet another document not attached to the Complaint or supported/referenced by the Complaint's actual allegations.  (See D.E. 120, Response, Exhibit C and pgs. 3-4)(hereafter, "**Jerry Cypress Statement**").  As with the Response's submitted Resolution, the Jerry Cypress Statement and the arguments made by the Tribe relating thereto, only further proves the points that: (1) the Complaint as pled is procedurally defective, inadequate and violates Rule 9, in that none of the allegations of the Response concerning the Jerry Cypress Statement or the Jerry Cypress Statement itself are a part of the Complaint; (2)  The Complaint as pled is self-contradictory, in that it illogically makes bald legal conclusions of wrongdoing which are contradicted by the factual allegations of the

Complaint respecting the official authority granted Mr. Billy Cypress by the Tribe and the prior review/approval of financial transactions by the Tribe's two governing Councils; and (3) This entire matter is inextricably an intra-tribal dispute for which the Court lacks subject matter jurisdiction.

## II. THE RICO AND FRAUD CLAIMS ARE LEGALLY DEFICIENT, AND THE TRIBE HAS NOT PRESENTED A COMPELLING RATIONALE FOR MAINTAINING THE SECOND AMENDED COMPLAINT.

The Tribe anemically attempts to cure its RICO and fraud claim pleading deficiencies against Mr. Martinez by attaching to its Response as Exhibit A, a factually unsupportive and procedurally inappropriate exhibit which proves nothing and actually serves to further implicate the Tribe as intentionally perpetrating a fraud upon this Court regarding the entirely frivolous credit card abuse allegations made against Mr. Martinez.

In its Response page 2, the Tribe states "[a] copy of the relevant portions of the American Express Statements showing that Defendant Martinez was in fact in possession of a Tribal credit card is attached herein as Exhibit A." (*See*, D.E. 120, Response, pg. 2). The Tribe makes this allegation in an effort to contest a statement made as an aside by Mr. Martinez in a footnote to the Motion to Dismiss, that "Mr. Martinez NEVER even had a Tribal credit card issued in his name." (See, D.E. 105 at pg. 3, F.N. 2).

The document filed as Exhibit A to the Response is in fact a one page document (not the plural "Statements" alleged by the Response), which does nothing whatsoever to prove that Mr. Martinez actually had any American Express credit card issued in his name. Mr. Martinez was the official on behalf of the Tribe who ordered the Tribal credit cards from American Express for each of the Tribal Business Council Members. Accordingly, Mr. Martinez's name appeared on the American Express statements, as he was the official account representative to whom the statements were mailed.

Tellingly, while most of the one page Exhibit A is redacted by the Tribe, the portion which indicates Mr. Martinez's name actually shows a zero balance. In the Complaint, the Tribe falsely alleges that between June 2009 through January, 2010, Mr. Martinez utilized a Tribal American Express account issued in his name and wrongfully charged on that account a total of $959,269.65 (See, D.E. 75, Complaint, pgs. 99, 100). However, while it should have been an extremely simple matter to attach the alleged actual American Express credit card statements to the Complaint (or at least supply them to undersigned counsel as repeatedly requested and ignored), the Tribe failed to support those bald legal conclusions with any document. In the Response, the Tribe attached Exhibit A, which fails to prove that any American Express card was ever issued to Mr. Martinez and **fails to even indicate a single charge** allegedly made by Mr. Martinez on what

8

erroneously/intentionally is mischaracterized by the Tribe as the credit card account issued to Mr. Martinez. Compare this intentional absolute dearth of documentary support for the credit card allegations against Mr. Martinez, with the voluminous statement documents submitted (ineffectually) by the Tribe relating to the Tribe's Morgan Stanley Smith Barney accounts, attached as Exhibit  D to the Response.[1]

The lack of even a single statement showing an actual credit card charge or balance owed as to any credit card account allegedly issued to Mr. Martinez personally, let alone the absence of any documents supporting that Mr. Martinez charged almost a million dollars for his personal use as maliciously alleged by the Complaint, is a glaring failure of the Complaint and the Response, which speaks volumes.  The Tribe hasn't a scintilla of evidence supporting its false and malicious accusations that Mr. Martinez abused a Tribal credit card issued to him.  The Tribe has no evidence because it simply never happened and the Tribe and its attorneys know that it never happened or in the exercise of the most casual due diligence prior to making its allegations they should have known that it never happened.  Moreover, the Tribe's feeble and ineffective effort to attached the single, blacked out page of an American Express Card statement, shows that the Tribe: (1) acknowledges that its Complaint allegations against Mr. Martinez are based on pure bald legal conclusions without any actual factual support; and (2)  seeks to support the Complaint's legally insufficient allegations of credit card abuse, by inappropriately submitting to the Court a document, Response Exhibit A, which is not a part of the Complaint.

