UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 12-Civ-22439-COOKE/MCALILEY**

MICCOSUKEE TRIBE OF INDIANS OF
FLORIDA, a sovereign nation and Federally
recognized Indian tribe,

    Plaintiff,

vs.

BILLY CYPRESS, DEXTER WAYNE
LEHTINEN, ESQUIRE, MORGAN STANLEY
SMITH BARNEY, JULIO MARTINEZ,
MIGUEL HERNANDEZ, GUY LEWIS, ESQUIRE,
MICHAEL TEIN, ESQUIRE, and LEWIS TEIN, PL,

    Defendants.
_____/

**OMNIBUS ORDER GRANTING DEFENDANTS' MOTIONS
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

THIS MATTER is before me upon all named Defendants' motions to dismiss: Defendant Dexter Lehtinen's Motion to Dismiss Second Amended Complaint (ECF No. 92); Defendants, Guy Lewis, Esquire, Michael Tein, Esquire, and Lewis Tein, PL's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 94); Defendant, Miguel Hernandez's, Amended Motion to Dismiss Second Amended Complaint and to Join all Other Defendants' Motion to Dismiss Second Amended Complaint to the Extent Applicable (ECF No. 103); Motion of Defendant, Billy Cypress, to Dismiss Second Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (ECF No. 104); and Defendant Julio Martinez's Motion to Dismiss Second Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Cause of Action and Joinder in Motions to Dismiss by Other Defendants (ECF No. 105). The Miccosukee Tribe of Indians of Florida filed its Response in Opposition to all Defendants'

Motions to Dismiss Plaintiff's Second Amended Complaint. *See* ECF Nos. 129, 118, 119, 125, and 120. All Defendants, in turn, submitted their Reply in Further Support of Motion to Dismiss Second Amended Complaint. *See* ECF Nos. 143, 140, 144, 146, and 147. Therefore, all Defendants' Motions to Dismiss Second Amended Complaint are fully briefed and ripe for adjudication.

I have reviewed the Defendants' Motions to Dismiss Second Amended Complaint, the Responses and Replies thereto, the record (excluding the exhibits improperly attached to the Miccosukee Tribe of Indians of Florida's Responses), and the relevant legal authorizes. For the reasons detailed herein, the Defendants' Motions to Dismiss Second Amended Complaint are granted.

## I. <u>BACKGROUND</u>[1]

"No one fights dirtier or more brutally than blood; only family knows its own weaknesses, the exact placement of the heart." Whitney Otto, <u>How to Make an American Quilt</u> (1991). Whitney Otto's quote seems a particularly apt description of the emotionally and politically charged litigation, occurring in multiple judicial venues, between the named parties, whom include the following.

### A. *The Parties*

1. <u>The Miccosukee Tribe of Indians of Florida</u>

The Miccosukee Tribe of Indians of Florida ("Plaintiff," or the "Miccosukee Tribe"), is a sovereign nation and federally recognized Indian tribe exercising powers of self-governance under a Tribal Constitution approved by the Secretary of the Interior, pursuant to the Indian

---

[1] The following facts, accepted as true, are taken from Plaintiff's Second Amended Complaint. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.").

2

Reorganization Act of 1934, 25 U.S.C. § 461 *et. seq.* Second Am. Compl. ¶ 5, ECF No. 1. It is governed by the Miccosukee General Council and the Miccosukee Business Council. The authority of the Miccosukee Tribe is vested in the Miccosukee General Council, while the Miccosukee Business Council is responsible for the daily administrative operation of the Miccosukee Tribe and carrying out the laws, policies and directives of the Miccosukee General Council. The Miccosukee Business Council is composed of the Chairman, Vice-Chairman, Secretary, Treasurer, and Lawmaker. *Id.* ¶¶ 5(a) & (b).

2. Billy Cypress

Defendant Billy Cypress ("Defendant Cypress"), an enrolled member of the Miccosukee Tribe, was its elected Chairman of the Miccosukee Tribe for a 22-year period, including the relevant period of time, which is 2005 through and including January 2010, at which time Defendant Cypress' term as Chairman concluded. As Chairman, Defendant Cypress "oversaw, controlled, supervised and had unrestricted access and control over all the financial funds and records of the Miccosukee Tribe…." *Id.* ¶ 6. Thus, Defendant Cypress contends that, at all times, he was acting in his "official capacity" pursuant to the authority granted him by the Miccosukee Tribe. *See* Def. Cypress' Mot. Dismiss at 3.

