UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 12-22439-CIV-COOKE/MCALILEY

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA,

    Plaintiff,
v.

BILLY CYPRESS, *et al.*,

    Defendants.
_____/

**MOTION FOR CONTEMPT OF COURT & SANCTIONS
AND INCORPORATED MEMORANDUM OF LAW**

    Defendant Dexter W. Lehtinen ("Lehtinen"), by and through undersigned counsel, hereby files this Motion for Contempt of Court and for Sanctions pursuant to Rule 37 F.R.C.P., pursuant to the Court's inherent authority, and for spoliation of evidence, as follows:

**VIOLATION OF A DIRECT COURT ORDER**

    1.    On May 12, 2014, this Court conducted a hearing on various Motions for Rule 11 Sanctions, including that of Lehtinen (D.E. 273) against the Plaintiff Miccosukee Tribe of Indians of Florida ("the "Tribe"). The hearing was ultimately continued to June 5, 2014, where the Court will hear what evidence the Tribe had for its allegations against Lehtinen and other parties.

    2.    Lehtinen in this case stands accused by the Tribe of having made certain false representations to the Tribe, whom he represented for 18 years. Those false representations were allegedly made by Lehtinen at the Tribe's quarter-annual General Council meetings or in written reports to the Tribe. They included allegedly false statements by Lehtinen that the Tribe had

1

created a tax-reserve fund.[1] Plaintiff has also asserted that Lehtinen falsely advised it that individual Indians are not required to pay income taxes.

3. The Tribe previously admitted that all its General Council meetings, where Lehtinen allegedly made the false statements, have been recorded on tape (the term "tape" is used synonymously with the term "recording" in this case, although the recordings may have been made on media other than magnetic tape ).

4. During the May 12, 2014 hearing, the Court ordered that Plaintiffs produce all the General Council tapes from January 1, 2004 through May, 2010, when the Tribe severed its attorney-client relationship with Lehtinen.

5. Lehtinen complained that the Tribe continually suggests that all the tapes have been provided, when in fact the most crucial tapes have *not* been provided. *See* Hearing Transcript at p. 52 **(Exhibit "A")**. Lehtinen alleged spoliation of evidence. *Id.*

6. This Court ordered Plaintiff's to produce every tape that exists from the general council meetings from January 1, 2004 through May, 2010.  In response to Plaintiff's suggestions that some of the tapes may no longer exist, the Court ordered Plaintiff to explain:

> **THE COURT: …. and if the tape no longer exists, why; and when it was destroyed. And when I say "when," the date that it was destroyed.**

---

[1] With respect to the Tribe's Special Tax reserve fund, Count X alleged:

466. …  Defendant LEHTINEN knew or should have known that there was no such "separate designated account" and that no monies were being set aside for the purposes that they had stated.

467. Nevertheless, … LEHTINEN… continued to represent to the members of the MICCOSUKEE TRIBE, during General Council Meetings, that millions of dollars had been set-aside on that "tax-reserve fund" for that purpose. At the time of those representations, … Defendant LEHTINEN knew that no such "tax-reserve fund" had been created and that there were no millions of dollars in "tax-reserve funds."

2

Hearing Transcript at p. 53

When counsel for the Tribe equivocated on the production of recordings, the following colloquy took place at the hearing:

> **MR. ROMAN:** Also, Your Honor, I want to address just the term being used "destroyed." Every single tape, and we will producing everything again, as Your Honor orders.
>
> **THE COURT:** Does it exist?
>
> **MR. ROMAN:** They are tapes that do not exist.
>
> **THE COURT:** If it doesn't exist, then it was destroyed. That means deleted, burned, smoked out, whatever you want to use. If it no longer exists, it was destroyed.
>
> **MR. ROMAN:** Okay.
>
> **THE COURT:** Now, if you want to get Merriam-Webster in here, so we can argue over semantics, Mr. Roman, or we can advance this ball forward. That's -- that's what is continually happening in this case. You are dancing on the head of legal pins that don't exist, and the time has come for it to stop. Everybody is going to put their money where their mouth is, you as well as of the defendants. So it's over. So you figure out how you want to proceed from here, but this is over.

Hearing Transcript at p. 53.

