UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-CV-22439-COOKE/MCALILEY

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA, a sovereign nation and
Federally recognized Indian tribe,

      Plaintiff,

v.

BILLY CYPRESS; DEXTER WAYNE LEHTINEN,
ESQUIRE; MORGAN STANLEY SMITH BARNEY;
JULIO MARTINEZ; MIGUEL HERNANDAZ; GUY
LEWIS, ESQUIRE; MICHAEL TEIN, ESQUIRE; and
LEWIS TEIN, PL, a professional association,

      Defendants

_____/

**SUPPLEMENTARY BRIEFING
BY DEFENDANT LEHTINEN REGARDING
APPROPRIATE RULE 11 SANCTIONS**

Pursuant to the direction of the Court, Defendant Dexter Lehtinen ("Lehtinen") files herein his Supplementary Briefing Regarding Appropriate Rule 11 Sanctions.

*Summary of Argument*

The responses to the questions asked by the Court are summarized below.  A brief discussion of the evidence (or, more aptly put, the lack of evidence supporting the complaint) is presented in the detailed response to the third question regarding the subjects of the sanctions.

**I.  Present Case Posture ("prior to determination on the merits")** – Rule 11 sanctions are appropriate at this stage of the case (the case having been dismissed on a 12(b) motion for lack of jurisdiction, which dismissal is pending appeal).

1

Rule 11 sanctions are appropriate for cases which are dismissed on jurisdictional grounds. Therefore, if the reference to "merits" means *summary judgment or trial*, then Rule 11 sanctions can be imposed without a ruling on the "merits" in this sense. Whether or not the court had jurisdiction is not an issue in a Rule 11 proceeding.

In addition, the District Court retains jurisdiction to issue Rule 11 sanctions while a dismissal of the case is pending on appeal. Therefore if the reference to "merits" means *resolution of the dismissal on appeal*, then clearly Rule 11 sanctions can be imposed without a ruling on the "merits" in this sense

**II.  First and Second Amended Complaints** – Defendant Lehtinen's Motion for Rule 11 sanctions followed the Second Amended Complaint, and was addressed to that Complaint.

**III.   Subjects of Sanctions (Based on Failure to Inquire, Lack of Evidentiary Support, and Claims Unwarranted by Existing Law)** – Sanctions should be imposed against the attorneys who signed the complaint (Roman, Rey [now Lara], and Pino, the Roman law firm [in which Roman is the sole owner and Rey and Pino are associates], and the Plaintiff  party (Miccosukee Tribe).

The attorneys and the law firm are responsible because they all signed the complaint and actively participated in the litigation.

The Miccosukee Tribe, as an organization, exists only through its records and officers. The Tribe's own records completely contradict its claims and no officer appeared at the hearing to explain its actions (given the Tribe's unequivocal records contradicting its claims).

The attorneys, law firm, and Plaintiff Tribe should share joint and several liability for the monetary sanctions imposed.

**IV.   Authority for Sanctions** – The authority for sanctions include:

A.   For failure to meet the objective tests under F.R.Civ.P. 11, authority exists for attorney fees, loss of income to Defendant Lehtinen for work performed in assisting his attorney and for serving as his own attorney in defense of the case, and such additional monetary sanctions as necessary to achieve deterrence.

B.   For failure to meet the subjective tests under the court's inherent judicial powers, authority exists for the same sanctions as sought under Rule 11 (subsection IV A, above).

C.   For failure to make discovery, F.R.Civ.P. 37(b) provide s authority for sanctions for failing to provide audio recordings of General Council meetings, as ordered by Magistrate Judge McAliley on March x, and May x, 1023, and as ordered by the Court on May 12, 2014, F.R.Civ.P. provides authority for numerous sanctions    Such sanctions include prohibiting Plaintiff from supporting or striking claims relating to General Council proceedings, contempt, and attorneys fees and costs (F.R.Civ.P. 37(b)(2)(A)(ii), (iii), (v), and (vii):, and 37(b)(2)(C).

D.   The Court has inherent power to refer this matter to the Florida Bar for disciplinary review and to the U.S. Attorney for review of all potential issues, including in both references the coercion of witness Jodi Goldenberg.

**V.  Sanctions Sought** – Defendant Lehtinen seeks the following sanctions, based on Rule 11, the Court's inherent power, and Rule 37.

A.   Monetary sanctions -- The Court should impose monetary sanctions, including attorney fees and expenses paid by Lehtinen (and incurred and still payable) in defending the case, and lost income suffered by Lehtinen both while working as an attorney to aid his counsel of record and while representing himself *pro s*e in the Rule 11 hearings. (Rule 11; inherent power; and 28 USC 1927 provide the authority.)

