UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:12-cv-22439-MGC

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA,

                    Plaintiff,

vs.

BILLY CYPRESS; *et al.*,

                    Defendants.

_____/

## LEWIS TEIN'S POST-HEARING SUPPLEMENTAL BRIEF
## ON SANCTIONS AGAINST MICCOSUKEE TRIBE AND ITS LAWYERS

### INTRODUCTION

*"A lawyer's reputation is one of his most important professional assets."*
*Precision Specialty Metals, Inc. v. U.S.*, 315 F.2d 1346, 1353 (Fed. Cir. 2003). Yet Guy Lewis, Michael Tein and Lewis Tein, PL (collectively, "Lewis Tein") and the other Defendants' reputations are what the Miccosukee Tribe of Indians of Florida ("Tribe") and its counsel, Bernardo Roman III, Yinet Pino, and Yesenia Lara, through the Tribe's pleadings in this action as well as in other proceedings, sought to denigrate and destroy. The allegations of criminal conduct contained in these pleadings are vicious, patently false, and wholly unsupported by any reasonable reading of the evidence. These baseless allegations against Lewis Tein, made without conducting a reasonable investigation, warrant the imposition of sanctions under Rule 11, 28 U.S.C. §1927, and the Court's inherent powers. Separately, the Tribe and Roman's acts of obstructing justice, filing a false affidavit, attempting to suborn perjury and commission of perjury in this courtroom, warrant referral to the U.S. Attorney for investigation.

       The Tribe brought this action against Lewis Tein and others alleging that Lewis Tein participated in fraud, tax evasion, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), money laundering, a kickback scheme, and other wrongful acts in connection with Lewis Tein's representation of the Tribe and its individual members. *See* [D.E. 13; D.E. 75]. The specific allegations included charging for "fictitious" legal work [D.E. 75 at

¶29]; and participating in a "fictitious" loan scheme to pay their fees. *Id.* at ¶41. The Tribe's lead counsel, Bernardo Roman, III swore there was no documentation supporting these loans.  LT Ex. 5A.

The Tribe and its lawyers specifically alleged that Guy Lewis and Michael Tein "knowingly failed" to report their income for tax purposes. [D.E. 75 at ¶¶111-13].  The Tribe and its lawyers gratuitously listed assets of Lewis and Tein in the Second Amended Complaint asserting that their homes and other items were acquired with "funds" from "criminally derived property." *Id.* at ¶¶115-16.  The Tribe and its lawyers went so far as to accuse Lewis Tein of creating their law firm for the sole purpose of "perfecting the plundering" of the Tribe.  *Id.* at ¶30.

Rather than retreat from these defamatory statements, at the Rule 11 hearing, the Tribe and its lawyers amplified them.   For example, the Tribe made the following specific representations in opening statement:

- "I would agree that is a significant allegation to have in a complaint … [that] *the Lewis Tein firm was established for the sole purpose of fraud*."  Ex. A, 6/10/14 Hr'g Tr. at 33.

- "The implication is clear that *this criminal lawyer* did not want it widely known that he owned this luxury property."  *Id*. at 58.

- "There is evidence to lead one to the inference that *there was an issue with Lewis and Tein in reporting their income*."  *Id*. at 62.

Indeed, on the first day of the hearings, the Court specifically asked about the alleged "fictitious loan scheme," and the Tribe's lawyer repeated the false allegation with equal particularity:

> THE COURT:  "What about the statement that … the documents for the legal fees in this case were not loans?"
> TRIBE COUNSEL:  "[T]here are other facts, such as, the facts that *nobody ever pays them back*. … [T]here is evidence, that, in fact, the normal practice was that *these loans were not repaid*."

*Id.* at 34–35.

Over eight days of hearings, counsel for the Tribe and its lawyers attempted a smoke and mirrors presentation in hopes, like their clients, of hiding the truth from this Court.  Worse, the Gunster firm adopted and ran with Roman's unsupported lies.  Essentially, through their "defense," Gunster has highlighted the misconduct of their clients.  Counsel for Roman, Pino and

Lara offered no defense regarding their clients' suppression of evidence in the face of compulsion orders, or apparent destruction of tapes, or the mountain of tribe financial documents affirming the validity and tracking of the loans. As litigator Kaskel stated in final remarks in the proceeding, "the record is what it is" – an admission to the lack of any defense for the misconduct of the Tribe and its lawyers. 7/1/14 Hr'g Tr.[1]

Additionally, the Tribe's lead counsel, Roman, amplified the hypocritical and false nature of the Tribe's allegations against Lewis Tein.  Roman's testimony revealed:

- He could not provide a reason as to why he failed to include Jose Tercilla, a witness who allegedly possesses knowledge of the purported kickback scheme, in the Tribe's Rule 26 disclosures. 7/1/14 Hr'g Tr.

- Although Roman accuses Lewis Tein of fraud because it allegedly did not have an engagement letter with Tammy Gwen Billie, Roman admits that he has no engagement letter for the supposed investigation he contends the Tribe tasked him with in 2010. *Id.*

- Money was Roman's motive behind these never-ending, vexatious lawsuits lodged in multiple fora. *Id.*

- Roman has no memos of his alleged conversation with witnesses or former Lewis Tein clients. He could not identify the dates of any of these conversations. Most importantly, Roman did not call any of these individuals to testify during the Rule 11 proceedings. Ex. B, 6/17/14 Hr'g Tr. at 222.

- Roman represents Tammy Gwen Billie and Jimmie Bert in their defense of the IRS's classification of the loans at issue in this litigation as income.  In yet another ethical lapse, Roman takes the position that these are not loans in this litigation, contrary to the interests of his clients in the IRS matters. 7/1/14 Hr'g Tr.

- Roman admitted he could not point to any evidence or support of the kickback scheme between Lewis Tein and the former Chairman. Ex. B, 6/17/14 Hr'g Tr. at 218 ("Q: And you [Roman] can't point to a single dollar from Lewis Tein going to the chairman, can you? A: No, I do not.")

These false allegations of nefarious conduct are at the center of Lewis Tein's Motion for Sanctions and Motion to Supplement the Rule 11 Record.  [D.E. 38; D.E. 286].  The Tribe and its lawyers represented specifically they "reviewed all available documentation in the possession of the Miccosukee Tribe before filing this [second amended] Complaint." [D.E. 203:2].

---

[1] The transcript of the 7/1/14 hearing is not yet available.

## BACKGROUND FACTS AND RELATED LITIGATION

This litigation does not stand alone.  It is part of a campaign lodged by the Tribe against its former attorneys, former administration, and former employees.  The vexatious campaign includes:

- *Carlos E. Bermudez v. Jimmie Bert, et al.*, Case No. 00-25711 (11th Jud. Cir., Miami-Dade County) ("*Bermudez*");

- *Miccosukee Tribe of Indians of Florida v. Guy Lewis, et al.*, Case No. 12-12816 (11th Jud. Cir., Miami-Dade County) (the "State Action"); and

- *Miccosukee Tribe of Indians of Florida v. Billy Cypress, et al.*, Case No. 13-35956 CA 40 (11th Jud. Cir, Miami Dade County) (the "Re-filed Action").  The *Bermudez* action, State Action, and Re-Filed Action are discussed in greater detail below.

