IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division
Case No. 12-CV-22439-COOKE/McAliley

MICCOSUKEE TRIBE OF INDIANS OF
FLORIDA, a sovereign nation and federally
recognized Indian tribe,

       Plaintiff,

vs.

BILLY CYPRESS; DEXTER WAYNE
LEHTINEN; MORGAN STANLEY SMITH
BARNEY, JULIO MARTINEZ; MIGUEL
HERNANDEZ; GUY LEWIS; MICHAEL TEIN;
and LEWIS TEIN, PL, a professional association,

       Defendants.

_____/

## FINAL WRITTEN SUBMISSION OF PLAINTIFF AND ATTORNEYS ROMAN, PINO AND LARA IN OPPOSITION TO RULE 11 AND 57.105 MOTIONS BY DEFENDANT, LEHTINEN [DE 273 filed under seal], AND DEFENDANTS, LEWIS, TEIN AND LEWIS TEIN PL [DE 38-1]

Edward A. Marod
FBN 238961
emarod@gunster.com

GUNSTER
777 S. Flagler Drive, Suite 500E
West Palm Beach, Florida 33401
Telephone: (561) 655-1980
Facsimile: (561) 671-2519

William K. Hill
FBN 747180
whill@gunster.com

Jonathan H Kaskel
FBN 52718
jkaskel@gunster.com

GUNSTER
600 Brickell Avenue, Suite 3500
Miami, Florida 33131
Telephone: 305-376-6000
Facsimile: 305-376-6010

*Counsel to Miccosukee Tribe of Indians of Florida,*
*Bernardo Roman, III, Yinet Pino & Yesenia Lara*

## <u>TABLE OF CONTENTS</u>

SUBMISSION ...................................................................................................................1

I.     RULE 11 SANCTIONS SHOULD BE DENIED ...........................................................1

    A.   The History of Rule 11 .......................................................................................1

    B.   Conditions Precedent To Relief Under Current Rule 11 ......................................3

        1.   A Rule 11 Motion Must Describe Specific Conduct ...................................3

        2.   A Rule 11 Motion Must Comply with the "Safe Harbor" Provision .........4

        3.   Court Initiated Rule 11 Proceedings Have Different Conditions...............5

        4.   Rule 11 Motions Must Comply with the Local Rules of This Court .........5

    C.   The Rule 11 Standard .........................................................................................6

    D.   Sanctions Allowable Are Limited Under The Current Rule 11 ............................8

    E.   If The Court Decides Sanctions Are Warranted, It Must Exercise Its
        Discretion In Deciding Who Should Be Sanctioned ................................................9

    F.   If Sanctions Are Granted, The Court Must Make Specific Findings ....................9

    G.   LewisTein's Motion Must Be Denied ................................................................10

        1.   LewisTein's Motion Violates the Requirements of the Rule
            Including the Specific Description Requirement, the Separate
            Motion Requirement and Local Rule 7.1(a)(3) .........................................10

        2.   LewisTein's Motion Violates the Safe Harbor Requirement as to
            All Conduct Occurring After August 15, 2012 .........................................10

        3.   LewisTein's Motion is Not Saved by the Order [DE 298] Granting
            its Motion [DE 286] to "Supplement the Record" ...................................11

        4.   The Evidence Does Not Establish Any Violation of Rule 11 in
            Respect of the Claims Against Lewis Tein ...............................................12

        5.   Substantial Penalties Are Not Justified ....................................................14

    H.   Lehtinen's Motion Must Be Denied ..................................................................15

        1.   Lehtinen's Motion Violates the Requirements of the Rule
            Including the Separate Motion Requirement and Local Rule
            7.1(a)(3) ...................................................................................................15

2.   The Evidence Does Not Establish Any Violation of Rule 11 in Respect of the Claims Against Lehtinen ................................................. 16

a.   There was evidence that Lehtinen misrepresented to Plaintiff the existence of a reserve fund to pay its and its members taxes .................................................................................................. 17

b.   There was evidence that Lehtinen wrongfully and without authority released certain Tribal information to the IRS ................. 18

c.   There was evidence that Lehtinen was aware of the former Chairman's wrongful use of the Plaintiff's assets and behaved wrongfully ........................................................................ 19

3.   Substantial Penalties Are Not Justified ................................................... 20

I.   The Record Does Not Support a Sua Sponte Award ............................................ 20

II.   SECTION 57.105, FLA. STAT. SANCTIONS MUST BE DENIED .............................. 21

III.   28 U.S.C. §1927 SANCTIONS SHOULD BE DENIED ................................................. 21

IV.   SANCTIONS UNDER THE COURT'S INHERENT POWER SHOULD BE DENIED ..................................................................................................................... 22

CONCLUSION .................................................................................................................. 23

CERTIFICATE OF SERVICE .......................................................................................... 25

## <u>TABLE OF CITATIONS</u>

### <u>CASES</u>

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
500 F.3d 1230 (11th Cir. 2007) ............................................................................... 22,

*Baker v. Alderman*,
158 F.3d 516 (11th Cir. 1998) .................................................................................... 6

*Barnes v. Dalton*,
158 F.3d 1212 (11th Cir. 1998) ................................................................................ 22

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384, 395 (1990) ............................................................................................ 6

*Davis v. Carl*,
906 F. 2d 533, 536 (11th Cir. 1990) ................................................................... 2, 6, 7

iii

*Dionne v. Floormasters Enterprises, Inc.*,
667 F.3d 1199 (11th Cir. 2012) ...........................................................................21

*Gwynn v. Walker*,
532 F.3d 1304, 1309 (11th Cir. 2008) ..............................................................4, 12

*Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*,
117 F.3d 1328 (11th Cir. 1997) ...........................................................................19

*In re General Plastics Corp* (*Capital Factors, Inc. v. General Plastics Corp*.),
170 B.R. 725, 732 (Bkrtcy. S.D. Fla. 1994) ...........................................................7

*In re Pennie & Edmonds*, LLP,
323 F.3d 86, 87 (2d Cir. 2003) ...........................................................................20

*Kaplan v. DaimlerChrysler, A.G.*,
331 F.3d 1251, 1255 (11th Cir. 2003) ........................................................5, 16, 20

*Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida*,
827 F. 2d 1454, 1458 (11th Cir. 1987) ..................................................................21

*Lawrence v. Richman Grp. of CT LLC*,
620 F. 3d 153 (2d Cir. 2010) ............................................................................3, 4

*Lawson v. Sec'y, Dep't of Corr.*, ___Fed. Appx. ____,
2014 WL 1491862 (11th Cir. 2014) ......................................................................2, 7

*Lucas v. Duncan*,
574 F.3d 772, 777 (D.C. Cir. 2009).....................................................................18

*Mary Ann Pensiero, Inc., v. Lingle*,
847 F.2d 90, 95 (3d Cir. 1988) ...........................................................................14

*Massengale v. Ray*,
267 F.3d 1298, 1302 (11th Cir. 2001) ..................................................................16

*Miller v. Saint Felix*,
414 F. App'x 214, 217 (11th Cir. 2011).................................................................3

*Perez v. Pavex Corp*.,
01-CV-69-T-27, 2008 WL 906457 (M.D. Fla. 2008) ...............................................7

*Ritchie v. Cavalry Portfolio Services, LLC*,
08-CV-1725, 2011 WL 309055 (M.D. Fla. Jan. 27, 2011) ........................................6

*Robinson v. Alutiq-Mele, LLC*,

643 F. Supp. 2d 1342 (S.D. Fla. 2009) ............................................................................4, 5 11, 12

*Sanchez v. Swire Pac. Holdings, Inc.*,
73 Fed. R. Serv. 3d 1757 (S.D. Fla. 2009) ..................................................................................21

*Steinhardt v. E. Shores White House Ass'n, Inc.*,
413 So. 2d 785, 786 (Fla. 3d DCA 1982) ....................................................................................21

*Simmons v. Schimmel*,
476 So. 2d 1342, 1344-46 (Fla. 3d DCA 1985) ..........................................................................21

*Thompson v. RelationServe Media, Inc.*,
610 F. 3d 628 (11th Cir. 2010) ......................................................................................................9

*Willy v. Coastal Corp.*,
503 U.S. 131 (1992) ........................................................................................................................6

## STATUTES AND RULES

11th Circuit Rule 36-2 ....................................................................................................................3

28 U.S.C. § 1927 ...........................................................................................................1, 21, 22, 24

§ 57.105(1), Fla. Stat. .....................................................................................10, 15, 21, 22, 24

Amendments to the Federal Rules of Civil Procedure (146 F.R.D. 401, 587-88 (1993)).......2, 8, 9

Federal Rule of Civil Procedure 11 ....................................................................................*passim*