Defendant Julio Martinez hereby joins in and adopts by reference the legal arguments and authority cited by Defendants Guy Lewis, Michael Tein, and Lewis Tein P.L.'s Reply in Support of Motion to Dismiss (D.E. 140) as well as the legal arguments and legal authority cited by other Defendants to this action against the legally insufficiently pled RICO and Fraud claims attempted by Plaintiff's Complaint.  While the Tribe cites to *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) for the proposition that "Rule 9(b) is satisfied if the Complaint sets forth (1) **precisely** which statements were made in what documents or oral representations or what omissions were made, and (2) **the time and place of each such statement** and the

---

[1] The Morgan Stanley Smith Barney account statements, submitted by the Tribe as Response Exhibit D, likewise utterly fail to support any allegation of wrongdoing by Mr. Martinez.  The Complaint expressly alleges that the Tribal Business Council and the General Tribal Council reviewed the Tribe's financial transactions. Thus, not only were Mr. Martinez and Mr. Hernandez aware of the Smith Barney Account Statements, but so were all of the Tribe's officials and the Tribe's governing bodies.  This general awareness of the Tribe's finances by all concerned does not serve to support any of the Tribe's allegations or claims, but rather it serves to contradict and destroy the Tribe's bald legal conclusory allegations of wrongdoing.

person responsible for making (or in the case of omissions, not making) same, and (3) **the content of such statements** and the manner in which they misled the plaintiff, and (4), what the defendants obtained as a consequence of the fraud." (DE 118 at 8) (emphasis added), the Complaint certainly fails to satisfy the foregoing test conceded by Plaintiffs.

Nowhere in the Complaint does the Tribe identify any fraudulent statement or fraudulent act by Mr. Martinez or any other Defendant.  Instead, the Complaint wholly relies upon broad, sweeping allegations without focusing on any particular financial transaction for the purpose of explaining how any particular financial transaction was in fact fraudulent or unauthorized (despite the conflicting allegations of the Complaint as to the two Tribal Council's review/approval of all the alleged transactions).  None of the claims satisfy the specificity requirement or identify "precisely which statements were made." The Tribe does not allege which legal services were supposedly fictitious and which services were legitimate or for which Mr. Martinez in any specific way participated in fostering; yet, it admits by its own pleading that Lewis Tein performed *bona fide* legal work on its behalf and that Mr. Martinez performed the services required from him as a financial manager on its behalf.  Thus, there exists no distinction alleged in the Complaint between the duly authorized and required duties of Mr. Martinez and any broadly alleged accusation that Mr. Martinez participated in a fraudulent scheme.  *Bell Atlantic Corp* v. *Twombly,* 550 U.S. 554, 557 (2007) makes clear that pure legal conclusions should not be accepted as a substitute for pleading facts or, in accordance with Rule 9(b), fraud with requisite specificity. The Tribe relies upon legal conclusions throughout its Complaint and never sets forth specific factual examples of any wrongdoing. For the same reasons, the Tribe has failed to properly allege in its Complaint and the Tribe's Response has failed to cure the Tribe's pleading deficiencies respecting the existence of an "enterprise," or a "pattern or racketeering activity."  In short, the Tribe has failed to demonstrate any plausible racketeering claim with requisite specificity. *American Dental Ass'n* v. *Cigna Corp.,* 605 F.3d 1283, 1293 (11th Cir. 2010).   For the reasons expressed above, in the other Defendants' Reply filings and in the Motion to Dismiss, the Tribe's conspiracy claims also fail and the Court should decline to exercise supplemental jurisdiction. *See, e.g. Hardy* v. *Bham Bd. of Educ.* , 954 F.2d 1546, 1553 (11th Cir. 1992) (finding trial court abused its discretion by failing to remand a case involving pendent state law claims posing issues of first impression back to state court for resolution); 28 U.S.C. § 1367(c)(1).  In conclusion, based on the conflicting allegations made by the Tribe in the Complaint and its Response, showing that this matter is inextricably an intra-tribal dispute, this Lawsuit should now be dismissed with prejudice.