3. Miguel Hernandez

Defendant Miguel Hernandez ("Defendant Hernandez") was the Miccosukee Tribe's Director of the Finance Department for the relevant period of time. As the Director of the Finance Department, Defendant Hernandez oversaw and was responsible for the daily operation and supervision of the Miccosukee Tribe's Finance Department. Therefore, he had unrestricted access to and was in possession of all financial information of the Miccosukee Tribe, including, but not limited to, the Miccosukee Tribe's Morgan Stanley Smith Barney Investment Account

and all credit card statements for the officers of the Miccosukee Business Council. Second Am. Compl. ¶ 9. According to Defendant Hernandez, he served at the direction of Defendant Cypress, who was his direct supervisor. Def. Hernandez's Mot. Dismiss at 3.

    4.  <u>Julio Martinez</u>

Defendant Julio Martinez ("Defendant Martinez") served as the Miccosukee Tribe's Chief Financial Officer. In this capacity, Defendant Martinez performed his duties under the supervision and authority of Defendant Cypress and Defendant Hernandez. From 2005 through and including 2010, Defendant Martinez's responsibilities included, amongst others, receiving the monthly financial statements from, reviewing, and supervising the Miccosukee Tribe's Morgan Stanley Smith Barney Investment Account that is the subject of this lawsuit. *Id.* ¶¶ 7-8.

    5.  <u>Dexter Wayne Lehtinen, Esquire</u>

Defendant Dexter Wayne Lehtinen, Esquire ("Defendant Lehtinen") is a professional attorney, who served as the acting General Counsel and main attorney for the Miccosukee Tribe. In this capacity, Defendant Lehtinen represented the Miccosukee Tribe, all tribal entities, businesses, enterprises, and agencies, including, but not limited to, the Miccosukee Police Department, Miccosukee Indian Gaming, Miccosukee Resort and Convention Center, Miccosukee Real Estate, Miccosukee Fish and Wildlife, Miccosukee Athletic and Boxing Commission, Miccosukee Water Resources, Miccosukee Business Council, Miccosukee Intergovernmental Affairs, Legislative and Lobbying Office, and Miccosukee Golf Course, and Defendant Cypress, in his personal capacity. Defendant Lehtinen also represented the Miccosukee Tribe in all legal, administrative, and regulatory matters at the state and federal levels. During a few years of his tenure as General Counsel and primary counsel for the Miccosukee Tribe, Defendant Lehtinen also managed the daily operations of the Miccosukee

Indian Gaming. From 2005 until 2010, Defendant Lehtinen also reported on the revenues generated by gaming machines at Miccosukee Indian Gaming as well as other financial matters related to the Miccosukee Tribe. *Id.* ¶ 13.

6. Guy Lewis, Esquire; Michael Tein, Esquire; and Lewis Tein, P.L.

Defendants Guy Lewis, Esquire ("Defendant Lewis") and Michael Tein, Esquire ("Defendant Tein") are professional attorneys, who represented both Defendant Cypress in his individual capacity and the Miccosukee Tribe, along with their professional association, Defendant Lewis Tein, P.L. ("Defendant Lewis Tein"). *Id.* ¶¶ 10-12.

7. Defendant Morgan Stanley Smith Barney[2]

Defendant Morgan Stanley Smith Barney ("Defendant Morgan Stanley") is a financial institution and investment firm at which, from 2005 through and including 2010, the Miccosukee Tribe maintained an investment account. Defendant Morgan Stanley assigned a particular individual to serve as the Financial Advisor and Investment Consultant in charge of the Miccosukee Tribe's Morgan Stanley Smith Barney Investment Account.

**B. *Nature of the Suit***

Based upon the alleged wrongful acts detailed below, Plaintiff, the Miccosukee Tribe, brings claims sounding in federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.§ 1962(c), conspiracy to commit federal RICO, civil theft, fraud, aiding and abetting fraud, Florida Racketeer Influenced and Corrupt Organization, Fla. Stat. 895.01, *et seq.* ("Florida RICO"), Florida RICO conspiracy, embezzlement, breach of fiduciary duty, and

---

[2] Defendant Morgan Stanley Smith Barney has been terminated as a defendant in this action upon the order that the Miccosukee Tribe arbitrate its claims against Defendant Morgan Stanley Smith Barney. *See* Order Granting Defendant's Motion to Compel Arbitration and Dismiss or Stay Action Based Upon Agreement to Arbitrate, ECF No. 227. Therefore, I will forego detailing Defendant Morgan Stanley's alleged actions in the federal RICO Enterprise discussed herein.

fraudulent misrepresentation against Defendants Cypress, Lehtinen, Martinez, Hernandez, Lewis, Tein, Lewis Tein, and Morgan Stanley, although Plaintiff excepts Defendant Lehtinen from the federal RICO cause of action. *See generally* Second Am. Compl.; *Id*. ¶ 20.