7.   On May 23, 2014, Plaintiffs filed a document called "Notice of Compliance with Court's Order to Produce Recordings and Minutes." D.E. 306.  In fact, D.E. 306 conclusively documents that Plaintiffs did *not* comply with the Court Order.  In D.E. 306, Plaintiff states that out of 26 quarterly general council meetings from 2004 to May 2010, 13 (thirteen) recordings have disappeared. D.E. 306 at 2. While Plaintiff submits what amounts to an affidavit of Yinet Pino, Esq., as to her activities, Plaintiff does not explain why the 13 tapes do not exist, and when

LEHTINEN SCHULTZ RIEDI CATALANO de la FUENTE, PLLC
1111 Brickell Avenue | Suite 2200 | Miami, Florida 33131 | Tel. 305 760 8544 | Fax. 305 356 5720 | www.LSRCF.com

they were destroyed, i.e., the date that they were destroyed. Accordingly, Plaintiff violated a direct order of this Court.

8. The tapes, and their disappearance is no trivial matter. For one, the tapes would conclusively prove whether Plaintiff made the necessary inquiry into the facts of the case before making the specific allegations against Lehtinen. They would let Lehtinen clear his name, and they would expose Plaintiff to Rule 11 sanctions for making false allegations against Lehtinen. More importantly (*see* List of Tapes of General Council Meetings and non-compliance with Court Order, attached as **Exhibit "B"**):

a. For the all important year 2006, when these matters would have been discussed at the General Council,[2] all four tapes were destroyed, without explanation!

---

[2] In 2006, Lehtinen prepared, presented and distributed at several general council meetings a detailed analysis of the income taxation issue for the Tribe, none of which contained the statements ascribed to Lehtinen in the pleadings. Redacted versions of these handouts are attached hereto as **Composite Exhibit "C"**. In June, Lehtinen also sent a memorandum to the Tribe advising the Tribe of the litigation position to be taken toward the Internal Revenue Service. He stressed to the Chairman (i.e., the head of the Tribe's business council, to whom Lehtinen reported) that the Tribe's position was contrary to the IRS position, and that the IRS would be unlikely to accept it. Moreover, Lehtinen wrote to the chairman: *"placing funds in reserve to cover the potential taxes due from individual tribal members (if the IRS rejects the tribe's position), as you have indicated the Tribe is doing, is a prudent step."* See p.1 of June 26, 2006 memorandum with attachments, attached as **Composite Exhibit "D"**. The minutes of the February 2006 general council attempt to restate the advice actually given by Lehtinen. **Exhibit "E"**, at 6. The minutes of the May 2006 general council reflect Lehtinen's hand-out (part of Composite Exhibit C), **Exhibit "F"** at 3. The minutes of the August 2006 general council indicate a lengthy discussion took place concerning tax issues *"but the microphone malfunctioned at this time."* **Exhibit "G"** at 5. The minutes of the November 2006 general council meeting (and all other minutes of general council meetings) show none of the false statements attributed to Lehtinen. *See* **Exhibit "H"** at 3-4. However, the February 6, 2006 minutes (Exhibit "E" at 10) clearly show that the Tribe's *Treasurer Max Billie* reported the existence to the Tribe of Reserve Fund B, containing $33,429,598.40 (the Complaint alleged Lehtinen falsely asserted the existence of such a fund containing millions of dollars), and the November 2006 minutes clearly show that *Chairman Billie Cypress* stated that monies have been set aside in case the Tribe starts paying the income taxes. Exhibit "H" at 3. The tapes, if they still existed, would show that Tribal elders, and not Lehtinen, asserted the existence of Tax

4

      b.    For the years 2006 through 2009, which are the relevant years when Lehtinen appeared repeatedly before the Miccosukee Council, <u>13 out of 16 tapes have been destroyed without explanation.</u>

      c.    Plaintiff, contrary of the Court's order, provided hundreds of non-responsive general council and *business council* recordings, dating back to 1982, none of which have any relevance. For the year where it mattered, 2006, Plaintiff provided no general council recordings.

      d.    Note that for the years *before* the relevant time period (up to 2005) and *after* the relevant time period (after August 2009), all the tapes exist. For 2006 and most of 2007 to 2009, they have vanished while they were in the Tribe's control.

      e.    Plaintiff did provide "Minutes" for the meetings without tapes. None of the minutes in any way suggest that Defendant Lehtinen made any of the false statements ascribed to him in the Complaint as having been made at the general council meeting. However, the minutes demonstrate conclusively that tapes at one time existed for these meetings, and are further evidence of the spoliation of evidence perpetrated by Plaintiff. For example, the Minutes of August 3, 2006 reflect a legal report by Dexter Lehtinen, but when the crucial tax issues and Lehtinen's meeting with the IRS are addressed, the following entry appears in the minutes:

**"Lengthy discussion ensued, but microphone malfunctioned at this time."**

General Council Minutes of August 3rd, 2006, at p. 5 (Bate Stamp MICC 64194, attached as **Exhibit "G"**). At no other time did the microphone malfunction, and Lehtinen' voice appears loud and clear on all the tapes actually provided.