3

B.   Prohibitions, Striking, Contempt and Attorney's Fees for Failure to Provide Audio Recording -- The Court should prohibit Plaintiff from supporting, and striking all claims which rely upon, alleged statements made at, or actions of,  the Miccosukee General Council.  These include claims by the Tribe that Defendant Lehtinen made any particular statement at a General Counsel meeting (count X) and that the General Counsel was not advised of, and did not approve of, the explanation of tribal distributions from the NTDR account (count IX).  The Court should also hold the attorneys and Tribe in contempt and award attorney's fees and costs.  (F.R.Civ.P. 37(b)(2)(A)(ii), (iii), (v), and (vii):, and 37(b)(2)(C) provide the authority.)

C.   References to Florida Bar and U. S. Attorney -- The Court should refer the matter to the Florida Bar for disciplinary review, and to the U. S. Attorney for review of all potential issues, including the coercion of witness Jodi Goldenberg.  (Inherent judicial power provides the authority.)

4

### *I.   Is it appropriate to consider imposing Sanctions based upon counsel's conduct prior to a determination of the case on its merits?*

Response: Yes.

Discussion:  Rule 11 sanctions are appropriate at this stage of the case (the case having been dismissed on a 12(b) motion for lack of jurisdiction), which dismissal is pending appeal, because (a) Rule 11 sanctions are appropriate for cases which are dismissed on jurisdictional grounds; and (b) a District Court retains jurisdiction to issue Rule 11 sanctions while a dismissal of the case is pending appeal.

### A.       Rule 11 Sanctions After Dismissal on Rule 12(b) Grounds

Rule 11 sanctions are appropriate for cases which are dismissed on jurisdictional grounds. Therefore, if the reference to "merits" means summary judgment or trial, then clearly Rule 11 sanctions can be imposed without a ruling on the "merits" in this sense.

Dismissal for lack of jurisdiction does not deprive the court of the power to impose sanctions.  In *Orange Production Credit Association v. Frontline Ventures, Ltd.,* 792 F.2d 797 (9th Cir. 1986), the court granted the defendant's 12(b)(1) motion for lack of jurisdiction.  The Ninth Circuit rejected the argument that lack of jurisdiction deprived the court of jurisdiction to impose sanctions, holding that "[t]he fact that the district court lacked jurisdiction to consider the merits of the case did not preclude it from imposing sanctions." Id. at 801.  The Eleventh Circuit is in accord.  *Fitzgerald v. Seaboard Sys. R. R.*, 760 F.2d 1249 (11th Cir. 1985).  The U.S. Supreme Court has endorsed this rule, that the district court may impose sanctions even if the district court lacks jurisdiction over the underlying case.  *Willy v. Coastal Corp.*, 503 U.S. 131 (1992).

### B.    Rule 11 Sanctions While Appeal of Dismissal is Pending

In addition, the District Court retains jurisdiction to issue Rule 11 sanctions while an appeal of a dismissal of the case is pending. *Cleveland v. Berkson, 878 F.2d 1034 (*7th Cir. 1989), based on *Budinich v. Becton Dickinson & Co*., 486 U.S. 196 (1988.  Therefore, if the reference to "merits" means resolution of the dismissal on appeal, clearly Rule 11 sanctions can be imposed without a ruling on the "merits" in this sense.  Whether or not the court had jurisdiction to adjudicate the merits is not an issue in this Rule 11 proceeding.  Lehtinen is not seeking sanctions because the Tribe filed a case in a court without jurisdiction, but because the plaintiff had no factual or legal basis for its claims against Lehtinen in the first place.

### C.    Rule 11 Sanctions Do Not Have Preclusive Effect and Are Therefore Separate from the Merits

Rule 11 sanctions determinations do not have preclusive effects.  *Faigin v. Kelly*, 184 F.3d 67 (1st Cir. 1999).  This demonstrates that Rule 11 sanctions can be imposed without regard to the so-called "merits" in other respects.

## II.  Would any sanctions be applicable
## to the  First Amended Complaint,
## Second Amended Complaint, or both?

Response: Second Amended Complaint.

Discussion: Defendant Lehtinen's Motion for Rule 11 sanctions followed the Second Amended Complaint and was addressed to that Complaint.

### III.  Against which party(ies) should a sanction, if any, be imposed,  i.e., individual counsel, counsel's law firm, the client, all of the above, etc?

Response:  Attorney Bernardo Roman (Fla Bar No. 0002739); attorney Yesinia Rey (now last name Lara, Fla Bar No. 89577);  attorney Yinet Pino (Fla Bar No. 085272);  the law firm of Bernardo Roman;  and the Plaintiff Miccosukee Tribe of Indians of Florida.

Discussion:   The three attorneys signed the complaint and participated in the proceedings. The law firm is composed of Roman as the sole owner and the other two attorneys are associates. The Plaintiff Miccosukee Tribe was fully aware of the falsity of the factual contentions through its own records.