The genesis of the Tribe and its attorneys' vexatious litigation originated from the case of *Bermudez*.  In that case, Tammy Billie crashed her father's car into the Bermudez's Camry, injuring Carlos Bermudez and killing his wife, who died cradling her infant, Matthew.  Billie served eight years in prison for negligent homicide.  Carlos and Matthew Bermudez were represented by Ramon Rodriguez as lead counsel.  The plaintiffs demanded in excess of $27 million in compensatory damages (having failed to perfect a punitive damages claim).  *See* 7/1/14 Hr'g Transcript.

After five years of litigation, Lewis Tein substituted for prior defense counsel, appearing for Billie (and, later, for her father, Jimmie Bert, who owned the car).  Lewis Tein conceded liability and tried the case on damages only.  At trial, Lewis Tein proved that Carlos Bermudez had recently confessed to laundering money for Medellin drug traffickers, and stashed a duffel bag containing $200,000 in cash in the house where his minor son, Matthew, was living.  The jury rejected Rodriguez's plea, awarded only $3.177 million, roughly 1/9 of his demand.

In connection with a post-judgment sanctions dispute, Bermudez's counsel sought to equate the individual defendants with the Tribe itself.  Lewis Tein explained that their clients, the individual tribe members, were responsible for their own fees.  In a side-show, Roman delivered 61 checks to Bermudez's lawyer to give the impression that the Tribe did pay the individual tribal members' legal fees. Roman withheld reams of evidence showing that the checks were part of the Tribe's well-documented loan system. The Third District Court of Appeal would later hold that Roman's conduct – which was contrary to the interests of the Tribe –  was "mystifying" and

waived the Tribe's sovereign immunity. *Miccosukee Tribe of Indians of Florida v. Bermudez*, 92 So. 3d 232, 233-35 (Fla. 3d DCA 2012). Moreover, the presiding State circuit judge (Dresnick, J.) later observed that Roman's provision of the checks was designed to "hurt" Lewis Tein:

> . . . [B]ecause of a dispute between the Tribe and Lewis & Tein and because of bad blood the Tribe did whatever it could do to hurt Lewis & Tein. And part of what they did was they dropped this gift on your [Bermudez Lawyer's] doorstep of cancelled checks, which you never would have known about but for the bad blood between Lewis & Tein and the Tribe.

Ex. C, 6/21/13 Hr'g Tr. at 33-34 (Dresnick, J.); *see also id.* at 34 (court's further observation that the Tribe was "obviously planning" for its subsequent courthouse disputes with Lewis Tein).

At Roman and Rodriguez's request, the state court opened an inquiry into whether Lewis and Tein committed "perjury." After nearly two years of discovery and a three-day evidentiary hearing, the court held that Lewis Tein "(1) did not commit perjury, (2) did not engage in fraud on the Court or misconduct, and (3) did not fail in their obligation of candor to the Tribunal." *See* Ex. D, 5/10/13 Order (Dresnick, J.).[2] Despite this Order vindicating Lewis Tein, the Tribe continued to make specious arguments in connection with Lewis Tein's representation of individual members of the Tribe. The litigation before this Court alleged that Lewis Tein participated in a fake loan scheme predicated *entirely* on the *Bermudez* representation. Compare [D.E. 75 at ¶41] with LT Ex. 2 at 117.

Significantly, Roman, alleging to be the Tribe's records custodian, purposefully misled Judge Dresnick into believing that there were "no books of accounts or general ledgers reflecting loans or advances" between the Tribe and Lewis Tein's clients for legal fees. LT Ex. 5A.

The Tribe also asserted the same accusations against Lewis Tein in the State Action at issue here. In that case, the Tribe lost on the merits and Lewis Tein was vindicated. Specifically, when the state court granted Lewis Tein's Motion for Summary Judgment, the court ruled that there was no evidence to support these allegations:

> The thousands of pages of record evidence in this matter, ranging from affidavits to deposition transcripts, to Special Magistrate Reports and Recommendations and Orders thereon, all disclose no false statements or evidence of fictitious or improperly created or fraudulent legal fees or expenses have been perpetrated by Lewis Tein upon the Tribe.

---

[2] The State court increased the prior monetary discovery sanction, which was inconsistent with its findings. Lewis Tein did not appeal the order increasing the sanctions.

*Miccosukee Tribe v. Guy Lewis, et al.*, 21 Fla. L. Weekly Supp. 323(a), 324-25 (Dec. 15, 2013) (Thornton, J.). The state court found, "[T]here is no evidence in the record of any fraud or overbilling" and that there was no evidence that "Lewis Tein acted with any bad intent, made intentional misrepresentations to the Tribe, or otherwise intended to harm the Tribe." *Id.* The court further held, "The record is utterly devoid of any evidence of criminal intent or intentional misconduct." *Id.*[3]

Undeterred by its unsuccessful attempts in the State Action and the *Bermudez* action, the Tribe is continuing its vexatious campaign of litigation in yet another state-court lawsuit against Lewis Tein. Following this Court's dismissal of the Tribe's suit based on lack of subject matter jurisdiction, the Tribe admittedly re-filed the *same* complaint in state court. In addressing the Re-filed Action, Roman stated: "This case . . . was originally filed in Federal court before Judge Cooke . . . . It was dismissed for lack of jurisdiction . . . . And then the Tribe has re-filed it in state court[.]" Ex. E, 1/28/14 Hr'g Tr. at 4-5.

The Tribe and its lawyers have demonstrated through this pattern of litigation that they will continue to pursue these harmful, false allegations regardless of the state of the evidence, the testimony of its key witnesses, and the various court orders vindicating Lewis Tein. The Tribe has continued to "danc[e] on the head of legal pins that don't exist, and the time has come for it to stop." Ex. F, 5/12/14 Hr'g Tr. at 54.

## FINDINGS OF FACTS

### I.   THERE IS NO EVIDENCE TO SUPPORT A "SECRET" KICKBACK SCHEME BASED ON A "FICTITIOUS" LOAN SYSTEM.

The Tribe provides loans to individual tribal members for a variety of reasons, including the payment of legal fees. Even Roman's legal fees were paid through these types of legal loans. LT Ex. 13; Ex. A, 6/10/14 Hr'g Tr. at 115. The Tribe deducts loan payments from the quarterly

---

[3] In the alternative, the court ruled, consistent with and expressly citing this Court's ruling, that it lacked subject matter jurisdiction over the intra-tribal dispute alleged. "The Tribe fails to state a cause of action which can survive in this Court because the Tribe's Complaint is predicated on intra-tribal disputes over which this Court lacks subject matter jurisdiction." *Id.* at 325 (citing *Miccosukee Tribe of Indians of Florida v. Cypress*, 2013 WL 5462204 at *7 (S.D. Fla. Sept. 30, 2013)

distributions provided to individual Tribal members.  LT Exs. 4A, 15 at 71, & 13; Ex. A, 6/10/14 Hr'g Tr. at 111-14.

The allegations of a "fictitious" loan system are predicated solely on the loan that was provided to Tammy Gwen Billie in connection with her representation in the *Bermudez* matter. LT Ex. 2 at 117.  The loans to the Bert family were approved by the Tribe at its General Council meeting in an unlimited amount and without any regard to who the lawyer would be. LT Ex. 47 at 143-144; 193-194; LT Ex. 15 at 63; LT Ex. 18 at 77-78.