Federal Rules of Bankruptcy Procedure 9011 ..............................................................................3

S.D. Fla. Local Rule 7.1(a)(3) ...........................................................................................5, 10, 15

## SECONDARY SOURCES

Cowles, John K. *Rule 11 of the Federal Rules of Civil Procedure and the Duty to Withdraw a Baseless Pleading*,
56 Fordham L. Rev. 697, 700 (1988) ............................................................................................1

Hirt, Theodore C., *A Second Look at Amended Rule 11*,
48 Am. U. L. Rev. 1007, 1019 (1999)...........................................................................................2

Vairo, Georgene, *Rule 11 and the Profession*,
Fordham L. Rev. 592, 600 (1998) .................................................................................................1

**SUBMISSION**

Two motions for sanctions have been filed in this action against the Miccosukee Tribe of Indians of Florida ("Tribe") and its attorneys, Bernardo Roman, III, Esq., Yinet Pino, Esq., and Yesenia Lara, Esq. (hereinafter "Plaintiff and its counsel").  The first [DE 38-1] was served by certified mail only on Bernardo Roman, Esq., as counsel for the Miccosukee Tribe of Indians of Florida, on August 15, 2012 [*id.*, at 9] and filed on September 24, 2012 on behalf of defendants Guy Lewis, Esq., Michael Tein, Esq., and their firm Lewis Tein PL (hereinafter "LewisTein").  The second [DE 273 filed under Seal] was served on Mr. Roman, Yinet Pino and Yesenia Rey [now Lara] on July 26, 2013 and filed under seal on September 4, 2013, on behalf of Dexter W. Lehtinen, Esq.  Both motions should be denied and, under the circumstances, the Court should decline to consider *sua sponte* sanctions under Rule 11, 28 U.S.C. §1927 and the Court's inherent power.

**I.    RULE 11 SANCTIONS SHOULD BE DENIED**

**A.  The History of Rule 11**

Rule 11 was promulgated in 1938 to prevent frivolous litigation.  Because the award of sanctions under that version of the Rule was entirely discretionary, it  required a finding of "bad faith" and provided for only limited sanctions, "[c]ourts found it difficult to apply and enforce and were reluctant to use it."  Cowles, John K. "*Rule 11 of the Federal Rules of Civil Procedure and the Duty to Withdraw a Baseless Pleading*," 56 Fordham L. Rev. 697, 700 (1988).  The Rule was materially amended in 1983 in an attempt to make it more effective and to broaden its goals.  *Id.*, at 701-02.  Some feared that the new version of the Rule might be overused; and that turned out to be what happened.  Vairo, Georgene, "*Rule 11 and the Profession*," Fordham L. Rev. 592, 600 (1998).  Under the 1983 version of the Rule, more than a third of all cases filed involved Rule 11 proceedings and even more involved threats, "as many attorneys were unable to pass up the opportunity to force their adversaries to justify the factual and legal bases underlying motions and pleadings."  *Id.*  Thus, the Rule was once again amended in 1993 to the version under which we now practice.

The 1993 version of the Rule deemphasizes the grant of compensatory awards and includes "safe harbor" provisions intended to curb the excessive invocation of the Rule that had arisen under the 1983 version.  *Id.*, at 598-99.  For instance, Rule 11(c)(2) expressly provides that "[a] sanction imposed for violation of this rule *shall be limited to what is sufficient to deter*

1

*repetition of such conduct or comparable conduct by others similarly situated*." Hirt, Theodore C., "*A Second Look at Amended Rule 11*," 48 Am. U. L. Rev. 1007, 1019 (1999) (*emphasis added*). While it does not entirely rule out compensatory awards, "the Rule now expresses a preference for the imposition of either non-monetary sanctions or monetary sanctions that are paid to the court." *Id.* Indeed, the Advisory Committee Notes state:

> Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty. However, under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of the payment be made to those injured by the violation.

Fed. R. Civ. P. 11 Advisory Committee Note, reprinted in 146 F.R.D. 401, 587-88 (1993). Thus, *the purpose of the new rule is clear: it is to deter rather than to compensate*. And nowhere within either the rule itself or the Advisory Committee Note is there any suggestion that the purpose of the rule is either to provide "personal redress" to a party claiming to have been falsely accused or to "clear the name" of someone allegedly disparaged by an allegation.

The new Rule also provides clear procedural safeguards for the service and filing of motions by parties, as well as authorizing and establishing procedures and standards for *sua sponte* proceedings initiated by the Court. In summary: (1) a motion initiated by a party, (a) must be a motion separate from all other motions, (b) that is first served (without filing) and (c) that specifically identifies the particular allegation, argument or other conduct that is demanded to be withdrawn or corrected, (d) the passage of at least 21 days from that service without appropriate corrective action by the offending party, and (e) the prompt filing of the motion before the Court rules on the issue that gives rise to the claim; by contrast, and (2) proceedings commenced *sua sponte* must be (a) initiated by the issuance of a show cause order that (b) specifies the allegation, argument or other conduct that the Court finds offensive and (c) the standard that must be met in granting a *sua sponte* motion akin to proof of contempt. Because of the countervailing interest in not stifling the creativity of counsel in seeking to achieve their clients' legitimate ends, the Eleventh Circuit has consistently held that only a minimal showing need be made by a party or attorney opposing a Rule 11 motion to avoid liability. *E.g., Lawson v. Sec'y, Dep't of Corr.*, 2014 WL 1491862 , at *1-2 (11th Cir. 2014); *see also Davis v. Carl*, 906 F. 2d 533, 536 (11th Cir. 1990).

2

As explained, *infra*, on the evidence before the Court, both motions here should be denied, and the Court should resist the urge to consider *sua sponte* relief.

## B.  Conditions Precedent to Relief Under Current Rule 11

Controlling Rule 11 jurisprudence holds that a Rule 11 motion "must describe the specific conduct that allegedly violates Rule 11(b)."  *See* Fed. R. Civ. P. 11(c)(2).  Furthermore, a Rule 11 Motion must comply with the safe harbor requirement because the safe harbor period resets with each amended pleading. *See Lawrence v. Richman Grp. of CT LLC*, 620 F. 3d 153, 158 (2d Cir. 2010).

### 1.  A Rule 11 Motion Must Describe Specific Conduct

In dealing with the equivalent rule to Rule 11 under the Federal Rules of Bankruptcy Procedure, the Eleventh Circuit explained that rule's requirement that the motion must "describe the specific conduct alleged to violate the rule."  *See Miller v. Saint Felix*, 414 F. App'x 214, 217 (11th Cir. 2011)[1] (citing Fed. R. Bankr. P. 9011(c)(1)(A)).  Relying, interchangeably, on sources discussing Rule 11 and the bankruptcy analog, the Eleventh Circuit explained the importance of this component of the rule:

> In addition to the service requirement of the "safe harbor" provision, however, the rule also requires that the motion "describe the specific conduct alleged to violate" the rule. Fed. R. Bankr. P. 9011(c)(1)(A). "Since this requirement serves a valuable notice function, a failure to do so may result in the [lower] court rejecting the motion." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1337.1 (3d ed. 2004); *see also Nagel v. ADM Investor Servs., Inc.,* 65 F.Supp.2d 740, 756 (N.D. Ill. 1999) (holding that "[b]ecause the motion must identify the 'specific conduct' that violates Rule 11, [the defendant] has not preserved any demand for sanctions based on other allegations of the complaint," beyond the one specifically mentioned in the motion for sanctions); *Bergquist v. Caskie–Johnson (In re Caskie–Johnson),* No. 06–cv01431–EWN, 2007 WL 496675, at *3 (D. Colo. Feb. 13, 2007). This notice requirement 'permits the subjects of sanctions motions to confront their accuser and rebut the charges leveled against them' and to 'withdraw the potentially offending statements before the sanctions motion is officially filed.' *See Storey v. Cello Holdings, LLC,* 347 F.3d 370, 389 (2d Cir. 2003) . . . . Upon review, we find that Saint Felix's deficient motion for sanctions cannot be cured by looking to his motion to dismiss. Permitting a party to rely on some other motion to satisfy the

---

[1] Eleventh Circuit Local Rule 36-2 provides, *inter alia*, that "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."

notice requirements of Bankruptcy Rule 9011(c)(1)(A) would circumvent the plain language of the rule. . . .

*Id*.

Indeed, another judge in this Court has recently denied enforcement of a Rule 11 motion, *inter alia*, because of the lack of specificity of the allegations of the motion that was served.[2] In *Robinson v. Alutiq-Mele, LLC*, 643 F. Supp. 2d 1342 (S.D. Fla. 2009), Magistrate Judge McAliley recommended, and Judge Gold ordered that a Rule 11 motion was due to be denied when the original motion merely recited the provisions of Rule 11 in conclusory fashion and did not identify any specific part of the challenged pleading that the moving party demanded be withdrawn.