Respectfully submitted this 28th day of January, 2013.

> *s/ Manuel A. Avila*
> Manuel A. Avila
> Fla. Bar No. 868787
> **MANUEL A. AVILA, ESQ.**
> **& ASSOCIATES, P.A.,**
> 11120 N. Kendall Drive
> Suite 200
> Miami, Florida 33176
> Telephone: 305 249-1111
> Facsimile:  1-305 647-0686
> Email: mavila@avilalegal.com
> *Counsel for Defendant Julio Martinez*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 28, 2013 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> Respectfully submitted,
>
> *s/ Manuel A. Avila*
> Manuel A. Avila
> Fla. Bar No. 868787

## SERVICE LIST

| | |
|---|---|
| **Bruce S. Rogow, Esquire** | **Bryan T. West, Esquire** |
| **Tara A. Campion, Esquire** | **Tew Cardenas LLP** |
| Bruce S. Rogow, P.A. | 1441 Brickell Avenue, 15th Floor |
| 500 E. Broward Blvd., Ste. 1930 | Miami, FL 33131 |
| Fort Lauderdale, FL 33394 | Telephone: (305) 536-1112 |
| Telephone: 954-767-8909 | Facsimile: (305) 536-1116 |
| Facsimile: 954-767-1530 | E-mail: btw@tewlaw.com |
| E-mail: brogow@rogowlaw.com | *Counsel for Defendant Dexter W. Lehtinen,* |
| E-mail: tcampion@rogolaw.com | *Esquire* |
| *Counsel for Defendant Morgan Stanley* | |

**Jeffrey Micheal Cohen, Esq. Paul Calli, Esq.**
**Charles Short, Esq. Marissel Descalzo, Esq.**
Carlton Fields, P.A. 100 S.E. 2nd St., Ste. 4000
Miami, FL 33131 # (305) 530-0050 # (305)
530-0055 (fax) E-mails:
jmcohen@carltonfields.com
pcalli@carltonfields.com cshort@carltonfields.com
mdescalzo@carltonfields.com Counsels for
Defendants Lewis and Tein

**Robert O. Saunooke, Esquire** SAUNOOKE LAW
FIRM, P.A. 18620 SW 39th Court Miramar, FL
33029 Telephone: 561-302-5297 Facsimile:
954-499-0598 E-mail: ndnlawyer@hotmail.com
*and* **Steven M. Goldsmith, Esq.** STEVEN M.
GOLDSMITH, P.A. 5355 Town Center Road, Suite
801 Boca Raton, FL 33486 Telephone:
561-391-4900 Facsimile: 561-391-6973 E-mail:
steve.goldsmith@sgoldsmithlaw.com *Counsel for*
*Defendant Billy Cypress*

**Scott Alan Lazar, Esquire** Koltun & Lazar 7901
SW 67th Ave. Suite 100 Miami, FL 33143
Telephone: (305)-595-6791 Facsimile:
(305)-595-5400 E-mail: scott@koltunlazar.com
*Counsel for Defendant Miguel Hernandez*

**Bernardo Roman III, Esquire** Tribal Attorney,
Miccosukee Tribe of Indians of Florida P.O. Box
440021, Tamiami Station Miami, Florida 33144
Telephone: (305) 894-5214 Facsimile: (305)
894-5212 E-mail: bromanlaw@bellsouth.net
*Counsel for Plaintiff*

**Yinet Pino, Esq.**
**Yesenia Rey, Esq.**
1250 S.W. 27th Ave., # 506
Miami, FL 33135
# (305) 643-7993
# (305) 643-7995 (fax)
E-mails: yinet@bromanlaw.com
yesenia@bromanlaw.com
Counsels for Plaintiff