1. <u>Federal RICO Enterprise</u>[3]

Of primary significance here is the Federal RICO Enterprise, which comprises the foundation of Plaintiff's federal claims of RICO violations and conspiracy to commit federal RICO. In Count I of its Second Amended Complaint, the Miccosukee Tribe avers that Defendants Cypress, Martinez, Hernandez, Lewis, Tein, Lewis Tein, and Morgan Stanley (collectively "the Federal RICO Defendants"), as members of the RICO Enterprise, "associated with each other over the course of five years for the common purpose of money laundering, mail fraud, and engaging in monetary transactions in criminally derived property from the MICCOSUKEE TRIBE, in order to obtain large sums of money and additional benefits, including but not limited to continued employment and other substantial financial benefits." *Id.* ¶¶ 20, 23.

Specifically, Plaintiff alleges that Defendant Cypress "arbitrarily recruited," hired, compiled, and continued employing a team of people, based upon their profession and skills, to assist him in embezzling millions of dollars and concealing the embezzlement from the Miccosukee Tribe. *Id.* ¶¶ 24-25. From 2005 through and including January 2010, the Miccosukee Tribe alleges that Defendant Cypress made over $3 million of dollars worth of unauthorized charges on credit cards issued to him by the Miccosukee Tribe and withdrew over

---

[3] Only a summary of the RICO Enterprise is set forth here, which I recognize does not pursue as much detail as Plaintiff's 314-page Second Amended Complaint.

$11.5 million from five financial management accounts belonging to the Miccosukee Tribe[4]. *Id.* ¶¶ 24-25, 39, 45, 47-49. Defendant Cypress used these funds for personal expenses and activities, such as gambling, investing in real estate, and purchasing luxury vehicles, jewelry, fine dining, and luxurious vacations. *Id.* ¶¶ 35, 41, 48.

While Defendant Cypress is the only defendant alleged to have actually embezzled funds from the Miccosukee Tribe, the other defendants are accused of participating through concealment and other assistance to Defendant Cypress, and deriving benefits from the embezzlement for their cooperation in the scheme. For example, in their role, Defendants Lewis, Tein, and Lewis Tein represented Defendant Cypress in personal matters – while simultaneously representing the Miccosukee Tribe – including an ongoing United States Internal Revenue Service (IRS) investigation for tax evasion concerning millions of dollars worth of credit charges and other funds wrongfully received from the Miccosukee Tribe. *Id.* ¶¶ 24, 106, 125, 139-140. Through this dual representation, Defendants Lewis, Tein, Lewis Tein, and Lehtinen used the rights and privileges, as well as the funds, of the Miccosukee Tribe to protect and fund Defendant Cypress in his personal legal matters. *Id.* ¶¶ 27-28. While charging the Miccosukee Tribe exorbitant fees for legal representation (three times higher than their colleagues), some of which is alleged to be "fictitious, unnecessary, inflated, substandard and exaggerated legal work," Defendants Lewis, Tein, Lewis Tein "kickbacked" a portion of the legal fees to Defendant Cypress by returning some of the excessive fees directly to Defendant Cypress to fund his gambling, investment in real estate, purchase of luxury vehicles, and other payments on personal expenses. *Id.* ¶¶ 29,40-41, 107-108, 126-128. In other instances, Defendant Cypress would identify Tribal Members in need of legal representation and assign Defendants Lewis,

---

[4] The automated teller machine (ATM) withdrawals from the five financial management accounts are alleged to have occurred between the years of 2006 through and including 2009.

Tein, and Lewis Tein to represent them. The Tribal Members' legal fees would then be paid by the Miccosukee Tribe to Defendants Lewis, Tein, and Lewis Tein through loans to the Tribal Members, which were said to be repaid at a later date, but were never intended to be enforced. *Id.* ¶¶ 41, 108, 127, 142. From May 19, 2005 to August 3, 2010, Defendants Lewis, Tein, and Lewis Tein billed the Miccosukee Tribe a total of approximately $10,917,752 for their legal services. *Id.* ¶ 50.