---

Reserve Fund B, and that such a fund actually existed. The tapes would thus prove the complete lack of factual or legal basis of the claims against Lehtinen.

5

LEHTINEN SCHULTZ RIEDI CATALANO de la FUENTE, PLLC
1111 Brickell Avenue | Suite 2200 | Miami, Florida 33131 | Tel. 305 760 8544 | Fax. 305 356 5720 | www.LSRCF.com

9. The tape recordings of the meetings are conclusive evidence, either supporting or refuting Plaintiffs' allegations against Lehtinen. The tapes, quite simply, are the lynchpin of both Plaintiff's allegations, and Lehtinen's denial that he made such false representations.

10. The Tribe's destruction of the tapes deprive Defendant Lehtinen of his opportunity to prove, cleanly and conclusively, that he never lied or misrepresented facts as alleged in the Complaint. The tapes were at all times in the custody and control of Plaintiff Tribe, and their destruction is a great benefit to the Tribe. The tapes are the primary evidence with respect to Lehtinen's Rule 11 motion and with respect to other pending lawsuits in state court. Their destruction amounts to spoliation of evidence, and additional sanctions by this Court are in order (i.e., in addition to sanctions for disobeying the Court's order to explain why and when the tapes were destroyed).

11. Because of Plaintiff's unsupported allegations, Lehtinen and his counsel had to spend numerous hour of listening to tapes to determine whether Legtinen actually uttered the statements ascribed to him. To date, the recordings have not shown any such statements. Accordingly, the litigation conduct of the Tribe has necessitated a great expenditure of time and money by Lehtinen, when the Tribe could have either (a) admitted that the statements were never made and withdrawn the allegations as demanded by Lehtinen, or (b) provide the specific recordings of the statements Lehtinen allegedly made. At the very least, the Tribe should pay Lehtinen's counsel's fees to disprove the unsupported allegations.

## MEMORANDUM OF LAW CONCERNING SANCTIONS

A. **Sanctions pursuant to Rule 37**

Rule 37(b) of the Federal Rules of Civil Procedure provides that a district court may impose sanctions for a party's failure to comply with discovery orders. The court may

"penalize uncooperative attorneys or parties litigant in discovery proceedings by requiring the payment of reasonable expenses, including attorney's fees, caused by the failure." *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006) (internal quotation marks omitted). Permissible sanctions under Rule 37 are:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Rule 37(b)(2)(A). "[O]nly in a case where the court imposes the most severe sanction-default or dismissal-is a finding of willfulness or bad faith failure to comply necessary." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994). In other words, "[a] court may impose lesser sanctions without a showing of willfulness or bad faith on the part of the disobedient party." *Id*.

District courts have "broad discretion" to impose sanctions for discovery violations, and to apportion fault between the attorney and the client. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005); *Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993). "[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Flury*, 427 F.3d at 944. "The magnitude of sanctions awarded is bounded under Rule 37 only by that which is 'reasonable' in light of the circumstances." *Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1453 (11th Cir. 1985). "Permissible purposes of sanction include: 1) compensating the court and

7

other parties for the added expense caused by the abusive conduct; 2) compelling discovery; 3) deterring others from engaging in similar conduct; and 4) penalizing the guilty party or attorney." *Id*.

Sanctions: In the instant case, there is no doubt that the Tribe has defied a direct order of this Court to provide the tapes or, if they cannot be provided, an explanation of why and on what date a given tape was destroyed. The Court should (1) direct that it be taken as established for purposes of the action that Dexter Lehtinen did not make the false statements ascribed to him; and (2) prohibit the Tribe from opposing Lehtinen's assertion that he never made any false statements to the Tribe. In addition, in accordance with *Carlucci*, supra, the Court should (3) order the Tribe to compensate the Lehtinen and other parties for the added expense caused by the abusive conduct; (4) compel the Tribe's records custodian for the time 2006 to 2013 to appear and testify before the Court as to the whereabouts of the tapes, (5) compel Ms. Isabel Ibanez, the assistant Secretary to the Tribe's Business Council who has knowledge concerning the recordings to appear and testify before the Court (*see* D.E. 306-1, ¶4), (6) compel Tribal counsel to appear and testify whether counsel listened to the general council tapes before making the allegations concerning Lehtinen's statements at general council in the pleadings, and (7) penalize the guilty party or attorney who signed the Tribe's pleadings.