### A.  The Subjects of Sanctions: Attorneys, Law Firm, and Plaintiff Miccosukee Tribe

(1) The Attorneys and the Law Firm – Each of the attorneys (and the law firm) signed the complaint and subsequent pleadings, bringing them squarely within Rule 11 and within the court's inherent authority to sanction.  As discussed below, they failed to conduct "an inquiry reasonable under the circumstances" (Rule 11(b).  In the words of the Seventh Circuit, "It should not have been difficult for [the attorney] to obtain the minimal facts necessary to decide whether there was a basis for seeking monetary as well as injunctive relief; anyway [the attorney] didn't try."  *Hays v. Sony Corp. of America,* 847 F.2d 412, 418 (7th Cir. 1988).  In this case, all attorneys intentionally avoided obtaining facts disproving their claims.

Furthermore, the complaint in all three respects with regard to Defendant Lehtinen (false statements regarding a tax reserve, failing to advise the Tribe of Chairman Cypress' Morgan Stanley card expenditures, and providing records to the IRS without tribal permission) lacked "evidentiary support" (Rule 11(b)(3)).

In addition, the allegations regarding failing to advise the Tribe of Chairman Cypress' credit card expenditures and providing records to the IRS without tribal permission were clearly legal malpractice claims, which were obviously barred by the statute of limitations.  Thus, the claims were not "warranted by existing law or by a nonfrivolous argument for extension, modification, or reversal of existing law or for establishing new law" (Rule 11(b)(2)).

Roman was the only attorney to testify (as discussed below, he did not listen to tapes, he could not identify any relevant part of the minutes, and had no significant evidence whatsoever). Neither Rey (now Lara) nor Pino testified; neither presented any independent or separate evidence regarding their role.  Accordingly, the court has no evidence of any kind that Rey (Lara) or Pino conducted any inquiry, so that sanctions are appropriate.

Both Rey (now Lara) and Pino appeared for the Tribe at the May 12, 2103 hearing on Lehtinen's motion to compel production of audio recordings and on a Lewis Tein motion (Roman did not appear).  Rey argued for the Tribe for more than an hour.  In addition, Rey presented the oral argument on May 12, 2014 on behalf of the Tribe's motion to reconsider the dismissal of the case.  Both Rey and Pino attended all proceedings before Magistrate Judge McAliley (two hearings) and all hearings before this Court.  They were full and willing participants.

(2)  The Plaintiff Miccosukee Tribe --  As an organization, the Miccosukee Tribe exists only through its records and officers.  The records (audio recordings and official minutes) completely contradict its claims.  The officers failed to appear at the hearing to explain the Tribe's actions and records

In addition, Roman signed the complaint (and other pleadings, see. e.g., the Tribe's opposition to Defendant Lehtinen's Rule 11 motion, DE 276) as "Tribal Attorney, Miccosukee

Tribe of Indians of Florida," with the Tribe's address, demonstrating that he was part of the tribal organization rather than simply an attorney retained for the purposes of outside legal representation (the other attorneys signed as "Attorney for the Miccosukee Tribe of Indians of Florida ," using the law firm address on 27th Avenue, Miami).

Rule 11(c)(1) specifically permits sanctions against a "party."  While rejecting sanctions against clients (parties) that have been fully "truthful", the Eleventh Circuit has stated that a client (party) is subject to sanctions when they misrepresent facts in the pleadings or when they "mastermind" a frivolous case.  *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001).

(3)  Joint and Several Liability -- The attorneys, law firm, and Plaintiff Tribe should share joint and several liability for the monetary sanctions imposed.

**B.     The Allegations Regarding the Tax Reserve (Count X) Lack Evidentiary Support and No Reasonable Inquiry Was Undertaken**

The attorneys, the law firm, and the plaintiff Tribe should be sanctioned (including monetary sanctions) regarding the tax reserve allegations (Count X) because none of them "conducted an inquiry reasonable under the circumstances" (Rule 11(b)) and because "the factual contentions" did not "have evidentiary support" (Rule 11(b)(3)).

(1) The Tax Reserve Allegations -- The allegations regarding the tax reserve (count X) have two components. First, that Defendant Lehtinen (along with Chairman Cypress) stated that there was a tax reserve (e.g., paragraphs #463, #465, #467).  Second,  that no such tax reserve ever existed (e.g., paragraphs #464, #466 ["…no monies were being set aside…."], #67 P{"…no such 'tax reserve fund' had been created and that there were no millions of dollars in 'tax reserve funds'"}, #471 ["scheme by the two defendants to lie…."]).

(2) Lack of Evidentiary Support and Lack of Reasonable Inquiry -- The most striking aspect of the Rule 11 evidentiary hearing was the complete lack of evidentiary support for either contention, as well as the complete lack of any inquiry prior to filing the complaint.