There are numerous financial documents of the Tribe accounting for the loans to the Bert family.  *See e.g.,* LT Exs. 4, 4A, 7, 12, & 13.  The Tribe's former general counsel, Jeanine Bennett, confirmed that Tammy Gwen Billie, Jimmie Bert, and Louise Bert, the former wife of Jimmie Bert, would go to Bennett's office to review the legal invoices provided by Lewis Tein in the *Bermudez* matter.  Ex. A, 6/10/14 Hr'g Tr. at 72-73. If the Bert family had any questions about what appeared on the invoices, Bennett would set up a call with Lewis Tein so that the Bert family could speak with their lawyers. *Id*. at 73. Once satisfied, Lewis Tein's clients would place an "ok to pay" notation on the invoices.  *Id*.; *see also id*. at 75 (Jimmie Bert, Louise Bert, and Tammy Gwen Billie "were the only ones to approve payment"); LT Ex. 4.  Ironically, Roman's legal bills were processed in the same manner as Lewis Tein's bills.  Ex. A, 6/10/14 Hr'g Tr. at 75-76.

The Tribe accounted for the repayment of the loans to the Bert family for over ten years. LT. Exs. 7A, 7B, & 7C.  The Tribe even maintained a running balance of the loans to the Bert family for the *Bermudez* matter reflecting repayment. LT Ex. 12; Ex. A, 6/10/14 Hr'g Tr. at 116-19 (noting the legal fees balance was for the loans provided to Tammy Gwen Billie, Jimmie Bert, and Louise Bert).  Notably, there was nothing secretive about the loans and they were fully disclosed in the Tribe's audited financial statements. LT Exs. 8, 9, 10, & 11; Ex.A, 6/10/14 Hr'g Tr. at 74; 111; 120. The loans were neither fake nor the product of fraud.  Ex. A, 6/10/14 Hr'g Tr. at 115. The Tribe did not produce any policy or meeting minutes contradicting these loans or barring them in any fashion.

Moreover, the Tribe's 30(b)(6) witness and Roman could not point to any evidence that constituted a part of the purported kickback scheme. LT Ex. 2 at 64, Ex. B, 6/17/14 Hr'g Tr. at 218 ("Q: And you [Roman] can't point to a single dollar from Lewis Tein going to the chairman, can you? A: No, I do not."). When asked "what is your evidence of a kickback", Roman

articulated nothing other than speculation. *See* Ex. B, 6/17/14 Hr'g Tr. at 217.  Nor did the Tribe and its lawyers point to any evidence to support that Lewis Tein, PL was established for fraudulent purposes.  Indeed, Roman admitted that Lewis Tein's work for the Tribe did not constitute a majority of Lewis Tein's work at the time Lewis Tein was established. 7/1/14 Hr'g Tr.

These financial documents and loan approvals existed or occurred well before the filing of this lawsuit. The Tribe and its lawyers should have conducted an adequate investigation before bringing these specious allegations. Indeed, the truth was so readily accessible to the Tribe and its lawyers that it appears they purposefully avoided conducting any remotely reasonable investigation to avoid learning the truth.

## II.   BERNARDO ROMAN'S PRE-SUIT INVESTIGATION WAS INADEQUATE TO SUPPORT THE TRIBE'S FALSE ACCUSATIONS OF CRIMINAL CONDUCT.

To begin with, Roman's testimony was not credible and the Court is free to reject it for that reason.  Even on its face, Roman's testimony about his investigation showed it was superficial and deliberately ignorant. According to Roman, his investigation consisted of the following:

- Roman indicated that he spoke with other attorneys, such as the Tribe's sometime co-counsel, Jose Herrera, and the Tribe's adversary, Ramon Rodriguez, about the work performed by Lewis Tein in the *Bermudez* matter.  Ex. G, 6/16/14 Hr'g Tr. at 102-03; 110. He also testified he spoke with Jimmie Bert, Teresa Willie, and Miguel Hernandez. *Id*. at 108. Only Teresa Willie testified in these proceedings, but said nothing about Lewis Tein.

Roman's pre-suit interviews were inadequate because he failed to discuss the alleged scheme with key witnesses.  First, Roman did not interview the Tribe's outside auditor who reported the loans to tribal members and to the former chairman in the Tribe's audited financial states.  LT Exs. 8, 9, 10, & 11; Ex. G, 6/16/14 Hr'g Tr. at 33-34.  He failed to interview the Tribe's former general counsel about the supposedly fake legal loans. Ex. A, 6/10/14 Hr'g Tr. at 92-93.  He did not interview Jodie Rae Goldenberg, the Tribe's accountant of twenty-one years, prior to filing this lawsuit. *Id*. at 132. Roman finally interviewed Goldenberg after he designated her as a "person with the most knowledge" in related litigation. And then, when she refused Roman's suggestion that it would be good if she could say "what loans" in her upcoming deposition, Goldenberg was fired by the Tribe days before that deposition. *See* Ex. A, 6/10/14

Hr'g Tr. at 124. Counsel form Roman offered no defense for Roman's witness tampering and obstruction of justice regarding Goldenberg.

- He reviewed an open house brochure. Ex G, 6/16/14 Hr'g Tr. at 182-85.

Roman blindly relied on a brochure of Guy Lewis's home to establish that that Mr. Lewis, in his opinion, had "unexplained wealth" without inquiring into when or how any of the contents of Mr. Lewis's home were acquired. Indeed, some of the contents were acquired well before Guy Lewis was engaged by the Tribe and could not serve as a basis for allegations asserted in the Tribe's pleadings. 7/1/14 Hr'g Tr.

- He conducted a review of Lewis Tein bills to determine whether the fees were reasonable. Ex. G, 6/16/14 Hr'g Tr. at 92.

Roman's review of the reasonableness of Lewis Tein's bills was flawed for multiple reasons and could not have justified the filing of this litigation. Roman only deemed matters in which Lewis Tein billed the Tribe less than $10,000 as reasonable. Ex. B, 6/17/14 Hr'g Tr. at 103-04. His opinion was not tied to the substance, work performed, or complexities of the underlying matter, but to the overall amount billed. *See* 7/1/14 Hr'g Tr. For example, Roman mistakenly designated the "Suzana Tiger" matter as reasonable because he thought the total amount billed for that file was $9,748.00. Ex. B, 6/17/14 Hr'g Tr. at 103-04. The total amount billed for the Suzana Tiger matter was actually $50,217.90. After prompting from his lawyer, Roman stated that he actually deemed the "Tamiami Trail" matter, which appears on one line below the "Suzana Tiger" matter as reasonable. *Id*. A total of $9,748.00 was billed for the "Tamiami Trail" matter. Tribe Ex. 14A. Ironically, in this regard, Roman bills the Tribe three million dollars ($3,000,000) per year for his legal services. LT Ex. 18 at 210. In any event, prior to filing this action, the Tribe engaged an accountant to review Lewis Tein's bills. The accountant and Roman could point to no instance of fake or fraudulent billing to support the Tribe's allegations. Ex. H, 6/24/14 Hr'g Tr. at 41. The accountant also provided "no opinion on the work that was performed" by Lewis Tein. Tribe Ex. 14A.

Roman never interviewed any lawyers who actually performed this work for the Tribe and its members. Ex. B, 6/17/14 Hr'g Tr. at 241. He incorrectly assumed that Michael Tein lacked experience in wrongful death matters. *Compare* Ex. G, 6/16/14 Hr'g Tr. at 62 *with* 7/1/14 Hr'g Tr. He failed to consider that Guy Lewis and Michael Tein are members of the tax bar and that Guy Lewis served as a clerk on the circuit that handles patent and trademark litigation.

7/1/14 Hr'g Tr. He was unaware that one matter involved the trying of a *full injunction hearing* before United States District Court Judge Patricia Seitz. *Id.* These are all factors that implicate the rates that lawyers can command in a given market.  Roman got these factors all wrong because he failed to conduct – or never intended to conduct – a reasonable investigation.