### 2. A Rule 11 Motion Must Comply with the "Safe Harbor" Provision

Rule 11 requires that each such motion be served upon the allegedly offending parties at least 21 days before the motion is filed with the Court. Fed. R. Civ. P. 11(c)(2), second sentence. Because of the penal nature of Rule 11, this requirement, like all of the Rule's other procedural requirements, is strictly construed. *Robinson, supra*. Thus, where a Rule 11 motion has been directed to a particular pleading and the Court allows an amendment to that pleading, the safe harbor clock is reset, requiring the filing of a new motion directed to the frailties, if any, of the new pleading. *See Lawrence, supra, at* 158; *Rates Tech. Inc. supra*, 2014 WL 46538, at *5 (S.D.N.Y. Jan. 6, 2014). In *Lawrence*, the Second Circuit explained that "the filing of an amended pleading resets the clock for compliance with the safe harbor requirements of Rule 11(c)(2)." *Lawrence*, 620 F. 3d at 158; *see also Rates Tech. Inc.*, 2014 WL 46538, at *5 ("Thus, regardless of whether they actually served their first motion [directed at the original Complaint], defendants were required to serve . . . their new sanctions motion—directed at the First Amended Complaint—twenty one days before the filing [of the new motion].").

A corollary to the safe harbor provision and the policy of the rule to deter further violations is that a Rule 11 motion cannot be filed after the Court has ruled on a motion to dismiss an allegedly improper pleading, denied an allegedly improper motion or stricken an allegedly improper allegation. *Robinson, supra*, at 1350, citing *Gwynn v. Walker,* 532 F.3d 1304, 1309 (11th Cir. 2008) ("We agree with the Second, Fourth, and Sixth Circuits that the service and filing of a motion for sanctions "must occur prior to final judgment or judicial

---

[2] The content of the motion that was served in *Alutiq-Mele* differed substantially from the content of the supporting memorandum that was filed.

rejection of the offending" motion.").[3]  Any other interpretation would render the safe harbor provisions meaningless.  *Robinson, supra,* at 1350.

Furthermore, Rule 11 motions must be made separately from any other motion.  Fed. R. Civ. P. 11(c)(2).

### 3.   Court Initiated Rule 11 Proceedings Have Different Conditions

Rule 11 permits the Court to initiate sanctions proceedings on its own motion.  Fed. Civ. P. 11(c)(3); *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).  If the Court does so, it is not required to comply with the "safe harbor" provisions by which parties filing motions are bound, but it must comply with additional standards.

A court may only commence Rule 11 proceedings on its own motion by issuing an order to show cause to the attorney, law firm or party accused of a violation.  Fed. R. Civ. P. 11(c)(3). Like a motion by a party, the court's order to show cause must be directed to "conduct specifically described in the order."  *Id.*  Moreover, because of the absence of the "safe harbor," the standard for awarding fees on the Court's own motion is much higher, requiring a showing "akin to contempt."  *Kaplan, supra.*  As discussed, *infra*, there are also limits on the types of sanctions that may be imposed pursuant to a *sua sponte* Rule 11 proceeding.

### 4.   Rule 11 Motions Must Comply with the Local Rules of This Court

Local Rule 7.1(a)(3) of the Local Rules of this Court requires that, before filing any motion except express and limited exceptions, counsel for the movant must confer orally or in writing with the opposing parties that may be affected by the relief sought and:

> At the end of the motion, and above the signature block, counsel for the moving party shall certify either: (A) that counsel for the movant has conferred . . . in a good faith effort to resolve the issues raised in the motion and has been unable to do so; or (B) that counsel for the movant has made reasonable efforts to confer . . . which efforts shall be identified with specificity in the statement, but has been unable to do so.;"

*See* S.D. Fla. Local R. 7.1.A.3.  As Judge Torres explained in an order denying a Rule 11 Motion, "[the movants] should fully comply with their own obligations under the Court's rules before accusing anyone else of violating them."  *See* Ex. A (Torres Order, Case No. 09-CV-

---

[3] This concept is relevant to the extent that any alleged revision of any of the motions post-dated the entry of the Court's order dismissing this action for lack of subject matter jurisdiction.

20613-EGT, Southern District of Florida (DE 85)).[4]   Neither of the motions in question strictly complies with this requirement.

### C.  The Rule 11 Standard

The Eleventh Circuit "requires *a two-step inquiry* as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." (*emphasis add*ed)  *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).[5]   Of course, the application of this approach will depend upon the nature of the signed paper or other conduct that is attacked by the motion.   For instance, where attorney misconduct is the issue, a court may exercise its collateral jurisdiction to punish it, even where a case is dismissed for lack of subject matter jurisdiction.   *E.g.*, *Willy v. Coastal Corp.*, 503 U.S. 131 (1992).   Obviously, that sort of situation, where it is interlocutory behavior that is being examined, does not require a determination of the overall merits of the case to be sanctioned.   However, where the attack is on the merits of some or all of the allegations of a complaint, the Eleventh Circuit standard requires the Court to make a finding, applicable only to the Rule 11 proceeding, whether the claim or claims challenged, are objectively frivolous, in addition to making an evaluation of the reasonableness of the grounds for signing the paper.   *E.g., Doria v. Class Action Services, LLC*, 261 F.R.D. 678, 682 (S.D. Fla., 2009) (" . . . if, after dismissing a party's claim as baseless, the court finds that the party's attorney failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound").

Because the first step addresses objective frivolousness under the facts—not the facts known pre-suit—the determination must include consideration of all evidence through trial.   In *Davis*, 906 F.2d at 537, for example, the Court reviewed the facts submitted during trial and determined that the complaint was not factually groundless; that is, the Court could not find that the "plaintiffs offered no evidence to support their allegations."   Similarly, in *Ritchie v. Cavalry Portfolio Services, LLC*, 08-CV-1725, 2011 WL 309055, at *4 (M.D. Fla. Jan. 27, 2011), the court explained: "After considering the knowledge of Plaintiff's counsel at the time of

---

[4] The text of Judge Torres' order is replicated on Exhibit A, attached hereto.
[5] The issue whether a determination of the overall objective frivolity of a claim must be made to sustain a Rule 11 sanction must not be confused with the issue whether a district court has jurisdiction to decide a Rule 11 motion without there having been a final decision on the merits.   The Court clearly has jurisdiction to decide a collateral matter even if the case has not been finally decided.   See, *e.g., Cooter & Gell v. HartMarx Corp*., 496 US 384, 409 (1990) (Under previous version of Rule, affirming finding that a voluntary dismissal does not deprive the district court of jurisdiction to consider Rule 11 motion.).

6

commencement of this case, as well as during pretrial discovery and trial, the Court finds that Plaintiff's claim under Sec. 1695c(a)(1) is not objectively frivolous, merely a claim with weak support."   Similarly, in *Perez v. Pavex Corp*., 01-CV-69-T-27, 2008 WL 906457 (M.D. Fla. 2008), the Court determined that a complaint was not frivolous based on post-filing deposition testimony.

As for the quantum of proof needed, a district court may impose sanctions under Rule 11(b)(3) only where there is absolutely no factual support for a party's allegations. "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only patently frivolous evidence is offered to support factual contentions, sanctions can be imposed." *Lawson v. Sec'y, Dep't of Corr.*, ___F. App'x ____, 2014 WL 1491862 , at *1-2 (11th Cir. 2014); *see also Davis v. Carl,* 906 F.2d at 536 (noting that the imposition of Rule 11 sanctions based on groundless factual allegations are only appropriate where "plaintiffs offer[ ] *no* evidence to support their allegations"). Where the evidence, although "weak or self-serving," is reasonable, sanctions cannot be imposed. *Id.* Applying this standard for Rule 11 motions, the Eleventh Circuit stated:

> To be sure, the DOC has provided evidence suggesting that Lawson's beliefs are insincere—evidence relied on by the district court but disputed by the parties here on appeal. *The dispositive issue, however, is not whether the DOC's rebuttal evidence is strong enough to defeat Lawson's claims on the merits. Rather, it is whether Lawson has provided* any *evidence supporting his claims. See Cooter & Gell,* 496 U.S. at 396, 110 S.Ct. at 2456. He has. The fact that Lawson has provided *some* evidence showing the sincerity of his beliefs is sufficient to establish that Rule 11 sanctions are inappropriate in this situation. It is entirely possible that Lawson's claims will fail on the merits. That does not, however, provide an avenue for dismissing his complaint as a Rule 11 sanction. Accordingly, we **REVERSE** the district court's decision to impose sanctions under Rule 11. [*emphasis added*]

*Lawson, supra, *2.*

Thus, while evidence negating the existence of an alleged fact is relevant to determining the outcome of a case on the merits, that is not the question before the Court under Rule 11. Under Rule 11 the question the Court must decide is whether there was ANY evidence supporting the allegations at the time of signing and filing.  *In re General Plastics Corp (Capital*

*Factors, Inc. v. General Plastics Corp.*) 170 B.R. 725, 732 (Bkrtcy. S.D. Fla. 1994)("Application of the snapshot rule, which has been adopted by the Eleventh Circuit Court of Appeals, means that 'Rule 11 d[oes] not impose a continuing obligation on [a party] to amend' a paper which was signed in compliance with the rule."). If there was any evidence to support the allegations, the motion must be denied no matter how much evidence there is to the contrary. *Id.*, 731. *See also*, *Doria, supra*, at 686.