Defendant Morgan Stanley, at the behest of Defendant Cypress who selected Defendant Morgan Stanley as the Miccosukee Tribe's financial institution, is alleged to have managed the Miccosukee Tribe's funds in a manner allowing suspicious financial transactions to occur without enforcing and complying with banking regulations and safeguards. *Id.* ¶ 32.

Lastly, it is alleged that Defendant Cypress utilized Defendants Martinez and Hernandez to advise him regarding the investment of the proceeds and to assist him in preparing income tax returns. *Id.* ¶ 26, 84, 86, 90. In his role as the Chief Financial Officer, Defendant Martinez, along with Defendant Hernandez, subject to Defendant Cypress' final approval, approved and issued payment of the legal fee invoices of Defendants Lewis, Tein, and Lewis Tein, which Defendants Martinez and Hernandez knew included "exorbitant and fictitious legal fees" and "had been created, designed and arbitrarily approved by Defendant Cypress without a proper purpose." *Id.* ¶ 33, 67-70, 99. Defendants Martinez and Hernandez also received the Miccosukee Tribe account statements from Defendant Morgan Stanley containing Defendant Cypress' withdrawals, but did not notify the Miccosukee Business Council or the Miccosukee General Council about Defendant Cypress' numerous transactions in their financial report at any of the General Council Meetings occurring from February 2005 through November 2009, or any

of the Business Council Meetings conducted from January 2005 through January 2010.[5] *Id.* ¶¶ 34, 56, 59. Although the nature and purpose of the legal work reflected in Defendants Lewis, Tein, and Lewis Tein's invoices were discussed at the General Council Meetings and the Business Council Meetings, the representation to the Miccosukee Business Council and the Miccosukee General Council was that the legal services were for a "tribal purpose." It was not disclosed that the services also included Defendant Cypress' personal legal representation. *Id.* ¶¶ 57-58, 60-61.

Further, as the Director of the Finance Department, Defendant Hernandez is alleged to have had access to and possession of all financial information of the Miccosukee Tribe, including, but not limited to, the Morgan Stanley Investment Account, and all of the American Express credit card statements for Defendants Cypress and Martinez. *Id.* ¶ 82. Despite having this financial information and maintaining a monthly log of Defendant Cypress' gambling activities, Defendant Hernandez would make payments on the credit card accounts with Miccosukee Tribe funds and maintain this information in secret from the Miccosukee Tribe. *Id.* ¶¶ 84, 88-89. Also, the Miccosukee Tribe avers that Defendant Hernandez would issue a tribal check to Defendant Cypress to make personal purchases when Defendant Cypress would deliver to Defendant Hernandez the cash he had withdrawn from the Miccosukee Tribe's Morgan Stanley Investment Account. *Id.* ¶ 85, 89.

The Miccosukee Tribe suffered damages in the approximate total amount of $26,000,000.00 due to the alleged actions of Defendants Cypress, Lewis, Tein, Lewis Tein, Hernandez, Martinez, and Morgan Stanely in carrying out the RICO Enterprise. *Id.* ¶¶ 163-64.

---

[5] Plaintiff also claims that Defendant Lehtinen failed to inform the Miccosukee Business Council or the Miccosukee General Council about the retention and payment of excessive fees to Defendants Lewis, Tein, and Lewis Tein in his legal report. However, Defendant Lehtinen is not identified as a member of the federal RICO Enterprise.

2. Conspiracy for Federal RICO Enterprise

The Miccosukee Tribe alleges that not only was the RICO Enterprise – which included a kickback scheme, a fictitious loan scheme, and an ATM withdrawal scheme – carried out amongst the Federal RICO Defendants, but that the Federal RICO Defendants specifically agreed and conspired to engage in money laundering, mail fraud, and monetary transactions regarding criminally derived property of a value greater than $10,000.  Second Am. Compl. ¶¶ 166-67.  The Federal RICO Defendants "objectively manifested agreement to the commission of the substantive RICO violations and to the commission of two (2) or more predicate acts through participation and management in the conduct of the affairs of the Enterprise." *Id.* ¶ 179. The Federal RICO Defendants' conspiracy to violate RICO and their participation in the Federal RICO Enterprise were the actual, direct, natural, and proximate cause of the Miccosukee Tribe's injury, namely, "the loss of millions of dollars stolen by the Defendants." *Id.* ¶¶ 184-86.