B.   **Sanctions under Court's Inherent Authority**

A court may also impose sanctions for litigation misconduct under its inherent power upon a finding of bad faith. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) ("The key to unlocking a court's inherent power is a finding of bad faith."). A court may exercise its inherent powers "even if procedural rules exist which sanction the same conduct." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). A court must, however,

LEHTINEN SCHULTZ RIEDI CATALANO de la FUENTE, PLLC
1111 Brickell Avenue | Suite 2200 | Miami, Florida 33131 | Tel. 305 760 8544 | Fax. 305 356 5720 | www.LSRCF.com

exercise its inherent powers "with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

"A party demonstrates bad faith by, *inter alia,* delaying or disrupting the litigation or hampering enforcement of a court order." *Eagle Hosp. Physicians*, 561 F.3d at 1306. "Without a 'smoking gun' statement from the plaintiff, . . . a district court makes a determination of bad faith by drawing inferences from the conduct before it." *Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001).

The court's inherent sanctioning power "encompasses the ability to impose civil and criminal contempt." *Serra Chevrolet*, 446 F3d at 1147. "[A] court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated." *In re E.I. DuPont De Nemours & Company-Benlate Litig.*, 99 F.3d 363, 368.

Sanctions:  In the instant case, the Court should find the Tribe and its counsel to be in civil contempt for failure to follow the Court's order concerning disclosure why and when the highly relevant tapes were destroyed. In addition, the Court should find that it is established, for purposes of Lehtinen's Rule 11 motion, that Lehtinen did not make the statements he is alleged to have made in the Complaint in this matter, and therefore that Plaintiff did not have a reasonable basis in law or fact for making the allegations against Lehtinen.

C.   **Sanctions for Spoliation of Evidence**

According to *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F.Supp.2d 1317, 1321 (S.D.Fa. 2010), spoliation of evidence has been defined as the "intentional destruction of evidence or the significant and meaningful alteration of a document or instrument." *Southeastern Mechanical Services, Inc. v. Brody*, 657 F.Supp.2d 1293, 1299 (M.D.Fla.2009) (citing *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292,

9

1308 (11th Cir.2003)). Spoliation also includes the intentional concealment of evidence. *See Walter v. Carnival Corp.*, No. 09–20962–CIV, 2010 WL 2927962 at *2 (S.D.Fla. July 23, 2010) (citing *St. Cyr v. Flying J Inc.*, No. 3:06–cv–13–33TEM, 2007 WL 1716365 at *3 (M.D.Fla. June 12, 2007));

"[T]he party seeking [spoliation] sanctions must prove ... first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Walter*, 2010 WL 2927962, at *2 (citing *Floeter v. City of Orlando*, 6:05–cv–400–Orl–22KRS, 2007 WL 486633, at *5 (M.D.Fla. Feb. 9, 2007)). Even if all three elements are met, "[a] party's failure to preserve evidence rises to the level of sanctionable spoliation "only where the absences of that evidence is predicated on bad faith," such as where a party purposely loses or destroys relevant evidence." *Id.* at *2 (citing Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir.1997))(internal quotation marks omitted).

If direct evidence of bad faith is unavailable, the moving party may establish bad faith through circumstantial evidence. *Id.*; see also *Atlantic Sea Company, S.A. v. Anais Worldwide Shipping, Inc.*, No. 08–23079–CIV, 2010 WL 2346665, at *2 (S.D.Fla. June 9, 2010) (noting that where the movant "offer[s] no direct evidence of bad faith, ... this Court must assess the circumstantial evidence of bad faith under the standard set forth in Calixto."). The following constitutes circumstantial evidence of bad faith:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

LEHTINEN SCHULTZ RIEDI CATALANO de la FUENTE, PLLC
1111 Brickell Avenue | Suite 2200 | Miami, Florida 33131 | Tel. 305 760 8544 | Fax. 305 356 5720 | www.LSRCF.com

*Walter*, 2010 WL 2927962, at *2 (citing *Calixto v. Watson Bowman Acme Corp.*, No. 07–60077–CIV, 2009 WL 3823390, at *16 (S.D.Fla. Nov. 16, 2009)). The party seeking the sanctions must establish all four of these factors where there is no direct evidence of bad faith. *Calixto,* 2009 WL 3823390, at *16 (11th Cir. 1996)(stating that "in this Circuit, bad faith may be found on circumstantial evidence where all of the [aforementioned] hallmarks are present") (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)).