(i)     The Audio Recordings -- First, to this day no one in plaintiff's camp has listened to the audio recordings of the General Council meetings to determine if Defendant Lehtinen actually made any statements about the tax reserve (and the audio recordings had not been listened to even by the close of the Rule 11 hearing). Roman had told Judge McAliley that recordings and minutes would support the Tribe's case: "The Court: So you are saying that all of the documents responsive to request number 53 are the recordings of minutes of general council meetings?" "Mr. Roman: That will be there, yes." (March 7, 2014 transcript, page 54, lines 13-16.)   The failure to listen to the audio recordings in itself establishes the lack of an "inquiry reasonable under the circumstances".

Second, Defendant Lehtinen is never heard on any of the audio recordings making the alleged statements (exhibit NN).   Between November 2004, when Chairman Cypress announced Reserve B, to May 2010, there were 23 General Council meetings; recordings of 13 of these meetings were produced (including those "stumbled upon" during the hearing) (exhibit LL).   Defendant Lehtinen was alleged to have made such statements repeatedly at virtually every General Council meeting; yet no audio recordings reveal any such statements.   The absence of any statement by Lehtinen during the meetings for which recordings were produced indicates that the "factual contentions" lack "evidentiary support".

Third, there is no explanation for the missing recordings, except the reasonable conclusion that the recordings demonstrate matters contrary to the Plaintiff Tribe's contentions and thus were destroyed or improperly withheld.  The most important recordings are missing: (i) recordings of all meetings in 2006 are missing, which followed the meetings regarding tax matters reflected in the Crockett notes, exhibit 30, and which were the meetings during which the proposal to explain financial records to IRS (which the IRS had already obtained from banks) was discussed and approved; and (ii) the recording of the November 2004 meeting, in which Chairman Cypress expressly identifies the tax reserve account as being "Reserve B" during the finance portion of the meeting,  does not contain any part of the finance portion of the meeting (exhibit MM).   Note, however, that the Tribe's official meeting minutes clearly reflect that statement of its Chairman.

The Tribe was ordered by the Court on May 12, 2014 to produce all recordings and to explain why any were missing, the dates the missing tapes were destroyed.  No such explanations or details were provided.  During the on-going Rule 11 hearing, on June 16, 2014, new counsel for the Tribe provided some new recordings were "stumbled upon," with no further explanation (only five new recordings were so provided).  Every meeting was recorded.  In a General Council meeting (August 1995), Chairman Cypress on the audio recording states, "We have always said that, even tough they have minutes here, that there are always tapes that they can always hear" (exhibit BB).   The only evidence introduced

showed that General Council meetings were always recorded and recordings kept indefinitely.

(ii)      The Official Minutes of General Council Meetings -- The official minutes of General Council meetings contradict both aspects of the tax reserve claim (both what Lehtinen said and the existence of Reserve B in fact).

First, the minutes never indicate that Lehtinen made any such statement (exhibit OO).  The minutes were quite detailed, including (for example) such items as "why the door to the bathroom doesn't open easily" (exhibit N, page 2); so the absence of any notation regarding Lehtinen's alleged statements is definitive.

Second, the minutes (General Council meeting, November 4, 2004) indicate that only Chairman Cypress identified the tax reserve account as Reserve B, but he did so clearly: "Chairman Cypress stated the account under Reserve B is for in case in the near future we may become taxed, the money reserved under this account we [sic] be used to pay taxes" (exhibit N, page 11).

Third, the minutes show that Reserve B started with $14,500 (exhibit N, page 11) and ended (when the New Chairman Colley Billie took over) with $19.5 million (exhibit JJ)...  It had varied amounts in the millions at different times (exhibits J, K and L).  Apparently Reserve B was dissipated after Lehtinen's departure from the tribe.

Lehtinen kept the Tribe fully advised of the IRS tax position regarding taxation of individual Indians (see, e.g., exhibits A, C, E, F, H, R, S, and T).  The Tribe refused to acknowledge tax liability of individual Indians long before

Lehtinen became one of the Tribe's many attorneys (exhibit U; note that Lehtinen was the U.S. Attorney on the date of exhibit U).

(iii)     Testimony of Attendees at General Council Meetings -- No one testified that they had spoken to Roman before the complaint was filed, regarding what Lehtinen had allegedly said about the tax reserve.  Accordingly, Plaintiff had no factual basis for the allegations at the time of filing. Only one person who attended General Council meetings testified about Lehtinen - Teresa Willie (note that Roman never attended General Council meetings and witness Pete Osceola only testified about the layout of meetings, saying nothing about what Lehtinen ever said at the meetings).

First (surprisingly), Willie testified that Roman had not asked her about what Lehtinen had said at the meetings and she did not think that she had spoken to Roman about what Lehtinen had said.  Roman's only claim to any good faith belief as to what Lehtinen had allegedly said was supposedly that many tribal members had told him (Roman).  He told the Court on May 12, 2014, that "we have witnesses or tribal members that were there."  P. 49, L 8-9. Yet, when time came to produce the witnesses, there was absolutely no testimony from any tribal member at all that they had so spoken to Roman.   Thus, Roman had not conducted an "inquiry reasonable under the circumstances" and there was (and is) no "evidentiary support" for the "factual contentions".