- Roman testified he spoke with some of Lewis Tein's individual clients. Ex. B, 6/17/14 Hr'g Tr. at 222.  There were no memos of these interviews and Roman could not recall the dates on which any of these interviews occurred. *Id.*

Roman claims he interviewed a number of Lewis Tein former clients. There is no evidence of memos or notes regarding those interviews. *Id.*  No Lewis Tein former client testified that any of Lewis Tein's work was fictitious, excessive, unnecessary or fraudulent.

- Roman claims to have reviewed the Tribal minutes, which contain an express policy prohibiting the types of loans provided to the Bert family for their legal fees. Ex. G, 6/16/14 Hr'g Tr. at 70-71; 76; 78; 84-85. When the Court asked Roman to produce the minutes reflecting this policy, he failed to do so. *Id.* at 102.

Roman contends that the Tribal documents and minutes approving a loan to the Bert family for legal fees in the *Bermudez* matter pertain solely to legal fees generated by Michael Diaz. Ex. B, 6/17/14 Hr'g Tr. at 227-28. Roman's position is unsupportable. Despite multiple requests from this Court, Roman did not produce any Tribal meeting minutes reflecting this restriction or any policy limiting the legal loans to a particular lawyer.  Indeed, the Tribe's *current* elected lawmaker testified that the legal loans were approved for the Bert family without regard to the identity of the lawyer.  LT Ex. 18 at 77-78.  The Tribe and its lawyers elected not to call any of the Tribe's elected officials of the current or past administration to discuss the purported fictitious nature of these loans.

- A brief happy hour conversation with Michael Diaz. Ex. G, 6/16/14 Hr'g Tr. at 131.

Michael Diaz represented Tammy Gwen Billie and Jimmie Bert in the Bermudez matter before he was substituted with Lewis Tein. Ex. G, 6/16/14 Hr'g Tr. at 69. During a chance happy hour encounter with Michael Diaz, Roman testified that Diaz referred to a kickback scheme in which some of Diaz's legal fees would have to be shared with the former chairman.  *Id.* at 131-32.  This conversation says nothing about Lewis Tein.  Moreover, Roman did not report Diaz's statements to any authorities.  He also did not pursue Diaz in any litigation.  Notably, Diaz did not testify in this matter.

- A mysterious undated, unsigned memo of a 2009 interview of an "S1", that was not previously produced or disclosed on the Tribe's Initial Disclosures or on any privilege log in this or any related litigation. Tribe's Ex. 9; Ex B, 6/17/14 Hr'g Tr. at 221.

This was the only "memo to file" retained by Roman and produced as evidence to support his pre-suit investigation. Tribe Ex. 9. The memorandum says nothing about Lewis Tein and is replete of multiple layers of hearsay. "S1" was not previously identified on the Tribe's Initial Disclosures. Ex. B, 6/17/14 Hr'g Tr. at 221. Roman also did not inform the Tribe's Rule 30(b)(6) witness about this memo or S1 when preparing the witness for his deposition in this litigation. Ex. B, 6/17/14 Hr'g Tr. at 230. Roman testified that "S1" was a former accounting employee named Jose Tercilla. Ex. G, 6/16/14 Hr'g Tr. at 125. The Tribe did not call Tercilla at the Rule 11 hearing.

Based on Roman's testimony, one of two propositions is true. Either Roman invented the "S1" memorandum for purposes of this hearing; or it existed before the hearing and Roman intentionally violated his discovery obligations by failing to disclose "S1"/Tercilla as a witness in response to his initial-disclosure obligations and by failing to disclose (or log as privileged) this memorandum in response to requests for production and the Magistrate's compulsion order.

- A less than 5 minute phone call with accountant Jose Trueba that Trueba described as very short and general. Ex. G, 6/16/14 Hr'g Tr., at 107.

Roman spoke with Trueba by phone in a less than five-minute phone conversation. Ex. H, 6/24/14 Hr'g Tr. at 90. Roman testified he asked Trueba about what Trueba, an accountant, would expect to see in a lawyer's file to support the lawyer's billable hours. Ex. G, 6/16/14 Hr'g Tr. at 107. Trueba testified that his conversation with Roman was general. Ex. H, 6/24/14 Hr'g Tr. at 88-90. Roman did not disclose any of the documents confirming the loans to the Bert family during this conversation with Trueba. *Id.* at 89. Indeed, Trueba had not seen these documents, and if he had, he would consider the documents to be evidence of loans. *Id.* at 103-04.

- A $100,000 plus "asset investigation." Ex. I, 6/26/14 Hr'g Tr. at 68.

Roman engaged Eladio Paez to pull public records pertaining to Lewis Tein's assets. *Id.* at 38-39. Neither Paez nor Roman testified that any of these assets were obtained through any improper means or that they tried to confirm, prior to the filing of this lawsuit, that these assets were obtained by some improper means. *See id.* at 68-69; 7/1/14 Hr'g Tr.

Roman's testimony regarding his purported pre-suit investigation was not credible and his contention that he performed a sufficient investigation is not supported by the evidence. A reasonable attorney would not have believed this lawsuit was well-founded in fact based on the investigation performed by Bernardo Roman, III.

## III. THE TESTIMONY OF THE TRIBE'S CURRENT CHAIRMAN DOES NOT SUPPORT THE ALLEGATIONS LODGED IN THIS LAWSUIT.

The Tribe designated its current Chairman, Colley Billie, as its Rule 30(b)(6) witness. Chairman Billie's testimony does not support these false allegations. His belief regarding an alleged kickback scheme between Lewis Tein and the former Chairman is based upon a supposed correlation between the former Chairman's re-payment of personal loans from the Tribe and the dates on which the Tribe paid Lewis Tein's invoices. LT Ex. 2 at 61-63. That correlation is in a document Chairman Billie reviewed prior to his deposition (well after the filing of this lawsuit), but was never produced to Lewis Tein. *Id.* The Chairman failed to identify any instance in which Lewis Tein transferred any money to the former Chairman. *Id.* at 63-64.

The Tribe's only support for the allegation that Lewis Tein failed to report all of its income for tax purposes was that the Tribe provided Lewis Tein with 1099s and that Lewis Tein previously took the position that the 1099s were fabricated. *Id.* at 129-30. This, of course, says nothing about whether Lewis Tein reported their income.

The Chairman confirmed that the Tribe's allegation of fake loans was predicated entirely on the loans to Tammy Gwen Billie. *Id.* at 116-17. As previously discussed, the Tribe gave Tammy Gwen Billie a loan to pay her legal fees in the *Bermudez* matter. The Chairman did not contradict the testimony of other key witnesses regarding the Tribe's loans to Tammy Gwen Billie. *Id.* at 75. Ultimately, the Chairman's 30(b)(6) testimony did not support the allegations of nefarious conduct asserted in the Complaints.

## CONCLUSIONS OF LAW

### I. THE COURT MAY IMPOSE SANCTIONS BASED ON COUNSELS' CONDUCT PRIOR TO A DETERMINATION ON THE MERITS

A determination on the merits is not required to impose sanctions. The Court is empowered to regulate and sanction the parties and lawyers that come before it regardless of whether the matter is resolved with a dismissal or a merits determination. Courts can impose Rule 11 sanctions even in cases where there was not a trial or not a ruling on summary judgment.