### D.  Sanctions Allowable Are Limited Under the Current Rule 11

As noted, *supra*, the 1993 amendments to Rule 11 made substantial changes to the sanctions available under it. As stated in Rule 11(c)(4):

> A sanction imposed under this rule *must be limited to what suffices to deter repetition of the conduct* or comparable conduct by others similarly situated. The sanction may include nonmonetary directives, an order to pay a penalty into court; or, *if imposed on motion*, *and warranted for effective deterrence*, an order directing payment to the movant of a part or all of the reasonable attorney's fees and other expenses directly resulting from the violation. (*emphasis added*)

The Advisory Committee Comments make clear that this language expresses a preference for particular sanctions in the order in which they appear in the rule. Thus, an admonishment of a lawyer, a reprimand of a lawyer, or an order that a lawyer attend specified continuing legal education courses or participate in seminars on relevant topic, would be preferred over any monetary sanction; a monetary payment to the court would be preferred to a payment of an opponent's fees; and, only in an extraordinary case would an opponent's "reasonable fees directly resulting from the violation" be paid. Specifically, the comments provide:

> Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty. However, *under unusual circumstances*, particularly for (b)(1) violations[6], *deterrence may be ineffective unless the sanction* not only requires the person violating the rule to make a monetary payment, but also *directs that some or all of this payment be made to those injured by the violation*. (*emphasis added*)

Amendments to the Federal Rules of Civil Procedure, 146 F.R.D. 401, 587-88 (1993).

It is also clear that by stating a compensatory award may be "imposed on motion" when "warranted for effective deterrence" the drafters meant to convey that compensatory awards may not be imposed upon a court's order to show cause, as an order to show cause is not a motion.

---

[6]  (b)(1) violations are those based on bad faith litigation, as opposed to failure to sufficiently research the law or facts underlying a case.

### E.  If The Court Decides Sanctions Are Warranted, It Must Exercise Its Discretion In Deciding Who Should Be Sanctioned

As the Advisory Committee Comments to the current version of the Rule say:

The sanction should be imposed on the persons—whether attorneys, law firms, or parties—*who have violated the rule or who may be determined to be responsible for the violation.*

\* \* \*

The revision permits the court to consider whether other attorneys in the firm, co-counsel, other law firms, or the party itself should be held accountable for their part in causing a violation. When appropriate, the court can make an additional inquiry in order to determine whether the sanction should be imposed on such persons, firms, or parties either in addition to or, in unusual circumstances, instead of the person actually making the presentation to the court. (*emphasis added*)

*Id.* 588-89.

As will be clear, *infra*, Plaintiff and its counsel believe no sanctions should be awarded in this case.  In addition, though, because, it is clear that Ms. Pino and Ms. Lara worked on this matter as associates in the Law Offices of Bernardo Roman, III, were not responsible for deciding whether or not to withdraw any pleading in response to the Rule 11 motions, and worked primarily as legal researchers and drafters, any sanctions against them would need to be limited to sanctions relating to the insufficiency of the legal research done or the drafting of the legal aspects of the pleadings.  Since neither motion now before the Court identifies any particular deficiency in the legal research or drafting, and none of the evidence or argument presented suggested any deficiency in the legal research or drafting, there should be no sanctions against either of them.

### F.  If Sanctions Are Granted, the Court Must Make Specific Findings

"When imposing sanctions, the district court must describe the conduct determined to constitute a violation of the rule and explain the basis for the sanction imposed." *Riccard v. Prudential Ins. Co*., 307 F.3d 1277 (11th Cir. 2003); *see also* Rule 11(c)(6) ("An order *imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction*") (*emphasis added*)  However, as explained in the Advisory Committee's Comments, "the court should not ordinarily have to explain its denial of a motion for sanctions."  146 F.R.D. at 589-90. Cases to the contrary, such as *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 637 (11th Cir. 2010), are not based on the provisions of Rule 11, but, rather, are based on the provisions of the

Private Securities Litigation Reform Act ("PSLRA") which requires a Rule 11 review in every case subject to that act.

### G. LewisTein' s Motion Must Be Denied

#### 1. LewisTein's Motion Violates the Requirements of the Rule Including the Specific Description Requirement, the Separate Motion Requirement and Local Rule 7.1(a)(3)

Despite Rule 11's clear directive that a Rule 11 motion must "describe the specific conduct alleged to violate the rule," LewisTein's Rule 11 Motion [DE 38-1] is nothing but a memorandum of law generally discussing the provisions of Rule 11 and citing a number of decisions interpreting the rules but not identifying any specific conduct alleged to violate the rule or any of the standards so elucidated. LewisTein's motion explains the standards for both Rule 11 and Fla. Stat. §57.105, but contains no description of any alleged conduct of Plaintiff and its counsel that allegedly violated either rule. [*See* DE 38-1, 2-6] In fact, the only sentence within LewisTein's "Memorandum of Law" that could even be construed as describing alleged misconduct merely states the following: "The complete absence of a legal basis for the claims justifies sanctions." [*See* DE 38-1, at 6]. Since the Rule and case law restrict sanctions under Rule 11 to the "specific conduct" described in the motion, LewisTein's motion should be denied either: (1) because it failed to specify any particular allegation in the AC that it contended was unsupported; or (2) because it claimed that EVERY allegation and legal assertion in the AC was unsupported while the evidence presented by LewisTein failed to establish either that every allegation was unsupported or that, after reasonable investigation, Plaintiff and its counsel should have known they were all unsupported.

In addition to failing to identify specific conduct, LewisTein's motion is combined with a second motion, *i.e.*, a motion under Florida Statutes §57.105, and does not contain between the body of the motion and the signature block a certificate of having conferred in good faith as required by Local Rule 7.1(a)(3). Both such violations of the rule compel denial of Defendants' motions as procedurally defective. See Torres Order, copy attached at Exhibit A.

#### 2. LewisTein's Motion Violates the Safe Harbor Requirement as to All Conduct Occurring After August 15, 2012

LewisTein's Motion was served on August 15, 2012 and was filed on September 24, 2012, without amendment. Thus, to the extent that the Court might permit it to go forward despite its failure to identify any specific conduct that allegedly violated Rule 11, it can only be

considered to seek retraction of something filed before August 15, 2012, the date it was first served.  This is particularly significant here where all of the evidence presented by LewisTein at the evidentiary hearing was directed to proving that the so-called "fictitious loans," and the "fictitious loan system," Second Amended Complaint ("SAC"), p. 14,   ¶41. j & k, which appeared for the first time in the SAC, were not fictitious.  Neither Lewis nor Tein took the stand to deny that their and their firm's fees were "unsubstantiated, fictitious, exorbitant, excessive and fabricated," Amended Complaint ("AC") pp. 13-14, ¶43, or to deny that they were aware of the defalcations being perpetrated by Plaintiff's former chairman, Billy Cypress and failed to disclose this to innocent persons within the Tribe due to their dual representation of Cypress and the Tribe, AC, p. 11, ¶¶37-38, p. 12, ¶40.  Thus, LewisTein's attack at the Rule 11 hearing was entirely directed to an alleged defect in the Plaintiff's pleadings *that did not exist at the time of the service of the motion*.[7]  *See Robinson, supra,* at 1350 (denying Rule 11 that included pages of descriptions of alleged defects in papers *that were not in the initial motion served*).  The "fictitious loan system" which was the *only* issue as to which LewisTein presented any evidence at the hearing on its motion was not even *mentioned* in the Complaint or the AC.  Rather, it was alleged *for the first time* in the SAC.  The SAC was not filed until two and a half months after the service of LewisTein's Rule 11 motion, and, indeed, after that motion had been fully briefed.  As in *Robinson*, LewisTein *never complied with the safe harbor provision with regard to* (nor did it file a new Rule 11 Motion directed at) *the SAC*.  Thus, the Court must not consider any allegations of the SAC, nor any evidence relating to the so-called "fictitious loan system" in deciding whether sanctions should be allowed in respect of the LewisTein motion.