## II. LEGAL STANDARD

### A. *Challenge to Subject Matter Jurisdiction*

When considering a 12(b)(1) challenge, a court is faced with either a facial attack or a factual attack.  *See Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003).  "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint." *Id.*  In other words, the allegations themselves reveal that subject matter jurisdiction is deficient.  By contrast, factual attacks contest the truth of the allegations, which, by themselves, would be sufficient to invoke federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Morrison*, 323 F.3d at 925 n.5 ("Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings.").  In resolving a factual attack, the district court may consider evidence outside the pleading, such as testimony and affidavits.  *Morrison*,

323 F.3d at 925 n.5. However, "[f]acial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)) (internal quotation marks omitted).

As determined in the Order Granting in Part and Denying Part Motion to Strike the Miccosukee Tribe of Indians of Florida's Response in Opposition to Motion to Dismiss Second Amended Complaint (ECF No. 281), the Defendants raise a facial challenge in the instant matter. Therefore, the averments of the Second Amended Complaint alone must sufficiently provide this Court with a basis of subject matter jurisdiction.

### B. Failure to State a Claim

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a motion to dismiss is to test the facial sufficiency of a complaint. *See Hermoza v. Aroma Restaurant, LLC*, No. 11-23026-CIV, 2012 WL 273086, at *1 (S.D. Fla. Jan. 30, 2012). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. Detailed factual allegations are not required, but a pleading "that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl.*

11

*Corp v. Twombly*, 550 U.S. at 555). A court does not have to accept legal conclusions in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

### III. DISCUSSION

The parties hereto have been battling legally, with personal ramifications, for quite some time. Despite every effort of the Miccosukee Tribe to bring this battle to the doorstep of the federal courthouse, the door cannot open to allow an intra-tribal dispute of this nature. Even if it could, the Miccosukee Tribe's claims would nevertheless be denied entry because, in short, the Miccosukee Tribe simply does not state a federal cause of action.

### A. Lack of Subject Matter Jurisdiction over Intra-Tribal Dispute

As courts of limited jurisdiction, "[f]ederal courts are expected to monitor their jurisdictional boundaries vigilantly." *America Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP*, 362 F.3d 136, 139 (1st Cir. 2004). For that reason, the Court is obligated to inquire into whether it has subject matter jurisdiction over this case. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006); *Univ. of S. Ala. V. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)[6]; *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 (11th Cir. 2005) (noting that "the burden to establish the existence of federal subject matter jurisdiction rests with the party bringing the claim").

"Indian tribes retain elements of sovereign status, including the power to protect tribal self government and to control internal relations." *Smith v. Babbitt*, 100 F.3d 556, 558 (8th Cir.

---

[6] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

1996) (citing *Montana v. United States*, 450 U.S. 544, 564 (1981)).  Therefore, "[f]ederal courts have consistently affirmed the principle that it is important to guard 'the authority of Indian governments over their reservations.'"  *Longie v. Spirit Lake Tribe*, 400 F.3d 586, 589 (8th Cir. 2005) (quoting *Williams v. Lee*, 358 U.S. 217, 223 (1959)).

As Plaintiff properly defines, an intra-tribal dispute is one that affects matters of trial self-government and sovereignty.  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 53 (1978).  Some such matters – but by no means an exhaustive list – include the inherent power to determine tribal membership, to regulate domestic relations among members, to prescribe rules of inheritance for members, and the power to punish tribal offenders.  *Montana v. U. S.*, 450 U.S. 544, 564 (1981).