In this case, all four *Walter/Calixto* factors are readily apparent.  (1) the Tribe does not dispute that the tapes existed in its custody and control, and yet, the Tribe did not produce the recordings when ordered by the Court; (2)  the Tribe was in complete control of the tapes at all times, and engaged in an affirmative act causing the tapes to be unavailable; (3) the tapes were lost at a time the Tribe knew it had a duty to preserve the recordings of its general council meetings as a permanent record of governmental action; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator, i.e., the Tribe when ordered by the Court to explain the destruction of the tapes completely failed or refused to do so, and the tapes before and after the relevant period exist.  To the extent the Tribe denies any of the foregoing factors, their Records Custodian for the period from 2006 through today should appear in Court to testify under oath with respect to the foregoing factors.

"A contempt sanction is considered civil if it is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Serra Chevrolet*, 446 F3d at 1147 (internal quotation marks omitted). Generally, "[a] finding of a failure to comply with discovery orders is a finding of civil contempt." *Id.* However, a finding of contempt for discovery violations after a case is terminated will normally

11

be criminal in nature. *See In re E.I. DuPont-Benlate Litig.*, 99 F.3d at 363 ("Where the contemnor cannot avoid the sanction by agreeing to comply with the original order to produce the documents, the sanctions order is determinate and therefore criminal in nature." (internal quotation marks omitted)). The Eleventh Circuit has "uniformly regarded the imposition of a penalty against attorneys for a punitive purpose as a criminal contempt sanction." *United States v. Skuthan*, 442 F. App'x 460, 461 (11th Cir. 2011) (quoting *United States v. KS & W Offshore Eng'g, Inc.*, 932 F.2d 906, 908 (11th Cir. 1991)). The court must find that the attorney's conduct "rise[s] to the level of willfulness." *Id.*

In the instant case, circumstantial evidence clearly demonstrates that the Tribe acted wilfully and with bad faith when it (a) destroyed or absconded with the tapes that would exonerate Lehtinen, and (b) refused to state as ordered by the court why the Tapes are not produced and when they were destroyed. If there ever is a case warranting sanctions for spoliation of evidence, this is it. Here, the Tribe made grave accusations against their trusted counsel of 18 years, impugning his integrity and damaging his reputation in the community. When the Tribe was forced to provide the tapes that admittedly existed (see Court's instructions at Exh. A, p. 54), and which would let Lehtinen prove his integrity and the truth about his advice to the Tribe, the tapes conveniently disappeared, all while in the complete custody and control of Plaintiff. Moreover, even the meeting minutes that should have given a hint of Lehtinen's true advice to the Tribe (*e.g.* August 2006) appear to have been manipulated to suggest that Lehtinen's advice, and only his advice, was inaudible on the tape that was later destroyed. The level of the Tribe's misconduct is appalling.

LEHTINEN SCHULTZ RIEDI CATALANO de la FUENTE, PLLC
1111 Brickell Avenue | Suite 2200 | Miami, Florida 33131 | Tel. 305 760 8544 | Fax. 305 356 5720 | www.LSRCF.com

## CONCLUSION

For the foregoing reasons, Defendant Dexter W. Lehtinen respectfully requests that (a) the Miccosukee Tribe of Indians of Florida be found in willful civil contempt of court for failure to explain why and when the missing tapes were destroyed; (b) the Court deem it established that Lehtinen did not make the statements ascribed to him in the Complaint, and therefore that Plaintiff did not have a reasonable basis in law or fact for making the allegations against Lehtinen in its pleadings; and (c) the Court should order the Tribe to compensate Lehtinen and other parties for the added expense caused by the abusive conduct.  To the extent the Tribe disputes that the tapes existed or that it had a duty to preserve them, the Court should (d) compel the Tribe's records custodian for the time 2006 to 2013 to appear and testify before the Court, (e) compel Ms. Isabel Ibanez, the assistant Secretary to the Tribe's Business Council, who has knowledge concerning the recordings, to appear and testify before the Court (*see* D.E. 306-1, ¶4), and (f) penalize the guilty party or attorney for the contemptuous and sanctionable conduct. The Court should enter such other and further relief as it deems necessary and proper.

    Respectfully submitted,

**LEHTINEN SCHULTZ RIEDI CATALANO DE LA FUENTE PLLC**
*Attorneys for Dexter W. Lehtinen, Esq.*
Sabadell Financial Center
1111 Brickell Avenue, Suite 2200
Miami, FL 33131
Phone: 305.760.8544  / Fax:  305.356.5720

By: /s/ Claudio Riedi
    CLAUDIO RIEDI
    Florida Bar No. 984930
    criedi@lsrcf.com

13

LEHTINEN SCHULTZ RIEDI CATALANO de la FUENTE, PLLC
1111 Brickell Avenue  |  Suite 2200  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  www.LSRCF.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **May 27, 2014**, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record who are registered to receive service through the CM/ECF system.

/s/     Claudio Riedi
CLAUDIO RIEDI