Second, Willie referred to the tax reserve  account as being "Reserve B". She also testified that any tax reserve account would be maintained as any other tribal account (i.e., she did not expect any special inability of the Tribe to access

the money in the account).  This clearly applied to Reserve B, which contained "millions".

Third, although Willie claimed Lehtinen spoke abut the reserve account at virtually every meeting, she could not identify any actual meeting dates. Likewise, Willie could not explain why Chairman Cypress was identified in the minutes as stating that Reserve B was being set up for tax purposes, but Lehtinen was never identified in the minutes as making any such statement.  In the minutes of the November 2004 General Council meeting, Cypress is recorded as stating: "Chairman Cypress stated the account under Reserve B is for in case in the near future we may become taxed, the money reserved under this account we [sic] be used to pay taxes" (exhibit N, page 11).

(iv)    Roman's Testimony -- Roman claimed that the reserve account could not have been Reserve B, because Reserve B was not entitled "tax reserve" and Reserve B was still under the control of the Tribe (it was not a "lockbox"). Yet, Roman had no explanation in his testimony for the clear indication in the General Counsel minutes (November 2004; exhibit N, page 11) explicitly identifying the tax reserve as "Reserve B".  In addition, he had no explanation for how a tribal "lockbox" account could ever be established which was out of the control of the Tribe. The Miccosukee Constitution requires that all tribal funds be under the control of the elected, bonded Treasurer (Constitution and By-Laws, By-Laws Article II, sec. 4) (exhibit X).

**C.     The Allegations Regarding Providing Financial Information to the IRS Without Tribal Permission (Count IX) Lack Evidentiary Support and No Reasonable Inquiry Was Undertaken**

The attorneys, the law firm, and the plaintiff Tribe should be sanctioned (including monetary sanctions) regarding the allegations that tribal financial records were given to IRS without tribal permission (Count IX) because none of them "conducted an inquiry reasonable under the circumstances" (Rule 11(b)) and because "the factual contentions" did not "have evidentiary support" (Rule 11(b)(3)).

(1) The Allegations Regarding Turning Over Documents to IRS Without Tribal Permission -- Count IX alleges that Defendants Lehtinen, in his role as an attorney for the Tribe, developed a scheme to divert IRS attention from Chairman Cypress, which scheme was to provide Miccosukee financial records to the IRS "without the knowledge or consent of the Miccosukee Tribe or its governing body" (paragraph 459(c) of the complaint).

(2) Lack of Evidentiary Support and Lack of Reasonable Inquiry --  Absolutely no evidence exists (and no evidence was presented) to contradict Lehtinen's testimony that the General Council was advised of the proposed explanation to be given to IRS of tribal bank records which IRS had already obtained previously from off-reservation banks.  Likewise, Roman, Rey (Lara), Pino, the law firm, and the Tribe had no such evidence whatsoever before filing the complaint (an no such evidence was presented to the Court).  Further, no evidence was provided that any of the defendants gave NTDR bank records to the IRS.

(i)      Lehtinen's undisputed testimony -- Lehtinen testified that the Miccosukee General Council in August 2006 was advised of the proposed explanation which would be given by an accountant to the IRS.  There was absolutely no contradictory evidence whatsoever.

(ii)    Missing Audio Recordings -- The audio recordings of that General Council meeting of August 2006 are mysteriously missing (Lehtinen testimony and exhibit LL). Lehtinen testified that the matter of explaining tribal NTDR distributions was discussed in detail and approved (immediately prior to the September 2006 date of the e-mails from accountant Marero regarding explaining the NTDR account to IRS; exhibits 22A and 22B), which the Tribe uses to date the interaction with IRS (note that no copies of what was allegedly provided to IRS were provided in the hearing) .   In addition, neither any of the attorneys nor Plaintiff ever listened to the recordings to determine the truth or falsity of any of the assertions.  In light of the Crockett meeting notes from December 2005 and January 2006 (which, incidentally show all Business Council members present and show that the IRS will obtain records from off-reservation banks) (exhibit 30), the absence of audio recordings for every General Council meeting for the entire year 2006 is highly suspect, because these are the meetings during which tax matters would have been most likely discussed.

(iii)    Gap/Omission in Official Minutes -- The official minutes for the IRS discussion by Lehtinen state, "Lengthilty [sic] discussion ensues but microphone malfunctions at this time" (General Council, August 2006, exhibit G).

(iv)    Absence of Any General Council Attendee -- Despite Roman's claim at the May 12, 2104 hearing on Rule 11 (non-evidentiary hearing) that he would present numerous witnesses, no witness whatsoever was presented regarding the August 2006 General Council meeting (nor were any witnesses provided regarding any of the 2006 meetings, prior to the explanation given to IRS).   Roman made no claim

that he talked to anyone about the August 2006 General Council meeting (which preceded the explanation to IRS).