Indeed, the imposition of Rule 11 sanctions is proper even where, as here, dismissal is based upon the lack of subject matter jurisdiction. *See e.g. Aldrich v. Nelson*, 82 Fed. Appx. 505, 2003 WL 22902979, *1 (8th Cir. 2003) ("[W]e affirm the district court's dismissal for lack of subject matter jurisdiction for the reasons that the district court explained . . . and we find no abuse of discretion in the imposition of Rule 11 sanctions given the frivolousness of this lawsuit."); *DiPonio Construction Co., Inc. v. Int'l. Union of Bricklayers and Allied Craftworkers*, 687 F.3d 744 (6th Cir. 2012). This is consistent with the Supreme Court's holding in *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992), that the "imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanctions would be appropriate." *Id.* at 138.

The opposite rule – urged by the Tribe and its lawyers – would create the absurd result that Rule 11 would not apply to any complaint or subsequent filing when the district court ultimately dismisses the case for any of the grounds provided by Rule 12.  The posture of this case and the Tribe's parallel state litigation against Lewis Tein emphasizes why sanctions are appropriate. This was not a case in its infancy when the Court granted the motions to dismiss. This case was filed in July 2012 and discovery proceeded for over a year, up through full summary judgment briefing (after which time it was stayed per the Court's order). [D.E. 264].

Here, as in the state court proceedings, the Tribe's own documents and the testimony of its own elected officials demonstrate the falsity of the allegations in the Tribe's pleadings. This evidence was available and, indeed, the documents were in the possession of the Tribe and its lawyers **before** they filed this action. In fact, the undisputed evidence shows that critical documents – including Lewis Tein invoices authorized as "ok to pay" – were in Mr. Roman's office and had been for years. LT Ex. 17 at 62-64.  While Mr. Roman denied that this was true, the evidence shows that Mr. Roman himself had elicited this testimony from the Tribe's Records Custodian. *Id.*  (Cross examination of Records Custodian by Bernardo Roman).

## II.   ANY SANCTION IMPOSED IS APPLICABLE TO BOTH THE FIRST AMENDED COMPLAINT AND THE SECOND AMENDED COMPLAINT

### A.   The Tribe and its lawyers have been on notice of the sanctions as to the first and second amended complaint.

Any sanction imposed by the Court pursuant to Lewis Tein's Rule 11 Motion applies both to the First Amended Complaint and the Second Amended Complaint. A timeline of the Rule 11 filings demonstrates the Tribe and its lawyers have been on notice of the issues warranting sanctions for months:

| | |
|---|---|
| 7/1/12: | Tribe files its Complaint in this case [D.E. 1]. |
| 7/30/12: | Tribes files its Amended Complaint [D.E. 13]. |
| 9/24/12: | Guy Lewis, Michael Tein, and Lewis Tein PL ("Lewis Tein") file Motion for Rule 11 Sanctions [D.E. 38]. |
| 10/11/12: | Tribe files its Response to Lewis Tein's Motion for Rule 11 Sanctions [D.E. 60]. |
| 10/15/12: | Lewis Tein files Reply in Support of Motion for Rule 11 Sanctions [D.E. 66]. |
| 10/19/12: | The Court's Order grants the Tribe's Motion for Leave to File Sur-Reply to Rule 11 Motion. The Court explained, "The briefing of Defendants Guy Lewis, Esquire, Michael Tein, Esquire, and Lewis Tein PL's Motion for Rule 11 Sanctions Against Plaintiff and Its Counsel closes with the filing of Plaintiff's Sur-Reply." Minute Order, [D.E. 68]. |
| 10/29/12: | Tribe files Sur-Reply to Lewis Tein's Motion for Rule 11 Sanctions. [D.E. 73]. |
| 11/9/12: | Tribe files Second Amended Complaint [D.E. 75]. The Second Amended Complaint did not recede from its unsupportable accusations, but in fact ramped them up. |
| 4/29/13: | The Tribe files Opposition to Motion for Summary Judgment [D.E. 203], which includes the representation that "The undersigned, who signed this Complaint under oath, has stated that he *has reviewed all available documentation in the possession of the Miccosukee Tribe before filing this Complaint*." [D.E. 203at 2] (emphasis added). |
| 11/22/13: | Lewis Tein files Motion to Supplement Rule 11 Record [D.E. 286]. |
| 12/9/13: | Tribe files Motion to Strike Lewis Tein's Motion to Supplement [D.E. 287]. |
| 12/18/13: | Lewis Tein files Opposition to Tribe Motion to Strike [D.E. 288] and Tribe files Reply in Support of Motion to Strike [D.E. 289]. |

> 5/12/14:       The Court grants Lewis Tein's Motion to Supplement the Rule 11 Record and denies Tribe's Motion to Strike [D.E. 298].

Accordingly, the Tribe and its lawyers have been on notice of Lewis Tein's intention to seek sanctions based on the Tribe's false allegations.

> **B.      The Second Amended Complaint merely provided more specificity of the allegations already plead in the First Amended Complaint.**

The Tribe and its lawyers have argued that the allegations of fictitious loans were not in the Amended Complaint, only the Second Amended Complaint. But the allegations of fictitious loans were only made explicit in the Second Amended Complaint as part of the previously-plead but insufficiently described "scheme" in the First Amended Complaint.

The Second Amended Complaint followed this Court's order [D.E. 55] requiring the Tribe to file an amended complaint because

> Plaintiff has failed to state, with specificity, the following matters: the misconduct of the Lewis Tein Defendants; the pattern of racketeering/criminal activity by the Lewis Tein Defendants; the description of the enterprise insofar as whether the Lewis Tein defendants are separate from the enterprise, members of the enterprise, or form the enterprise itself; the description of the activities and the pattern of racketeering by the Lewis Tein Defendants; and a statement as to whether the same entity is both the liable "person" and the "enterprise."

[D.E. 55 at 5] (parenthetical citations omitted).  Alleging Lewis Tein's involvement in the fictitious loan scheme was simply part of the prior RICO allegations plead with more specificity. *See* [D.E. 75 at ¶41]. The false RICO allegations were already in the First Amended Complaint.

> **C.      The Tribe and its lawyers never receded from these scandalous allegations.**

The only major allegation added to the Second Amended Complaint is the allegation of the "fictitious loan scheme" – all others that Lewis Tein challenged at this hearing were contained in the prior pleading.  The Tribe and its lawyers have never receded from the "fictitious loan scheme" allegations, however.  To the contrary, they reiterated them in their summary-judgment opposition, their Rule 11 opening statement, and throughout the Rule 11 evidentiary hearing (including Roman's testimony). Lewis Tein's motion for summary judgment and November 2013 Rule 11 supplement placed the Tribe on crystal-clear notice that its Second Amended Complaint – including the loan allegations – was frivolous. Sanctions are fully

applicable to the Second Amended Complaint. *See Petrano v. Nationwife Mutual Fire Ins. Co.*, No. 1:12-cv-86, 2013 WL 1325201, *1 (N.D. Fla. Feb. 4, 2013) (granting Rule 11 motion for sanctions addressing original complaint even though plaintiff later filed amended pleading).

The Tribe and its lawyers have never argued that sanctions pursuant to the Court's other powers, including its 28 U.S.C. § 1927, the Court's inherent powers, and the Court's *sua sponte* powers under Rule 11 would be limited to only one of the various iterations of the Complaint. The Court can *sua sponte* impose Rule 11 Sanctions after notice and an opportunity to be heard, both of which the Tribe and its lawyers were afforded. *iParametrics, LLC v. Howe*, 522 Fed. Appx. 737, 738-39 (11th Cir. 2013); *McDonald v. Emory Healthcare Eye Center*, 391 Fed. Appx. 851, 852-53 (11th Cir. 2010) (affirming district court's dismissal of litigant's complaint as a sanction pursuant to Rule 11).