### 3. LewisTein's Motion Is Not Saved by the Order [DE 298] Granting its Motion [DE 286] to "Supplement the Record"

Everything contained in LewisTein's motion [DE 286] to "supplement the record" with respect to its previously served and filed Rule 11 motion relates solely to the so-called "fictitious loan system" that appeared only in the SAC.  The testimony of the former auditor that there were

---

[7] This allegation had evidentiary support. *See* 6/24/14 Hrg. Tr. at 96 (Carlos Trueba testifying that, to date, he was aware of no evidence that the subject payments to Tribe members were loans or were repaid); 7/1/14 Draft Hrg. Tr. at 150-53 (Jimmie Bert testifying that he neither received a loan to pay Lewis Tein's legal bills nor received legal bills from Lewis Tein); LTX-8 at p.11 (without Business Council approval loans are limited to $10,000); 6/16/14 Hrg. Tr. at 31 (same).  If not fictitious, the loans were certainly mysterious, as even LewisTein's star witness, Jodi Godenberg, was unable to identify who (if anyone) approved the subject loans, testifying instead that they were approved by "administration," 6/6/14 Hrg. Tr. at 164, tracked by administration, *id.* at 165, and reconciled by "administration." *Id.* at 176.

"booked" loans, the schedule prepared by that auditor showing a listing of loans to Tribe members for the payment of legal fees, the testimony of Jodi Goldenberg that there were bona fide loans, the legal invoices bearing the endorsement of Jimmie Bert, and all of the rest raised for the first time in the motion to supplement the record has no relevance to any of the allegations of the AC or the original Complaint.  It relates only to the later asserted "fictitious loan system."  As explained above, the SAC is not a proper target of the LewisTein motion.

Moreover, to the extent the Court would like to consider the supplementary material added pursuant to the motion to supplement as a new Rule 11 motion, it must bear in mind that the motion to supplement the record was not filed until after the Court entered the order dismissing the case for lack of subject matter jurisdiction.  In the Eleventh Circuit, the filing of a new Rule 11 motion after dismissal of the pleading being attacked, with no opportunity given to the non-moving party to correct any alleged deficiencies identified by the moving party simply is not allowed.  *Robinson, supra*, at 1350, citing *Gwynn,* 532 F.3d at 1309 ("We agree with the Second, Fourth, and Sixth Circuits that the service and filing of a motion for sanctions 'must occur prior to final judgment or judicial rejection of the offending' motion.").

### 4.   The Evidence Does Not Establish Any Violation of Rule 11 in Respect of the Claims Against LewisTein

In order to establish a Rule 11 violation, the moving party must first plead and then establish by the preponderance of the evidence conduct by the non-moving party that violates one of the four subparagraphs of Rule 11(b).  Here, there was no adequate allegation of specific conduct pre-dating the LewisTein motion that would constitute bad faith, failure to allege a claim upon which relief could be granted, or failure sufficiently to investigate the facts before signing the challenged pleading.  There could be no allegation of a violation of the fourth listed item as that item applies only to denials of allegations that would apply only to defendants.  In addition, the evidence presented by LewisTein did not establish any violation at all.

LewisTein provided no evidence of bad faith conduct nor of any deficiency in the legal research done to support the claims alleged.  Indeed, it appears to have conceded that the allegations of the Complaint, AC and SAC if proven would establish claims upon which relief could be granted without extension of existing law.  Obviously acknowledging this point, the evidence presented by LewisTein was restricted to attempting to prove that certain facts alleged

in the SAC[8] were not true.  However, as noted, the question is not whether the allegations were true as alleged, or whether they will be provable at trial.  Rather, the issue the Court has framed through its rulings is whether the facts known at the time the pleading was signed were sufficient to permit a reasonable attorney to infer that the allegations had evidentiary support, or, after discovery, would have evidentiary support.  Fed. R. Civ. P. 11(b)(3).  Here, the evidence showed that at the time the Complaint, AC and SAC were signed, Plaintiff and its counsel had sufficient information to satisfy that test.

Plaintiff knew that its former Chairman had misappropriated millions of dollars of Plaintiff's funds.  The IRS had so concluded.  PX-8A [page marked Document 15-5, ¶5].  The former Chairman had amassed millions of dollars of assets over a period of approximately seven years, including over $4 million worth of real estate, PX-1, 2A, 2B, 3, and thirteen automobiles, PX 4A, 4B, while being paid far less than enough to have been able to afford to do so.  PX-7A-7G.  Coincidentally, the former Chairman was being represented in various matters by LewisTein, and over five years they were paid over $9 million in fees, PX-14A, p. 2, including, outrageously, more than $1.48 million to defend the former Chairman from a DUI charge in the Tribal courts, *id*., p. 3 "Chairman Billy Cypress Accident/Criminal Case," and over $2 million to defend a Tribe member against collection of a $3 million judgment.[9]  *Id*., "Tammie Gwen Billie/Wrongful Death Action."  Coincidentally, Lewis also amassed millions in assets over a five-year period overlapping the period in which the former Chairman amassed his millions.  SAC ¶114.  Coincidentally, those assets included both real estate and automobiles, much like the former Chairman.  *Id*.  Coincidentally, Tein also amassed millions in assets over that same period.  SAC ¶129.

A reasonable lawyer would not dismiss these facts as mere coincidences.  Indeed, as many an investigator will tell you, "There's no such thing as coincidences."[10]  When so many coincidences pile up, they are evidence.  They are smoke, indicating there may be fire.  And, oh, by the way, a secret informant had told counsel for Plaintiff that the former Chairman selected

---

[8] As previously explained, due to LewisTein's failure to comply with the safe harbor provisions of the rule in respect of the SAC, its claims relating to the SAC must fail.

[9] Mr. Roman testified without contradiction that he reviewed the LewisTein bills in comparison with the work alleged done and himself determined that some involved fees that were unreasonable, unsupported, or otherwise seriously objectionable.

[10] E.g.,  Leroy Jethro Gibbs "Rule 39 – There's no such thing as coincidences."

counsel for their willingness to participate in a kickback scheme – they would get lucrative work beyond all reason and the former Chairman would receive cash kickbacks.  PX-9.

Thus, there was plenty of information known to Plaintiff and its counsel before the relevant pleadings were signed from which a reasonable lawyer could draw the inference that LewisTein was "in cahoots" with the former Chairman of Plaintiff to improperly enrich themselves at the expense of Plaintiff.

LewisTein has not admitted this conspiracy.  However, neither Lewis nor Tein took the stand to deny participation in the conspiracy, or even to identify any innocent sources that might exist in respect of the substantial wealth they amassed while representing Plaintiff and working with the former Chairman.[11]  It is also well recognized that conspiracies of the sort alleged always require discovery to fill in the necessary evidence to prove them at trial – discovery such as production of the financial records of the alleged conspirators and those with whom they dealt in order to permit forensic accountants to track the money.  See, *e.g., Mary Ann Pensiero, Inc., v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988) ("Proving conspiracy is usually difficult and often impossible without resort to discovery procedures").  The Plaintiff was diligently pursuing such discovery in this case as justified by the information that it had gathered before the complaints were filed.[12]  That it did not ultimately get that discovery, or even that it might have been unable to prevail at a trial on the merits, would not change the fact that it had sufficient facts in its possession to support the claims made against Lewis Tein when the pleadings were signed.

### 5.  Substantial Penalties Are Not Justified

Sanctions cannot issue against the Plaintiff or its counsel because both sanctions motions were procedurally defective and the Court cannot find on this record that the AC or SACs were objectively frivolous, or if frivolous that there was no adequate investigation.[13]  Further, addressing the appropriate type of sanction now is premature, as LewisTein failed to request any

---

[11] While counsel for LewisTein implied during his cross-examination of Mr. Roman that some of the wealth allegedly amassed by Lewis was from innocent sources, no evidence was presented to back up those implications.

[12] Such discovery was ordered by this Court on May 8, 2013.  [DE 220, 3-4].  However, before any of the documents ordered to be produced were actually delivered, the Court stayed the production of documents pending an appeal of that order, [DE 233], and, when the case was dismissed [DE 282] before the appeal was resolved, the discovery was never obtained.

[13] If the Court were to levy sanctions, the Court could impose sanctions under Rule 11 against the Tribe, the individual Tribal Attorneys and their law firm. The Court may not impose sanctions against the Tribe for a violation of Rule 11(b)(2), requiring that "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(c)(5)(A).

specific sanction in its Rule 11 motion and because, without reviewing facts, like ability to pay, which are not before this Court, the type and extent of penalty cannot be determined.