The case of *Smith v. Babbitt*, identifying an intra-tribal dispute masked in a federal claim, is highly persuasive. 100 F.3d 556, 558 (8th Cir. 1996).  In *Smith v. Babbitt*, members and nonmembers of Shakopee Mdewakanton Sioux (Dakota) Community sued both tribal and federal officials under the Indian Gaming Regulatory Act (IGRA), Indian Civil Rights Act (ICRA), Indian Reorganization Act (IRA), RICO, and the tribal constitution based upon their position that some ineligible persons were improperly receiving payments, and other eligible persons were being denied payments to which they were entitled.  Despite alleging violations of RICO and other federal statutes, the court determined that at its core, the conflict was an intra-tribal dispute over membership.  In dismissing the action as one being "properly left to tribal authorities," the court held that, "[f]ederal court jurisdiction does not reach this matter simply because the plaintiffs carefully worded their complaint."  *Smith*, 100 F.3d at 559.  Similar to *Smith*, upon closer examination of the Second Amended Complaint at issue in the instant matter, one realizes that the Miccosukee Tribe is "attempt[ing] to move this dispute, over which this court would not

13

otherwise have jurisdiction, into federal court," *id*. because at its core, this is a dispute involving the Miccosukee Tribe and the alleged abuse of power granted to its former chairman under its tribal constitution. The Miccosukee Tribe is bootstrapping what is discontent with the prior leadership onto alleged federal claims that are better resolved in another venue.

The Miccosukee Tribe does not dispute each Defendant lawfully occupied his/its various position either by being elected to the position, or then being duly appointed or retained by the Miccosukee Tribe's elected chairman. Thus, at its essence, the Miccosukee Tribe's dispute concerns the allegation that the Defendants' wrongful acts exceeded the authority the Miccosukee Tribe bestowed on them as contemplated in the Tribe Constitution. This quarrel, which necessarily involves interpretation of the Tribal Constitution, is intra-tribal. *See Sac & Fox Tribe of Mississippi in Iowa v. Bear*, 258 F. Supp. 2d 938 (N.D. Iowa 2003) *aff'd sub nom. In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749 (8th Cir. 2003). In *Sac & Fox Tribe of Mississippi in Iowa v. Bear*, the court declined to find that plaintiff Indian tribe, Sac and Fox Tribe of the Mississippi in Iowa, carried its burden of demonstrating subject matter jurisdiction for its RICO claim based upon the predicate acts of laundering of monetary instruments in violation of 18 U.S.C. § 1956 and engaging in monetary transactions in property derived from specified unlawful activities in violation of 18 U.S.C. § 1957, amongst others. In dismissing the suit for lack of federal question subject matter jurisdiction, the court stated:

> With the exception of the two predicate acts based on state law, which the Court finds inapplicable in this case, each of the predicate acts alleged above requires a finding that defendants' acts in taking control of the Tribal Council are unlawful. If the Appointed Tribal Council is properly in place, their actions would not constitute predicate offenses. Therefore, in order to rule on plaintiffs' RICO claims, this Court would have to first determine whether defendants are unlawfully in control of the Tribe. As previously discussed, this Court does not

> have jurisdiction to determine which Tribal Council is properly in place under the Tribal Constitution. This is intra-tribal dispute over which this Court has no subject matter jurisdiction.

*Id.* at 944. The Eight Circuit Court of Appeals affirmed this ruling, concluding, in the alternative, that RICO did not provide a basis for federal question jurisdiction in the intra-tribal dispute between rival tribal councils – the Elected Council and the Appointed Council – because the alleged misconduct by the Elected Council could not be considered qualifying predicate violations under RICO unless the court first concluded that that Elected Council was not the lawful governing body of Tribe. *In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749 (8th Cir. 2003).

Similarly here, the Miccosukee Tribe is asking the Court to decide that the Defendants unlawfully exceeded their authority as officers and agents of the Miccosukee Tribe when it engaged in behavior the Miccosukee Tribe contends were not in its interest. The Miccosukee Tribe suing its former officials and agents is akin to shareholders suing its company's officers. The suit is internal to the organization; the attack is not originating from a third party without the organization. The distinction is applicable law permits shareholders to bring suit against its officers for certain wrongs; the same open courthouse door policy is not afforded sovereign Indian nations when the dispute arises within its domain. *See Longie*, 400 F.3d at 588-89. While all defendants to this action may not be tribal members, this fact alone does not defeat the determination that this is an intra-tribal dispute where the issue concerns "the political integrity, the economic security, or the health or welfare of the tribe." *Montana v. U. S.*, 450 U.S. 544, 566 (1981) ("To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations.... A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when

that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.").