(v)      Bank Records Fully Available to IRS -- tribal bank records were all maintained in banks located off the Miccosukee Indian Reservation, so that IRS had access to such records (including the so-called NTDR account).  All information necessary to audit tribal members was in those accounts (names of payees, dates of checks, amounts of checks, etc).  It is undisputed that IRS obtained such information directly from the banks.  In September 2006, an accountant for the Tribe provided an explanation of the records, which the IRS had received already from the banks. Thus, Roman's claim that IRS could not conduct audits of individual Indians without the explanation provided by the Tribe is simply nonsensical and frivolous. It certainly is not "evidence" of any scheme to divert the attention of the IRS away from Chairman Billy Cypress at the expense of Lehtinen's client, the Tribe.

(vi)      Attorneys Directed by Business Council and Chairman – Although Lehtinen discussed the tax issues with the General Council (especially discussing the possible explanation to the IRS of the NTDR account records which the IRS had already obtained), the Tribal Constitution and By-Laws provide that the Business Council hires attorneys and that the Chairman supervises all employees and officials (Constitution, Article V, sec. 3; and By-Laws, Article II, sec. 1; exhibit X).   Thus, approval by the General Council would not have been required (notwithstanding the discussions with IRS in which the negotiating tactic was adopted, of claiming that delay was necessary to involve the General Council).

### D.    The Allegations Regarding Failure to Inform the Tribe of Chairman Cypress' Use of a Morgan Stanley Account Card (Counts IV and V) ) Lack Evidentiary Support and No Reasonable Inquiry Was Undertaken

The attorneys, the law firm, and the plaintiff Tribe should be sanctioned including monetary sanctions) regarding the allegations that Lehtinen had access to Morgan Stanley Account Card records of Chairman Cypress' card expenditures and failed to advise the Tribe of the expenditures.

There is no evidence that Lehtinen had access to, or ever saw, the Morgan Stanley Account Card records for Chairman Cypress or for anyone else. Lehtinen's clear testimony, that he never saw or had access to the card records, is unchallenged.

(1) The Allegations of a Scheme to Divert IRS Attention form Cypress by Providing Financial Records to IRS -- Count IV (along with count V, alleging conspiracy) assert that Defendant Lehtinen, in his role as attorney for the Tribe, had access to the Morgan Stanley Account Card records, showing Chairman Cypress' use of the card. Likewise, count IV alleges that Lehtinen, as an attorney, had a duty to inform the Tribe and did not do so.

(2) Lack of Evidentiary Support and Lack of Reasonable Inquiry – Defendant Lehtinen testified that he never saw the Morgan Stanley account card records, and never had access to the card records. There is no evidence to the contrary. The Tribe presented no testimony whatsoever by anyone that they gave Lehtinen such records or even saw Lehtinen review such records. The only former member of the tribal Finance Department (Jodi Goldenberg, a former high ranking supervisor) stated that she never gave Lehtinen such records or saw anyone else give Lehtinen such records.

While Lehtinen did play a role in controlling Miccosukee Indian Gaming (MIG, sometimes called Miccosukee Indian Bingo, MIG) after the management company was removed

in 1992, this responsibility had nothing to do with tribal records, which were kept 20 miles away. The Tribe itself is separate from MIG; MIG is separately regulated and licensed by the National Indian Gaming Commission under the Indian Gaming Regulatory Act.  MIG's books and records are completely separate, and a separate independent certified audit must be submitted to the NIGC every year (exhibit DD).

Roman claimed that Chairman Cypress received a notice of examination from the IRS for his personal taxes.  Yet the fact that Lehtinen never represented Billy Cypress on his personal taxes is undisputed; and Roman admitted that other attorneys represented Cypress (not Lehtinen), which is confirmed by the IRS letter (January 11, 2006) (exhibit 41A).  Indeed, Lehtinen never saw, and never had access to, the card records.

### E.    All of the Tribe's Allegations (Counts IX, V, IX, and X) Are Legal Malpractice Which Are Barred by the Statute of Limitations and Thus Are Unwarranted by Existing Law

For a violation of Rule 11(b)(2), the attorneys and the law firm should be sanctioned (including monetary sanctions), and the Plaintiff Tribe sanctioned (non-monetary sanctions only), because all allegations are legal malpractice claims which are barred by the statute of limitations, so that the claims are "unwarranted by existing law…." (Rule 11(b)(2).

(1)  Florida's Two Year Statute of Limitations Applies to All Attorney Breaches of Duty Derived from an Attorney-Client Relationship -- The two year statute of limitations for legal malpractice covers all causes of action derived from attorney breaches while representing a client, whether configured as negligence or both of fiduciary duty or otherwise.  "The [breach of fiduciary duty] constitutes a wrong which is distinct and independent from professional negligence but still comprises legal malpractice."  *Resolution Trust Corp. v. Holland & Knight*, 83 F.Supp. 1528 (S.D. Fla. 1993, Judge Highsmith).