## III. THE COURT HAS THE AUTHORITY TO ORDER SANCTIONS UNDER (A) LEWIS TEIN'S RULE 11 FILINGS, (B) *SUA SPONTE* UNDER RULE 11, AND (C) PURSUANT TO THE COURT'S INHERENT AUTHORITY

### A.    Rule 11 Sanctions

A lawyer must "stop, think and investigate" before filing a complaint. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 398 (1990). "[U]nder Rule 11, an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996). "If an attorney has failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions." *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995). "'What constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer [and] whether he had to rely on a client for information as to the facts underlying the pleading, motion or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.'" *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (*en banc*) (citations omitted).

Rule 11 "is intended to 'reduce frivolous claims, defenses or motions' and to deter 'costly meritless maneuvers,' thus avoiding unnecessary delay and expense in litigation." *Donaldson*, 819 F.2d at 1556 (citations omitted). Rule 11 sanctions "are designed to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.'" *Id.*   It is meant to deter attorneys from violating the rule. *Id.*   The meaning of Rule

11 is plain: "A party who signs a pleading or other paper without first conducting a reasonable inquiry shall be sanctioned." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 541 (1991).

Rule 11 incorporates an objective standard. *Donaldson*, 819 F.2d. at 1556.   A finding of bad faith is not required to impose Rule 11 sanctions. *Id.* at 1560.   "The standard for testing conduct under [R]ule 11 is 'reasonableness under the circumstances.'" *Id.* (citations omitted); *Business Guides, Inc.*, 498 U.S. at 551.   The focus is on the merits of the pleading gleaned from the facts and law known or available to the attorney at the time of the filing. *In re Mroz*, 65 F.3d at 1572.   Courts should "avoid using the wisdom of hindsight" and  "test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Donaldson*, 819 F.2d at 1561 (citations omitted).

"A complaint is factually groundless and merits sanctions where the plaintiff has absolutely no evidence to support its allegations." *In re Mroz*, 65 F.3d at 1573.   And, as the matter progresses to trial, the lack of evidence to support a plaintiff's factual assertions justifies the imposition of sanctions. *Id.* at 1572.

**B.     The Court may Impose Sanctions Pursuant to 28 U.S.C. §1927.**

Unlike Rule 11, which is aimed primarily at pleadings, under 28 U.S.C. § 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010).   Section 1927 provides that "any attorney . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." *Peer*, 606 F.3d at 1314  (citations omitted);        *Medinger   v.   Healthcare   Indus. Oligopoly*, No. 09-13454, 391 Fed. Appx. 777, 779, 2010 WL 3096043, *2 (11th Cir. Aug. 9, 2010).

Sanctions under 28 U.S.C. 1927 "are intended to deter an attorney from *intentionally* and unnecessarily delaying judicial proceedings." *Peer*, 606 F.3d at 1314 (citations omitted) (emphasis in original).   An attorney multiples the proceedings unreasonably and vexatiously "when the attorney's conduct is so egregious that it is 'tantamount to bad faith,' which turns on the objective conduct of the attorney. *Id.* (quoting *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007)).   "Bad faith" is an objective standard that is satisfied when an attorney "knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that

needlessly obstruct the litigation of non-frivolously claims." *Amlong*, 500 F.3d at 1242 (quoting *Schwartz v. Millon Air, Inc,*, 341 F.3d 1220, 1225 (11th Cir. 2003)); *Dial HD, Inc. v. Clearone Communications, Inc.*, No. 12-16557, 536 Fed. Appx. 927, 929 (11th Cir. Sept. 18, 2013).

"Frivolity" is determined on a case-by-case basis. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1290 (11th Cir. 2010). A claim is objectively frivolous if at the time of filing there are no facts to support the claim and no chance that discovery would uncover evidentiary support. *Peer*, 606 F.3d at 1312. In addition, as the Eleventh Circuit has explained, "When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991).

Similarly, whether an attorney's conduct is "vexatious" "requires an evaluation of the attorney's objective conduct." *Amlong*, 500 F.3d. at 1240. "Objectively reckless" conduct is enough to warrant sanctions even if the attorney does not act malevolently. *Id.* The objective standard does not turn on the attorney's subjective intent. *Id.* at 1239. Courts "compare the conduct at issue with how a reasonable attorney would have acted under the circumstances." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1282 (11th Cir. 2010).

The sanctions imposed under § 1927 "'must bear a financial nexus to the excess proceedings [and] may not exceed the 'costs, expenses, and attorneys' fees reasonably incurred because of the sanctionable conduct.'" *Norelus*, 628 F.3d at 1297 (11th Cir. 2010) (citation omitted). A § 1927 sanction may include the costs, expenses and attorney's fees that the defendant incurs in prosecuting the sanctions proceeding because those costs are, in the statute's terms, "incurred because of such conduct." *Id.* at 1298.

### C.    The Court has Authority to Impose Sanctions Pursuant to its Inherent Powers.

> Judges have inherent authority to impose sanctions for misconduct by litigants, their lawyers, witnesses, and others who participate in a lawsuit over which the judge is presiding.  Usually the sanction is a fine, an award of attorneys' fees, or some other monetary exaction, and is simply called a "sanction," and no particular procedures, including specification of the burden of proof, are prescribed for determining whether misconduct warranting a sanction has occurred.

*S.E.C. v. First Choice Management Services, Inc.*  678 F.3d 538, 543 -544 (7th Cir. 2012). When statutes or rules do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, a court may safely rely on its inherent power to sanction

bad faith conduct in the course of litigation. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 50-51 (1991); *Coquina Invs. v. Rothstein*, No. 10-60786-Civ, 2012 WL 3202273, *3 (S.D. Fla. Aug. 3, 2012) (Cooke, J.). But even when rules exist that sanction the same conduct, a court's inherent power to sanction errant lawyers can be invoked. *Chambers,* 501 U.S. at 50-51. A court's inherent power is to be used to fashion an "appropriate sanction." *Kornhauser v. Commissioner of Social Security*, 685 F.3d 1254, 1258 (11th Cir. 2012) (quoting *Chambers*, 501 U.S. at 44,)). The court's inherent sanctioning power includes "the ability to impose civil and criminal contempt." *Coquina Invs.*, 2012 WL 3202273, *4. In order to impose criminal contempt, "the court must find that the attorney's conduct 'rises to the level of willfulness'." *Id.* (internal citations omitted).

"The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Hence, a court must find that the lawyer's conduct "constituted or was tantamount to bad faith before a court can impose sanctions against a lawyer under its inherent power." *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2002). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Thomas*, 293 F.3d at 1320 (citation omitted).