Rule 11 is clear that any sanction imposed must be limited to meet the purpose of deterrence. *See* Fed. R. Civ. P. 11(c)(4). "[U]nder unusual circumstances, particularly for (b)(1) violations" the court may require payment of part or all of the fees directly resulting from the violation. Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendments. *Id.* Here, because the motions are directed principally at alleged (b)(3) violations, *i.e.*, pleading deficiencies, the exception allowing fees should not be invoked.

Moreover, attorney's fees are inappropriate here for, yet, another reason: The Rule 11 movants never requested attorney's fees as sanctions in their motions. Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendments ("[T]he rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party." (emphasis added)). Accordingly, even if this Court finds that sanctions should be imposed, this Court should not award attorney's fees to the Rule 11 movants

Since the LewisTein motion does not request any particular sanctions, [DE 38-1], there has been no evidence presented supporting any award of monetary sanctions, and, as noted above,[14] the Judges in this District have denied sanctions entirely on far more egregious facts than these, if anything, the Court should impose a nonmonetary sanction in one of the forms outlined in the Advisory Committee Notes.

### H.  Lehtinen's Motion Must Be Denied

#### 1.  Lehtinen's Motion Violates the Requirements of the Rule Including the Separate Motion Requirement and Local Rule 7.1(a)(3)

As was the case with LewisTein's motion, the Lehtinen motion is combined with a second motion, *i.e.*, a motion under Florida Statutes §57.105, and does not contain between the body of the motion and the signature block a certificate of having conferred in good faith as required by Local Rule 7.1(a)(3).  As with the LewisTein motion, both such violations of the rule are sufficient to permit the Court to deny it as procedurally defective.  See Torres Order, copy attached at Exhibit A.

---

[14] *Doria, supra.*

## 2. The Evidence Does Not Establish Any Violation of Rule 11 in Respect of the Claims Against Lehtinen

While Lehtinen makes three discrete challenges to the SAC, he repeatedly argues that he is entitled to relief because the allegations of the SAC contain multiple assertions that he is a liar. The fact of the matter is that the word "lie" appears in the SAC only once, on page 307 of 314 pages, in paragraph 471, while the word "liar" never appears in the pleading. The word lie is not even singularly directed at Lehtinen, but, instead, is buried in a paragraph that merely characterizes conduct of the former Chairman in concert with Lehtinen. The allegation is:

> 471. The MICOSUKEE TRIBE also learned that such representations by Defendant CYPRESS and Defendant LEHTINEN, acting in concert with each other, had been untrue and nothing other than an example of a well-orchestrated scheme by these two defendants to lie, mislead and defraud the MICCOSUKEE TRIBE.

This single allegation comes nowhere near the slanderous diatribe that Lehtinen has so often claimed in these proceedings. In any event, as previously noted, the purpose of a Rule 11 proceeding is not to "clear the name" of a litigant; it "is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Kaplan, supra*, at 1255 (citing *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001)). Thus, no matter how high the regard with which a litigant might be held by the Court or the public, a ruling on a Rule 11 motion leveled by such a litigant must be decided on the same grounds as any other such motion.

The three alleged violations raised in Lehtinen's motion are:

- The Plaintiff's allegation, e.g., SAC ¶463, that Lehtinen misrepresented to Plaintiff the existence of a reserve fund to pay its and its members taxes in the event it were determined that they owed taxes.

- The Plaintiff's allegation, e.g., SAC Count IX, that Lehtinen made unauthorized release of certain Tribal Information to the IRS during his engagement by Plaintiff was and is without evidentiary support;

- The Plaintiff's allegation, e.g., SAC ¶301, that Lehtinen had knowledge of the former Chairman's improper use of Plaintiff's assets was and is without evidentiary support;

All of these claims must fail because the evidence showed that Plaintiff and its counsel had evidence of each of these things at the time the SAC was filed.

### a. There was evidence that Lehtinen misrepresented to Plaintiff the existence of a reserve fund to pay its and its members taxes

At the hearing there was direct testimony by Tribe member Theresa Willie to the effect that Lehtinen repeatedly stated, at meetings of the Tribal General Council, that there was such a reserve account to pay the taxes of the Tribe and its member should ti be determined that they were required to pay taxes.  The evidence also shows that in connection with a state court action, Ms. Willie had discussed her observations of what Lehtinen said at these meetings with Plaintiff and its counsel months before this action was filed and had signed an affidavit to the effect that he had repeatedly said that the so-called NTDR distributions would never be taxable.  PX-37. Moreover, Lehtinen tacitly admits he spoke of the reserve account for payment of taxes when he identifies it as the so-called Reserve B account that at one time held more than $100 million. However, he never unequivocally denies that he gave the impression that the Reserve B funds could be used *only* for taxes in the event they were levied[15], instead making light of the advisability of doing so while defending attempts by the IRS to determine whether the NTDR distributions were taxable.  That suggestion of the inadvisability of clearly stating a fact in order to preserve an argument in some other forum is a tacit admission of Lehtinen's willingness to speak only half-truths to the Tribe and its members when he deemed it "advisable."  In doing so, he forgets that, as the attorney for the Tribe he was a fiduciary and had a duty to disclose material facts of which he was aware.

Lehtinen mistakenly relies on the outrageous argument that the absence of entries in the typed Tribal General Council minutes and the absence of his voice making these statements on any of the meeting recordings that the Plaintiff has been able to locate somehow proves that he never made these statements.  In view of the direct testimony that he did, and the undisputed and indisputable testimony – indeed, Lehtinen's own admissions - that the minutes and recordings were not complete (entries on minutes stating that "microphone inaudible" or "microphone not functioning" and the testimony of Ms. Willie and Pete Osceola, Jr., to the effect that Lehtinen often wandered away from the microphones during these meetings), this argument must be rejected as the red herring that it is.

---

[15] In fact, the balance of the Reserve B account fell from over $100 million to $19 million in the two years preceding Lehtinen's termination as counsel for Plaintiff, and those funds were not used to pay taxes, leaving the Plaintiff and its members facing billions of dollars in tax liabilities.

**b. There was evidence that Lehtinen wrongfully and without authority released certain Tribal information to the IRS**

The evidence shows that Lehtinen was representing the former Chairman as such in connection with an IRS summons, PX 20, and was referred a matter defending the former Chairman individually in respect of an IRS examination of his personal tax returns, PX-29 (notice of examination of former Chairman faxed, *inter alia*, to Lehtinen to handle), while he apparently was representing Plaintiff.  PX-32.  As counsel for the Plaintiff, Lehtinen attended a meeting with IRS representatives where he himself asserted that the information in question could be released only with the authorization of the Tribal General Council.  PX-41, p.2 (January 11, 2006 Letter addressed to Lehtinen in which the author states "You stated that the General Council is the only body authorized to approve the release of tribal records, or permit the testimony of individuals").  No such Tribal General Council resolution was ever revealed.  This same letter mentions the intention of the IRS to drop individual summonses (*e.g.,* the summons served on the former Chairman) in anticipation of other cooperation by the Tribe, including dropping objections to certain third party IRS summonses.  The individual summonses were dropped.  PX-41B.  Around the same time and thereafter, Lehtinen participated in a series of meetings at which the potential impact of such a disclosure to the IRS might be on the Tribe and its members.  PX-30, last page (Calculation made that tax per year for tribe members would approximate $15-16 million per year).   After work cleaning up accounting entries, this information was sent to the IRS solely on the authorization of the former Chairman.  PX-46B. Lehtinen was copied on the letter by which the confidential information was disclosed.  PX-22A. This evidence clearly shows that Lehtinen was deeply involved in the disclosure of the confidential Tribal information without the express approval of the Tribal General Council.  . From these undisputed facts, the Tribe and its counsel could reasonably infer that Lehtinen was acting against the interests of one of his clients (the Tribe) for the benefit of another client (Cypress).  *See Lucas v. Duncan*, 574 F.3d 772, 777 (D.C. Cir. 2009) (unnecessary to differentiate facts and inferences in a complaint, as both are forms of evidence).

Lehtinen's suggestion in argument that there was such a resolution of the Tribal General Council, but that, mysteriously, the relevant portion of the recording of the meeting suffered a microphone malfunction could well be the subject of discovery going forward and testimony at

trial.  However, no such information was in the possession of Plaintiff[16] or its counsel when the pleading was prepared, and could not have been, given the admitted malfunction.