Despite Plaintiff's urging, this issue has not been decided in its favor, and the case of *Cheyenne-Arapaho Tribes of Oklahoma v. Beard*, 554 F. Supp. 1 (W.D. Okla. 1980) does not demand a contrary result. In *Cheyenne-Arapaho Tribes of Oklahoma*, the district court held that an action by the Indian tribes and two individual tribal members against the tribal officials to recover actual and punitive damages for alleged misappropriation of tribal income was not a nonjusticiable political question and the federal court did not lack jurisdiction "over civil causes of action arising between Indians within 'Indian Country.'" 554 F. Supp. at 4. The district court came to these conclusions without any citation to legal authority, and grounded its finding in its primary holding that the court had subject matter jurisdiction pursuant to 28 U.S.C. § 136, as action arising under a law of the United States, because the criminal statute under which the plaintiff Indian tribes and tribal members brought claims, 18 U.S.C. § 1163, provided an implicit private cause of action. However, in the Tenth Circuit's rejection of the reasoning in *Cheyenne-Arapaho Tribes of Oklahoma v. Beard* and dismissal of its suit based on lack of subject matter jurisdiction, the Tenth Circuit determined that 18 U.S.C. § 1163 did not contain a private civil right of action because Congress did not intend to provide such an enforcement mechanism. *Kaw Nation v. Springer*, 341 F.3d 1186 (10th Cir. 2003). Notably, the Tenth Circuit alluded to the fact that in this tribal dispute, there are likely tribal remedies against the defendants. *Kaw Nation*, 341 F.3d at 1191 n.4.

### B. Declining Jurisdiction over State Law Claims

A "district court[ ] may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §

1367(c)(3). Indeed, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir.2004). *Adams v. Rothstein*, No. 11-61688-CIV, 2012 WL 1605098 (S.D. Fla. May 8, 2012).

Exercising my discretionary power to retain or release jurisdiction over the state law claims that remain following dismissal of the sole federal law claim, I elect to decline jurisdiction. Note, "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right, and hence the power need not be exercised in every case in which it is found to exist." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). "With respect to supplemental jurisdiction, a federal court has subject-matter jurisdiction over specified state-law claims, see §§ 1367(a), (c), and its decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary, *see, e.g., Osborn v. Haley*, 549 U.S. 225, 245, 127 S. Ct. 881, 166 L.Ed.2d 819." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1864 (2009).

### IV. CONCLUSION

This Court lacks subject matter jurisdiction over this intra-tribal dispute regarding the misuse of broad and unfettered power bestowed by the Miccosukee Tribe on its chief. Further, all other state claims are properly adjudicated in the state court given that this Court lacks jurisdiction over the sole federal claim.

Based upon my review of the Second Amended Complaint and the relevant legal authority, I am not of the opinion that Plaintiff can draft a complaint that will confer jurisdiction upon this Court, even accepting them as true as averred by the Miccosukee Tribe. Plaintiff has amended its complaint on two prior occasions, and as previously stated, it has proffered little to

convince me that an additional attempt would cure the deficiencies. *See Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) ("Dismissal with prejudice is proper, however, … if a more carefully drafted complaint could not state a valid claim.").

For the foregoing reasons, Defendant Dexter Lehtinen's Motion to Dismiss Second Amended Complaint (ECF No. 92); Defendants, Guy Lewis, Esquire, Michael Tein, Esquire, and Lewis Tein, PL's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 94); Defendant, Miguel Hernandez's, Amended Motion to Dismiss Second Amended Complaint and to Join all Other Defendants' Motion to Dismiss Second Amended Complaint to the Extent Applicable (ECF No. 103); Motion of Defendant, Billy Cypress, to Dismiss Second Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (ECF No. 104); and Defendant Julio Martinez's Motion to Dismiss Second Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Cause of Action and Joinder in Motions to Dismiss by Other Defendants (ECF No. 105) are **GRANTED**.  Plaintiff, the Miccosukee Tribe of Indians of Florida's, Second Amended Complaint (ECF No. 75) is **DISMISSED** based upon lack of subject matter jurisdiction over the action and the attendant state law claims.

I am quite certain that this Omnibus Order will affect minimally the incessant litigation and sour relations between the parties.  I simply implore the parties to heed that "an eye for an eye will only make the whole world blind."  - Mahatma Gandhi

The Clerk of Court shall ***administratively* CLOSE** this case.  All pending motions concerning the substantive claims brought in this action are **DENIED *as moot***.

**DONE and ORDERED** in chambers at Miami, Florida, this 30th day of September 2013.

_____
MARCIA G. COOKE
United States District Judge

Copies provided to:
*Chris M. McAliley, U.S. Magistrate Judge*
*Counsel of record*