The discussion of this matter by Judge Ryskamp in *Abecassis v. Cummings, P.C.*, 2010 WL 9452252 (S.D.Fla. 2010) is definitive:

> Claims against attorneys for malpractice, "whether founded on contract or tort," must be filed within two years. Fl. Stat. 95.11(4)(a). The malpractice statute of limitations period begins to run when the plaintiff knew or should have known of the claim. *See Davis v. Monahan*, 832 So.2d 708, 709 (Fla. 2001)….
>
> Plaintiffs purport to plead breach of contract and fraud in the inducement, but, in substance, these claims arise from Cumming's and Vanek's roles as attorneys. In applying the two-year legal malpractice statute of limitations, it is the substance, not the form, of the allegations that controls. *See In re Charles H. Kindred, Jr.*, 2009 WL 1788401, at *4 (M.D. Fla. June 5, 2009) (dismissing breach of fiduciary duty claim under the malpractice statute of limitations)…. [T]he court applied the two-year malpractice limitations period because the claim was essentially a malpractice claim, as plaintiff failed to allege any duty in any capacity other than as attorneys providing legal advice. *Id. Freemont Indemnity Co. v. Carey Dwyer, Eckhart, Mason, & Spring, P.A.*, 796 So.2d 504, 505 (Fla. 2001), also supports the application of the two-year limitation period. There, plaintiff sued former attorneys for negligence, breach of contract, and breach of fiduciary duty…. The Florida Supreme Court applied the two-year statute of limitations because all three claims were, in essence, malpractice claims "phrased in state court action as [contract and tort claims]." *Id.* at 505.

Accordingly, there is no dispute that "professional negligence and breach of fiduciary duties are alternative theories of legal malpractice…." *Weaver v. Mateer and Harbert, P.A.*, 2012 WL 3065362 (M.D. Fla. 2012). All of the counts against Defendant Lehtinen stem exclusively from his representation of the Tribe as an attorney and his alleged failure to act properly as an attorney.

All of the counts involving Defendant Lehtinen, no matter how configured, involve only the attorney relationship and breach of attorney duty:

(i)    by failure to disclose the Morgan Stanley card transactions (counts IV and V), alleging that Lehtinen "was a professional attorney working for the Miccosukee Tribe…" (#292); that Lehtinen "was the acting General Counsel…for the

Miccosukee Tribe" (#293); and "…as General Counsel…had access to the financial records…." (#299);

(ii)     by misrepresenting a tax reserve (count X), alleging that Lehtinen "…was a professional attorney…representing the Miccosukee Tribe…" (#13, incorporated into count X); and

(iii)     by improperly providing an explanation of financial records to IRS (count IX), alleging that "…while representing the Miccosukee Tribe as professional attorney[s], Defendant[s]…Lehtinen owed a duty of care and professional duty to the Miccosukee Tribe" (#449)..

(2)     Expiration of the Statute of Limitations -- Obviously, even under the Tribe's incredible claims of lack of knowledge, the Tribe would have become aware of all supposed misrepresentations as of the installation of a new Chairman in January 2010.  Therefore, the two-year statute of limitations expired no later than the beginning of 2012.  The initial complaint was filed until July 2012, after the two-year limitations period had expired.

### IV.  Under what authority may sanctions, if any, issue,  i.e., Rule 11 motion, sua sponte invocation of Rule 11, 28nUSC 1927, etc.?

Response: The authority for sanctions include:

**A.   Monetary Sanctions (Rule 11)** -- For failure to meet the objective tests under F.R.Civ.P. 11, authority exists for attorney fees, loss of income to Defendant Lehtinen for work performed in assisting his attorney and for serving as his own attorney in defense of the case, and such additional monetary sanctions as necessary to achieve deterrence.

Although monetary sanctions usually cover attorney's fees and expenses, the sanction is designed to achieve deterrence and is therefore not necessarily limited to fees and expenses.  In

some cases, courts have determined that the deterrent purpose of the sanctions justifies an award greater than attorney's fees.

> "We remind counsel for plaintiffs, however, that Rule 11 and section 1927 are *sanctions* rules, not compensation devices.  Persons required to pay sanctions have no entitlement to a perfect match between the award and the defendants' legal fees, and the discretion the district judge possesses in deciding whether the conduct is sanctionable extends as well to the selection of the sanction." *Samuels v. Wilder,* 906 F.2d 272 (7th Cir. 1990).

The attorney's fees and expenses "incurred in presenting or opposing the motion" are specifically recoverable under Rule 11(c)(1)(A).  The Eleventh Circuit allowed recovery of the fees and costs associated with the Rule 11 motion even before the 1993 amendments to the Rule explicitly authorized such sanctions.  *Mike Ousley Productions, Inc. v. WJBF-TV*, 952 F.2d 380 (11th Cir. 1992).