## IV. SANCTIONS SHOULD BE IMPOSED AGAINST THE MICCOSUKEE TRIBE, BERNARDO ROMAN III, THE LAW OFFICES OF BERNARDO ROMAN III, P.A., YESENIA LARA, AND YINET PINO

### a. Sanctions are warranted against the Tribe.

"The federal courts have always had the power to tax counsel fees against a party who litigates in bad faith, vexatiously, wantonly, or for oppressive reasons." *Kramer, Levin, Nessen, Kamin, & Frankel v. Aronoff*, 638 F. Supp. 714, (S.D.N.Y. 1986) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 259-59 (1975)). Rule 11 permits sanctions against a client even where the client itself has not signed an offensive pleading. Fed. R. Civ. P. 11 ("If a pleading, motion, or other paper is signed in violation of this rule, the court upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction[.]")*; Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F. 2d 497,

505 (2d Cir. 1989); *Continental Ins. Co. v. Construction Indus. Servs. Corp.*, 149 F.R.D. 451, 454 (E.D.N.Y. 1993) (Rule 11 "plainly contemplates the imposition of sanctions on a represented party who does not sign a pleading, motion, or other paper."). Therefore, there is "no reason why the rule would compel sanctions on a signer who failed to conduct a 'reasonable inquiry,' yet exempt from sanctions a represented party who participates in the preparation of a pleading, motion, or other paper and who either knew or could justly and reasonably be expected to know that the paper lacks a basis in fact or law." *Continental Ins. Co.*, 149 F.R.D. 451 at 455.

Based on this framework, sanctions are warranted against the Tribe. The Tribe approved this lawsuit despite the Tribe's own records indicating the frivolity of its claims. Ex. G, 6/16/14 Hr'g Tr. at 51; [D.E. 211-4]. Moreover, the Tribe continued to pursue this litigation even when its current Chairman and Rule 30(b)(6) witness could not support the allegations in the Amended Complaint and Second Amended Complaint and when its agents and employees refuted the allegations. *See* Findings of Fact Section at III, *supra*; *see also* LT Ex. 18 at 37 (Tribe's current elected lawmaker says "I wouldn't be here" if there was "any evidence to support" a scheme by Lewis Tein).

The Tribe's long-time accountant confirmed the validity of the legal loans provided by the Tribe to its individual tribal members, refuted any scheme by Lewis Tein, and also refused to provide testimony that she was unaware of the loans. After designating her as "the person with the most knowledge," the Tribe fired its accountant of twenty-one years on the eve of her deposition in related litigation when she refused, at Roman's insistence, to testify that she did not know about the loans.

The evidence not only demonstrates that the Tribe should have known that these allegations against Lewis Tein could not be supported by its own records or by the testimony of its own witnesses, but also demonstrates that the Tribe was willing retaliate against those who were willing to provide truthful testimony. Therefore, sanctions are appropriately imposed against the Tribe for pursuing frivolous, unsupported litigation.

### b. Sanctions are warranted against the Tribe's lead counsel, Bernardo Roman, III.

Roman, as the Tribe's lead counsel, had a duty to perform an adequate investigation prior to filing this lawsuit. As discussed in the Findings of Fact Section III, *supra*, Roman's investigation did not meet his solemn obligations under Rule 11. Roman was unfamiliar with the

substance of the work performed by Lewis Tein and he made no memos of any interviews with Lewis Tein clients. The filing of these complaints was predicated on chance happy hour encounters, an unsigned, undated, previously undisclosed memo that says nothing about Lewis Tein, an open house brochure, and the like.

Roman's testimony was intentionally false, repeatedly, and constitutes perjury. Indeed, following the election of the new Chairman and firing of the Tribe's former accounting supervisor and former director of finance,  the Tribe issued a management letter dated 12/15/11 sating: "We represent to you that the events that took place *had nothing to do with discovery of fraud or mishandling of funds*."  LT Ex. 11A.  It is unlikely that the Tribe would issue such a statement if Roman began his investigation in 2010 in an attempt to uncover the fraud alleged against the former Chairman and Lewis Tein.

Roman admitted that he did not do an investigation of the loans to the Bert family prior to filing this lawsuit.  LT Ex. 6 at 20. Moreover, Roman swore that no loan documentation existed confirming the legal loans to the Bert family for payment of Lewis Tein's legal fees.  LT Ex. 5a. This was a false affidavit. His sworn statement is refuted by the Tribe's own documents, its elected officials, and former employees.  Roman produced no minutes confirming any loan policy that would prohibit the types of loans provided to the Bert family despite multiple requests from this Court to do so.  Roman's interpretation that the legal loans were restricted to Michael Diaz is yet another instance where Roman continues to "danc[e] on the head of legal pins that do not exist[.]"

Roman filed a false affidavit in the related state-court action swearing that there were "no books of accounts or general ledgers reflecting loans or advances" between the Tribe and Lewis Tein's clients for legal fees.  LT Ex. 5A at ¶3.   This Court ordered Roman to produce "any document that concerns loans or monies advanced by the Tribe, with the promise of repayment, to Jimmy Bert, Tammy Gwen Billie or Louise Bert for legal fees, from 1999 to the present." [D.E. 177 at 6].  Roman, in this case, initially withheld those documents, so that Lewis Tein would not have them for its defense here or in the sanctions proceeding in *Bermudez* action – concerning the identical allegations of "fictitious loans" for Tammy Billie and Jimmie Bert.  This alone is sanctionable and contemptuous behavior of the worst sort.

Roman attempted to suborn perjury from the Tribe's accountant Jodi Goldenberg and then, when she refused, he fired her. Ex. A, 6/10/14 Hr'g Tr. at 122-24.  Roman designated

Goldenberg as a "person with the most knowledge" about the Tribe's allegations in parallel State Action. *Id.* at 122-24. Roman suggested that Goldenberg state in her upcoming deposition "What is a loan, I don't know what a loan is." *Id*. at 124. She would not agree to lie. *Id.* Shortly after Goldenberg refused to comply with Roman's suggestion, she was fired. *Id*. at 122-25. Roman offered no defense related to his tampering with a key witness.

Roman's behavior calls for the strongest of sanctions, including referral to the United States Attorney's Office for investigation regarding obstruction of justice in a federal proceeding. Sanctions may include referral of the offending attorneys and party to the United States Attorney for investigation. *See Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co*., 470 F. 3d 1036, 1039 (11th Cir. 2006); *Matsuura v. Alston & Bird*, 166 F. 3d 1006, 1007-08 (9th Cir. 1999) (describing referral to U.S. Attorney by District Court in *In re E.I. du Pont de Nemours and Co. – Benlate Litig*., No. 4:95–CV–36 (HL) (M.D.Ga. Nov. 4, 1998))

### c. Sanctions are warranted against Roman's associates, Yesenia Lara and Yinet Pino.

While Pino and Lara sat idly through eight days of hearings hoping to be forgotten, their culpability is not diminished. These two lawyers attended virtually every hearing in this and the related state litigation. For over a year, Roman has essentially not appeared in at least 80 percent of court hearings and depositions. Instead, Pino and Lara have spewed his lies with zeal. Their misconduct cannot be condoned or excused.

Sanctions are warranted against Lara and Pino. They are the associates who were involved in this litigation. They each signed the Second Amended Complaint. *See* [D.E. 75] (Second Amended Complaint signed by Yinet Pino and Yesenia Rey). They also continued to pursue the allegations against Lewis Tein in subsequent filings. For example, the Tribe's response to Lewis Tein's Motion for Summary Judgment includes Lara and Pino in the signature block. [D.E. 203 at 27]. That pleading continued to pursue the false allegations. *See id.* at 23 ("These fake loans include the legal fees paid to Lewis Tein for the defense of Tammy Gwen Billie and Jimmy Bert."); [D.E. 75].

Pino and Lara also failed to conduct a reasonable investigation prior to signing the Second Amended Complaint. Each failed to interview key witnesses, including the Tribe's former general counsel, the Tribe's accountant of twenty-one years, or the Tribe's outside auditor, Jose Menendez, each of whom would have confirmed the validity of the loans that the

Tribe and its lawyers asserted were fake and part of a kickback scheme. *See* Ex. A, 6/10/14 Hr'g Tr. at 93; 132; Ex. G, 6/16/14 Hr'g Tr. at 35.