Lehtinen's further suggestion that the attorneys for the Plaintiff should have known that the claims of breach of fiduciary duty asserted were, in fact, nothing but recycled claims of legal malpractice that were barred by the applicable statute of limitations is also of no avail, as the statute of limitations for lawyer malpractice has built-in "discovery" provisions such that the statute itself does not begin to run until the "cause of action is discovered or should have been discovered with the exercise of due diligence" with no statute of repose.  §95.11(4)(a) Fla. Stat. Moreover, the statute of limitations for a cause of action for legal malpractice is subject to being extended where the cause of action has been fraudulently concealed, and, like all affirmative defenses, the defense of the statute of limitations can be waived.  Thus, the availability of that defensive argument to Lehtinen does not defeat the reasonableness of signing the pleading against Lehtinen on this claim.

### c. There was evidence that Lehtinen was aware of the former Chairman's wrongful use of Plaintiff's assets and behaved wrongfully

As for Lehtinen's knowledge of the former Chairman's improper use of accounts owned by Plaintiff, in his work as "lead counsel" on tax issues for the Plaintiff, PX-32, and in the course of defending the IRS summons served on the former Chairman as such in 2005, PX-20, as well as overseeing the IRS audit of the former Chairman, personally, PX-29, Lehtinen simply could not have done the work without becoming familiar with the transactions being investigated by the IRS, which the IRS described as assets "converted" from the Tribe.  PX-8A, *supra*.  If he became aware and was not representing the former Chairman, he clearly had a duty to report what he had learned to his client, the Plaintiff here.  If he was representing both the former Chairman and the Plaintiff here, he was professionally obligated to obtain the written consent of both to his doing so, and clearly did not.  Even if he had obtained the written consent of both at the outset of those representations, upon discovering the information about the former Chairman's defalcations, he had to duty to withdraw as counsel for both, and, possibly, a duty to

---

[16] Where, as here, a new administration discovers the wrongdoing of its predecessors, the knowledge acquired by former officers or other agents while acting adversely to the entity and in their own interest is not imputable to the entity.  *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1338-39 (11th Cir. 1997).  Thus, whether the former Chairman or his alleged co-conspirators were aware of their own misconduct, the entity itself was not.

go to the law enforcement authorities.  He did none of those things.  Thus, the facts known to the Plaintiff at the time were sufficient to support the signing and filing of the SAC as against Lehtinen.

### 3.   Substantial Penalties Are Not Justified

*See* Section I.F.5., *supra*. Additionally, Lehtinen has already obtained the specific relief he sought; dismissal of the Complaint.   Other than dismissal, Lehtinen has nonspecifically sought that Plaintiff and its counsel be sanctioned.  Because Lehtinen has obtained his desired sanction, no additional action is needed by the Court, if the Court were to impose a sanction. Again, this is not a case where sanctions should be imposed at all.  Moreover, there is no basis upon which the Court could find that the purpose of the Rule – deterrence of future conduct of the sort found sanctionable – could not be remedied by nonmonetary sanctions.   Under no circumstances should compensatory sanctions be awarded to Lehtinen.

### I.   The Record Does Not Support a Sua Sponte Award

The issue of a sua sponte Rule 11 award apparently comes up because LewisTein has raised the issue in its filings and arguments in open court.  *E.g., Lewis Tein's Supplemental Bench Memorandum on Rule 11 Sanctions* [DE 380].  Because LewisTein has invited the Court to consider sua sponte sanctions, by definition the award of such sanctions would not be sua sponte.  *Peer v. Lewis*, 606 F.3d 1306, 1313 (11th Cir. 2010).   Thus, the Court should not consider granting that relief.

Moreover, as previously explained, because a court's decision to invoke Rule 11 sua sponte does not implicate the safe harbor provision of the rule, the court initiating proceedings under that power is required to issue a show cause order, specifically identifying the conduct questioned by the court, providing the party and attorney confronted with the accusation a meaningful day in Court with an opportunity to explain why sanctions should not be entered. Fed. R. Civ. P. 11(c)(3).  *Kaplan, supra*, at 1255.  Additionally, in awarding sanctions pursuant to such an order to show cause, the Court is required to find misconduct "akin to contempt," sometimes characterized as "subjective bad faith."  *Kaplan*, *id*.; *In re Pennie & Edmonds*, LLP, 323 F.3d 86, 87 (2d Cir. 2003).

Here, there has been no order to show cause issued, no specific description of conduct that the Court deems sanctionable, and, hence, no opportunity for the Plaintiff and its counsel to be heard to explain themselves.   Furthermore, the evidence before the Court does not even

support an award on an objective standard, much less a finding of "subjective bad faith" which is "akin to contempt" on the part of Plaintiff or any of its counsel.

As explained above, even if such sanctions were entered, the Rule does not permit a compensatory award to either moving party where the award is not pursuant to a motion. Thus, only a nonmonetary award or a monetary award to be paid into the Court would be appropriate. As explained above, no sanctions are justified on the facts of this case.

## II.    SECTION 57.105, FLA. STAT., SANCTIONS MUST BE DENIED

Besides all of the reasons that make Rule 11 sanctions inappropriate, the Court cannot issue sanctions under §57.105, Fla. Stat., because the moving parties are not "prevailing part[ies]." *See* §57.105(1), Fla. Stat.  The Eleventh Circuit has stated that a party is not a prevailing party merely because a court grants the party's motion to dismiss for lack of subject matter jurisdiction. *Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199, 1205-06 (11th Cir. 2012); *Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida*, 827 F. 2d 1454, 1458 (11th Cir. 1987); *see also Sanchez v. Swire Pac. Holdings, Inc.*, 73 Fed. R. Serv. 3d 1757 (S.D. Fla. 2009).  Florida state courts likewise decline to levy sanctions under §57.105 without a determination on the merits. *See Steinhardt v. E. Shores White House Ass'n, Inc.*, 413 So. 2d 785, 786 (Fla. 3d DCA 1982) ("The fundamental rule in Florida is that attorney's fees are in derogation of the common law and will be granted only pursuant to contract or statute . . . [and] will be strictly construed . . . . In order that there be a prevailing party and a losing party, there must necessarily be a disposition of the case or controversy as by judgment or order. There can be no finding that there is a complete absence of a justiciable issue of either law or fact unless the merits of the controversy have been passed upon on the pleadings or proof, or both; there is no such finding in the record—express or implicit."); *Simmons v. Schimmel*, 476 So. 2d 1342, 1344-46 (Fla. 3d DCA 1985) (reversing an award of attorney's fees under Section 57.105 "since there [wa]s no basis to conclude that the defendant-appellee was the prevailing party where the plaintiff's voluntary dismissal was without prejudice to reinstituting the suit and was unrelated to the merits of the case . . . . Thus, the plain and ordinary meaning of 'prevailing party' requires that there be some end or finality to the litigation on the merits.").

## III.   28 U.S.C. §1927 SANCTIONS SHOULD BE DENIED

Fundamental principles of due process make clear that a party cannot obtain relief on a ground not alleged.  In this case, in its Bench Memorandum on Legal Standards for Imposing

Sanctions [DE 323], LewisTein outlines the considerations for granting relief under 28 U.S.C. 1927.  However, no motion was ever filed seeking sanctions under 28 U.S.C. §1927.  As appears, *infra*, 28 U.S.C. §1927 sanctions involve substantially different considerations and standards than either Rule 11 or §57.105.  Since 28 USC §1927 sanctions were never sought in a motion filed by LewisTein or Lehtinen, it would be a denial of due process for them to be considered at this time.

The predicate for imposing sanctions under 28 U.S.C. 1927 simply do not exist in this case as there is no evidence that the Tribal attorneys engaged in the required misconduct in the course of this litigation.  *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225-26 (11th Cir. 2003) ("To justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable *and* vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. . . . 'Bad faith' is the touchstone.  Section 1927 is not about mere negligence.").  Moreover, Rule 11 and §1927 "are distinct sources of authority . . . aimed at addressing different kinds of misconduct, are different in scope, and are governed by quite different legal standards." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007).   While §1927 addresses attorney misconduct, Rule 11 primarily addresses pleadings.  *Id*.  The briefing and hearings on the present motions were directed at Rule 11, not §1927, and accordingly, the Court should not issue sanctions under §1927.

## IV.  SANCTIONS UNDER THE COURT'S INHERENT POWER SHOULD BE DENIED

As stated with respect to the claim for sanctions under 28 U.S.C. §1927, fundamental principles of due process make clear that a party cannot obtain relief on a ground not alleged.  In this case, in its Bench Memorandum On Legal Standards for Imposing Sanctions [DE 323], LewisTein outlines the considerations for granting relief under the Court's inherent power.  However, no motion was ever filed by either LewisTein or Lehtinen seeking sanctions under the Court's inherent power.  Again, there has been no bad faith, the key to unlocking the Court's inherent authority to sanction.  *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).  Sanctions awarded under the Court's inherent power involve substantially different standards that either Rule 11 or §57.105.  *See*, *Amlong & Amlong, P.A., supra*, at 1241.