Although the Eleventh Circuit does not recognize attorney's fees for attorneys who represent themselves *pro se* (because when proceeding *pro* se the attorney representing himself did not incur attorney's fees), the Circuit specifically recognized that sanctions might be available equaling lost income as a result of being away from work.  *Massengale v. Ray*, 267 F.3d 1298 (11th Cir. 2001).

In *Massengale*, the moving party  specifically

> "sought attorney's fees as the sanction, as though he had been represented by counsel, instead of seeking to recover sanctions measured by lost income resulting from time away from his practice.  Therefore, we have no occasion to determine whether a *pro se* litigant could properly seek and be awarded a Rule 11 sanction measured by the loss of income that litigant suffered as a result of having to take time off work to respond to the sanctionable conduct.  We reserve that question for future decision*." Id*., at 1303.

**B.  Monetary Sanctions (Inherent Power)** -- For failure to meet the subjective tests of good faith under the court's inherent judicial powers authority exists for the same sanctions as sought under Rule 11 (subsection A ,above).  The Federal Circuit has concluded that attorney's

fees could be awarded to a pro se litigant who is an attorney under inherent power of the court. *Pickholtz v. Rainbow Technologies*, 284 F.3d 1365 (Fed. Cir. 2002).  Inherent power was used in the Southern District of Florida to grant legal fees to *pro se* attorney. *Peer v. Lewis*, 2013 WL1345477 (S.D. Fl. 2013).

**C.  Striking, Preclusion, Contempt and Fees for Disobeying Discovery Court Orders (Rule 37)** -- For failure to make discovery, F.R.Civ.P. 37(b) provides authority for sanctions for failing to provide audio recordings of General Council meetings, as ordered by Magistrate Judge McAliley on March 7, and May 6, 2013, and as ordered by the Court on May 12, 2014, F.R.Civ.P. provides authority for numerous sanctions    Such sanctions include prohibiting Plaintiff from supporting or striking claims relating to General Council proceedings, contempt, and attorney's fees and costs (F.R.Civ.P. 37(b)(2)(A)(ii), (iii), (v), and (vii):, and 37(b)(2)(C).

**D.   Reference to Bar Disciplinary Authorities and to U.S. Attorney** -- Inherent judicial authority exists to refer matter to the Florida Bar and to the U.S. Attorney's Office for review.  *Steinle v. Warren*, 765 F.2d 95 (7th Cir. 1985).

### V.   If sanctions are appropriate and should issue, what sanctions are sought and should be imposed?

Response:   Defendant Lehtinen seeks the following sanctions, based on Rule 11, the Court's inherent power, s sought are:

**A.   Monetary sanctions** -- The Court should impose monetary sanctions, including attorney fees and expenses paid by Lehtinen in defending the case and lost income suffered by Lehtinen both while working as an attorney to aid his counsel of record and while representing himself *pro s*e in the Rule 11 hearings. (Rule 11; inherent power; and 28 USC 1927 provide the authority.)   Monetary sanctions must be sufficient to achieve deterrence.   In this regard, the

Court should note that tribal members were receiving more than $160,000 annually (a family of four receiving more than $640,000) in 2013 (testimony of Goldenberg).  Also, MIG must producing for the Tribe more than $114 million annually in 1004 (gross receipts tax of $47 million and net income of $57 million; exhibit DD).  The income after 2004 are substantially higher.  Thus, a formidable sanction must be levied if there is to be a deterrent effect.

**B.   Prohibitions, Striking, Contempt and Attorney's Fees for Failure to Provide Audio Recording** -- The Court should prohibiting Plaintiff from supporting, and striking all claims which rely upon, alleged statements made at or actions of  the Miccosukee General Council.   These include claims by the Tribe that Defendant Lehtinen made any particular statement at a General Counsel meeting (count X) and that the General Counsel was not advised of, and did not approve of, the explanation of tribal distributions from the NTDR account (count IX).  The Court should also hold the attorneys and Tribe in contempt and award attorney's fees and costs.      (F.R.Civ.P.  37(b)(2)(A)(ii), (iii), (v), and (vii):, and 37(b)(2)(C) provide the authority.)

**C.   References to Florida Bar and U.S. Attorney** -- The Court should refer the matter to the Florida Bar for disciplinary review and to the U.S. Attorney for review on all potential issues, including in both references the coercion of witness Jodi Goldenberg.  (Inherent judicial power provides the authority.)

*Conclusion*

For the reasons stated herein, Defendant Lehtinen seeks the sanctions requested herein.

Respectfully submitted,

Dexter W. Lehtinen, Esq.
Sabadell Financial Center
1111 Brickell Avenue
Suite 2200
Miami, FL 33131
Phone: 305.760.8544
Fax:  305.356.5720
Email:dlehtinen@lsrcf.com;
dwlehtinen@aol.com

By:____/s/ Dexter Lehtinen_____
    DEXTER W. LEHTINEN
    Florida Bar No. 265551

25