Lara and Pino attended and defended a number of depositions of key witnesses in this matter and related litigation in which the Tribe's allegations were refuted or otherwise shown to be unfounded and unsupportable. They were both present when the Tribe's Rule 30(b)(6) witness, Chairman Colley Billie, was unable to articulate the underlying facts supporting the claims against Lewis Tein. *See, e.g.*, LT Ex. 2 at 2; 62; 64; 68; 129-30. Moreover, both were particularly active in the deposition making objections to questions probing what evidence supported the accusations in this case. *Id.* at 114:3-10 (Ms. Pino: " . . . you keep asking the same question, and he has answered the damn question. Stop it. Stop it. . . .").

Pino attended the deposition of the Tribe's treasurer, Jerry Cypress, who confirmed the Tribe's General Council approved the loans provided to the Bert family for legal fees. LT Ex. 47 at 143-44. Cypress was then instructed by "my attorney, Tribal attorney" not to answer additional questions pertaining to the purported "fake" loans alleged by the Tribe. LT Ex. 47 at 146. This was apparently Pino, since Roman had already left the deposition for a hearing in this case scheduled on the same day. *Id.* at 77.

Lara attended the depositions of the Tribe's former vice chairman, Jasper Nelson, and the Tribe's current lawmaker, William Osceola. Nelson confirmed the loans for legal fees provided to the Bert family. LT Ex. 15 at 64. Osceola not only confirmed the loans, but affirmed the "loan to pay the legal fees for Jimmie Bert and Tammy Billie" were made "without regard to who their lawyer would be." LT Ex. 18 at 78-79.

Under these circumstances, sanctions are appropriate against Lara and Pino because "[a]ssociates may not blindly follow commands of partners they know to be wrong." *Roberts v. Lyons*, 131 F.R.D. 75, 84-85 (E.D. Pa. 1990). Accordingly,

> No lawyer may disclaim responsibility of his/her own action or for a paper bearing his/her name. When others are involved in misconduct with counsel, degrees of culpability may vary but ultimate responsibility does not. Counsel simply cannot delegate to others their own duty to act reasonably and to meet the professional mandates set forth in Rule 11 . . . .The obligations imposed by law on attorneys do not fluctuate day to day or on a case by case basis. In the end, each member of the bar is an officer of the court. His or her first duty is not to the client or the senior partner, but to the administration of justice. . . . This responsibility . . . may not be passed blindly from one lawyer to another up the extensible chain of command[.]

*Id*. at 85.   Lara and Pino continued to pursue the allegations of a kickback scheme, money laundering, fake loans, fraud, tax evasion, and other false allegations despite being present throughout multiple depositions of witnesses who disagreed with these allegations or who could not support them.

## V.   SANCTIONS SOUGHT AGAINST EACH OFFENDING PARTY

### A.   Sanctions against the Tribe:

The Miccosukee Tribe vexatiously filed a frivolous lawsuit contradicted by its own documents and its own officials and former officials.  Sanctions imposed against the Tribe must include Lewis Tein's attorneys fees and costs in defending this lawsuit. Because the vexatious conduct here created delay across numerous proceedings, and was comprised of a pattern of false accusations and hiding evidence, the Tribe sanction imposed should also include Lewis Tein's fees in the multiple proceedings making these same allegations.

 Lewis Tein proposes to address the exact amount of fees and costs once the Court finds entitlement.

### B.   Sanctions against Bernardo Roman, III and Bernardo Roman II, PA:

Roman led the Tribe's campaign of vexatious litigation.  His pre-investigation into these allegations was insufficient and lacked credibility.  Moreover, he attempted to suborn perjury from at least one key witness who confirmed the falsity of the Tribe's "fictitious" loan allegations. He failed to turn over or disclose key documents and witnesses.  Even at this Court's insistence, Roman failed to provide any Tribal meeting minutes confirming Roman's support prohibiting the types of loans at issue in this litigation.  Roman continued to pursue this litigation despite being aware of documents that refuted the allegations. He participated in multiple depositions of key witnesses who provided testimony that belied the fake loan allegations and could point to no wrongdoing by Lewis Tein. And yet, he never receded.

Roman's behavior throughout this litigation and the related litigation amounts to bad faith and warrants sanctions.  This Court is empowered pursuant to Rule 11, 28 U.S.C. §1927, and its inherent powers to fashion an appropriate sanction to deter such conduct. Here, the following sanctions are appropriate: (1) Roman should be referred to the United States Attorney's Office for investigation into his attempts to suborn perjury, his numerous instances of perjury in this

courtroom during this Rule 11 hearing, and his attempts to obstruct justice in a federal lawsuit by knowingly concealing documents; (2) Roman should be responsible for the legal fees incurred by Lewis Tein in this litigation and the related litigation that he orchestrated; and (3) Roman should be referred to the Florida Bar for investigation into violations of his obligations as a lawyer and member of the Bar.

### C.      Sanctions against Yesenia Lara and Yinet Pino:

As discussed above, Lara and Pino are Florida lawyers who signed these same offending pleadings. They actively participated throughout this litigation in prosecuting these false allegations. During this Rule 11 hearing, they were represented by the same lawyers, maintaining the same unapologetic, headlong repetition of these offensive charges. They did not present any evidence in mitigation of their individual culpability. They did not file a single paper or present any testimony (themselves or through any witness) recognizing that they crossed the Rule 11 line such that, in their individual cases, Rule 11's goal of deterrence is implicated less. On the other end of the spectrum, they did not present any evidence indicating that they had received any independent assurances of the factual grounds of their allegations – *e.g.,* from Mr. Roman – such that their punishment should be less severe. Likewise, they did not present any evidence that they were forced to sign the pleadings that they signed, or that their names were affixed without their knowledge. Rule 11 does not lower its expectations for members of the Florida Bar, filing serious pleadings in federal court, just because they are associates. The contrary construction would encourage similar reckless conduct.

Unlike Roman, however, Lara and Pino did not file a false affidavit or attempt to suborn perjury from Jodi Goldenberg. Unlike Roman, they did not testify falsely in this hearing, repeatedly. Thus, while there is abundant evidence that Lara and Pino failed miserably in their ethical and statutory obligations as lawyers, the present record does not contain direct evidence of criminal conduct by them. Accordingly, although they are certainly witnesses, we are not requesting that they be referred to the United States Attorney's Office for investigation into their own conduct.

Most respectfully, their unethical conduct does warrant monetary sanctions and referral to the Florida Bar for professional discipline.

Respectfully submitted,

Carlton Fields Jorden Burt, P.A.
100 S.E. Second Street, Suite 4200
Miami, Florida 33131

By:   /s/ Paul A. Calli

Paul A. Calli
Florida Bar No. 994121
Email: pcalli@cfjblaw.com
cbussone@cfjblaw.com
miaecf@cfdom.net
*Attorneys for Guy Lewis, Michael Tein, and Lewis Tein, PL*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on July 11, 2014, we electronically filed the foregoing document with the Clerk of Court using CM/ECF.  We also certify that the foregoing document is being served on this day on all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

CARLTON FIELDS JORDEN BURT, P.A.
By: /s/ Paul A. Calli
Paul A. Calli
Florida Bar No. 994121
Email: pcalli@cfjblaw.com
cbussone@cfjblaw.com
miaecf@cfdom.net