The Eleventh Circuit has said:

The inherent power "is both broader and narrower than other means of imposing sanctions." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991). While the other sanction mechanisms only reach certain individuals or conduct, "the inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." *Id.* Indeed, the inherent power of a court "'can be invoked even if procedural rules exist which sanction the same conduct,' for these rules are not substitutes for the inherent power." *Glatter v. Mroz* (*In re Mroz*), 65 F.3d 1567, 1575 (11th Cir.1995) (citation omitted). Concomitantly, *the inherent power's bad faith standard narrows the range of conduct that can satisfy this higher threshold for sanctions. See Chambers*, 501 U.S. at 47, 111 S.Ct. at 2134. (*emphasis added*).

*Peer v. Lewis, supra*, at 1314-15. Thus, in order to impose sanctions pursuant to its inherent power the Court would need to have evidence before it from which it could find bad faith behavior "akin to contempt." That evidence was never presented, and those arguments never made. Therefore, the Court should decline to exercise its inherent authority here.

## CONCLUSION

The undersigned, as recent arrivals to this case, can see that the litigation has been emotionally charged from the beginning. Its allegations include claims that impugn the integrity of members of the Florida Bar who were at one time with the Office of the United States Attorney for this District. Two had previously held the office of United States Attorney in this District and one had worked there as a trial attorney. It is easy to see how a judge who must work regularly with the local United States Attorney, and who worked in the office of the local United States Attorney, could be disturbed by such allegations, and be sympathetic with the reactions of outrage and indignation coming from those Defendants. However, sitting as an arbiter over motions for sanctions such as those presented here, the Court must look solely to the evidence presented and the governing law in deciding what to do, keeping in mind that the result of the inquiry could potentially be far more damaging to those on the other side than judicially privileged allegations against public figures could ever be.

As explained herein, the facts presented here, considered under the applicable law do not support the award of sanctions against the Plaintiff or its counsel. The record shows that the Rule 11 motions were procedurally deficient. There was no challenge to the legal sufficiency of the pleadings in either of the Rule 11 motions. The evidence presented shows that Plaintiff and its counsel had sufficient evidence at the time of the signing of the pleadings to allow a reasonable attorney to believe that the requirements of Rule 11 as to pre-filing investigation had

been met.  Moreover, the Court cannot make a finding that the allegations were "objectively frivolous" without examining all relevant evidence, including evidence discovered after the filing of the complaints at issue.  The conditions of §57.105, Fla. Stat. cannot be satisfied as there has been no determination of the prevailing party by resolution of the merits of the case.  There was no evidence of unreasonable and vexatious conduct justifying a finding of bad faith, so imposition of sanctions under 29 U.S.C. §1927 or the Court's inherent power would be inappropriate.

To the extent the Court found the behavior of Plaintiff or its counsel to be objectionable in any way, any further such behavior can be deterred by an admonishment or other non-monetary sanction.  The relief requested should be denied.

WHEREFORE, Miccosukee Tribe of Indians of Florida and its attorneys Bernardo Roman, III, Esquire, Yinet Pino, Esquire, and Yesenia Lara, Esquire, respectfully request that the Court deny the sanctions motions now before it.

Respectfully submitted

William K. Hill
FBN 747180
whill@gunster.com
Jonathan H Kaskel
FBN 52718
jkaskel@gunster.com

GUNSTER
600 Brickell Avenue, Suite 3500
Miami, Florida  33131
Telephone:  305-376-6000
Facsimile:  305-376-6010

/s/Edward A. Marod, Esq.
Edward A. Marod
FBN 238961
emarod@gunster.com

GUNSTER
777 S. Flagler Drive, Suite 500E
West Palm Beach, Florida 33401
Telephone: (561) 655-1980
Facsimile: (561) 671-2519

*Counsel to Miccosukee Tribe of Indians of Florida,*
*Bernardo Roman, III, Yinet Pino & Yesenia Lara*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2014, I electronically filed the foregoing with the Clerk of the Court using CM/ECF and that the foregoing has been served on the following Service List through EM/ECF or other means.

By: <u>/s/ Edward A. Marod</u>

## SERVICE LIST

| | |
|---|---|
| **Paul A. Calli, Esquire**<br>**Charles Short, Esquire**<br>**Yolanda Strader, Esquire**<br>Carlton Fields, P.A.<br>100 S.E. 2nd Street, Suite 4000<br>Miami, FL 33131<br>Telephone: (305) 530-0050<br>Facsimile: (305) 530-0055<br>pcalli@carltonfields.com<br>cshort@carltonfields.com<br>ystrader@carltonfields.com<br>*Counsel to Defendants Guy Lewis, Esquire,*<br>*Michael Tein, Esquire, and Lewis Tein, PL* | **Claudio Riedi, Esquire**<br>Lehtinen Schultz Riedi, etc.<br>Sabadell Financial Center<br>1111 Brickell Avenue, Suite 2200<br>Miami, FL 33131<br>Phone: 305.760.8544<br>Fax: 305.356.5720<br>criedi@lsrcf.com<br>*Counsel to Defendant Dexter W. Lehtinen,*<br>*Esquire* |
| **Yinet Pino, Esquire**<br>**Yesenia Laura, Esquire**<br>**Bernardo Roman, III, Esquire**<br>1250 SW 27th Avenue, Suite 506<br>Miami, Florida 33135<br>Telephone: (305) 643-7993<br>Facsimile: (305) 643-7995<br>yinet@bromanlaw.com<br>yesenia@bromanlaw.com<br>bromanlaw@bellsouth.net<br>*Counsel to Miccosukee Tribe of Indians of*<br>*Florida* | **Larry Duffy, Esquire**<br>Lawrence Duffy, P.A.<br>11380 Prosperity Farms Road, Suite 110A<br>Palm Beach Gardens, FL 33410<br>(561) 439-0630<br>lwduffy@bellsouth.net<br>*Counsel to Jose I. Marrero* |
| **Scott Alan Lazar, Esquire**<br>Koltun & Lazar<br>7901 SW 67th Ave., Suite 100<br>Miami, FL 33143<br>Telephone: (305)-595-6791<br>Facsimile: (305)-595-5400<br>scott@koltunlazar.com<br>*Counsel to Defendant Miguel Hernandez* | **Manuel A. Avila, Esquire**<br>Manuel A. Avila, Esq. & Associates, P.A.<br>11120 N. Kendall Drive, Suite 200<br>Miami, Florida 33176<br>Telephone: (305) 249-1111<br>Facsimile: (305) 647-0686<br>mavila@avilalegal.com<br>*Counsel to Defendant Julio Martinez* |
| **Robert O. Saunooke, Esq.**<br>Saunooke Law Firm, P.A<br>18620 SW 39th Court<br>Miramar, FL 33029<br>Tel: (561) 302-5297<br>Fax: (954) 499-0598<br>ndnlawyer@hotmail.com<br>*Counsel to Defendant Billy Cypress* | **Steven M. Goldsmith, Esq.**<br>Steven M. Goldsmith, P.A.<br>5355 Town Center Road, Suite 801<br>Boca Raton, FL 33486<br>Tel: (561) 391-4900<br>Fax: (561) 391-6973<br>steve.goldsmith@sgoldsmithlaw.com<br>*Co-Counsel to Defendant Billy Cypress* |

## EXHIBIT A

**ORDER denying** 84 Defendant's Motion for Rule 11 Sanctions, without prejudice to being renewed at a later date in compliance with the Court's rules. Upon review of the motion, which is before the Court upon the Court's general Order of Reference, no immediate response is necessary as the motion is facially defective. The motion contains no certification that the Rule 11 safe harbor provision was satisfied, nor does it contain certification under S.D. Fla. Local R. 7.1.A.3 that a pre-filing conference was ever held. Defendants should fully comply with their own obligations under the Court's rules before accusing anyone else of violating them. Accordingly, the motion is denied on these procedural grounds. Moreover, as the issues raised are intertwined with case dispositive arguments that will surely be raised on summary judgment at the appropriate time, as evidenced by the fact that the Court was presented with extrinsic evidence to support the arguments raised therein, the Court will not adjudicate the issue through a motion for sanctions prior to a case dispositive determination. If Defendant is successful on its case dispositive argument, it can then renew this motion for Rule 11 sanctions if it can show that counsel knew or should have known that such a result was inevitable and that pursuing the claim violated Rule 11. Such a renewed motion shall also be filed only after complying with the movant's obligations under Rule 11 and Local Rule 7.1.A.3. For now, this entire motion is also premature. Therefore, the motion is denied without prejudice on both procedural and substantive grounds.

Docket Order Signed by Magistrate Judge Edwin G. Torres on 9/3/2009. (EGT) (Entered: 09/03/2009)