# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-22439-Civ-COOKE/MCALILEY

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA, a sovereign nation and
Federally recognized Indian tribe,

       Plaintiff,

vs.

BILLY CYPRESS, DEXTER WAYNE LEHTINEN,
ESQUIRE, MORGAN STANLEY SMITH BARNEY,
JULIO MARTINEZ, MIGUEL HERNANDEZ,
GUY LEWIS, ESQUIRE, MICHAEL TEIN,
ESQUIRE, and LEWIS TEIN, PL,

       Defendants.

_____/

### OMNIBUS ORDER GRANTING
### DEFENDANTS' MOTIONS FOR SANCTIONS

      Quoting Mahatma Gandhi, I previously warned, "an eye for an eye will only make the whole world blind." *See* Omnibus Order Granting Defs.' Mots. Dismiss at 22. The Miccosukee Tribe of Indians of Florida's internal feud blinded its counsel, Bernardo Roman III, Esquire and Roman Law, from adhering to the ethical tenets of our profession while pursuing legal claims against the Miccosukee Tribe of Indians of Florida's former administration, and particularly against Defendants Guy Lewis, Esquire, Michael Tein, Esquire, Lewis Tein, PL (collectively, "Defendants Lewis Tein") and Dexter Wayne Lehtinen, Esquire ("Defendant Lehtinen"). For the reasons enunciated in this Order, Defendants' Guy Lewis, Esquire, Michael Tein, Esquire, Lewis Tein, PL and Dexter Wayne Lehtinen Motions for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure (ECF Nos. 38 & 273) are granted, and Bernardo Roman III, Esquire, Roman Law, and the Miccosukee Tribe of Indians of Florida are hereby sanctioned.

## BACKGROUND

### A.    Relevant Procedural History

On July 1, 2012, Miccosukee Tribe of Indians of Florida ("Plaintiff," the "Tribe," or "Miccosukee") filed a federal action against Defendants Billy Cypress ("Cypress" or "former Chairman Cypress"), Dexter Wayne Lehtinen, Esquire ("Defendant Lehtinen"), Morgan Stanley Smith Barney, Julio Martinez, Miguel Hernandez, Guy Lewis, Esquire ("Defendant Lewis"), Michael Tein, Esquire ("Defendant Tein"), and Lewis Tein, PL ("Lewis Tein," collectively with Defendant Lewis and Defendant Tein hereinafter referred to as "Defendants Lewis and Tein"), alleging federal racketeering, conspiracy to commit racketeering, fraud, aiding and abetting fraud, embezzlement, civil theft, and breach of fiduciary duty. *See* Complaint, ECF No. 1. Swiftly, before any of the defendants filed a responsive pleading or motion, Plaintiff amended its Complaint on July 30, 2012, filing its first Amended Complaint (ECF No. 13), which asserted additional counts for violation of the Florida Racketeer Influenced and Corruption Organization Act, Fla. Stat. § 895.01, *et seq.* and fraudulent misrepresentation, and sought the additional relief of declaratory relief, injunctive relief, a receivership, an asset freeze, sworn accounting, disgorgement, and repatriation of funds.

In its Amended Complaint, Plaintiff again brought claims of federal racketeering, conspiracy to commit racketeering, fraud, aiding and abetting fraud, embezzlement, civil theft, and breach of fiduciary duty against the defendants for allegedly "conspir[ing] with each other and specifically with Defendant CYPRESS to aid, abet, create, advance and perpetrate an enormous fraud and theft scheme through which Defendant CYPRESS and the other Defendants either participated, facilitated and/or assisted in stealing, diverting, converting, using, and misappropriating millions of dollars that belonged to the MICCOSUKEE TRIBE and the MICCOSUKEE PEOPLE and which were in the care, possession, control, and supervision of the Defendants." Am. Compl. ¶ 1.

After determining that "Plaintiff insufficiently ple[d] the predicate facts to establish the basis for RICO and Florida RICO claims against the Lewis Tein Defendants" and against Defendant Julio Martinez, Plaintiff was granted leave to file an amended complaint to establish the factual basis for the RICO and Florida RICO claims against Defendant Julio Martinez and the Lewis Tein Defendants. *See* Order Granting in Part & Denying in Part

2

Defs.' Mot. Require Pl. File RICO Case Stmnt, ECF No. 55. Plaintiff did so on November 9, 2012. *See* Second Am. Compl., ECF No. 75.

Prior to Plaintiff filing the Second Amended Complaint, on September 24, 2012, Defendants Lewis and Tein filed their Notice of Filing Motion for Sanctions, which attached their Motion for Sanctions and Memorandum of Law in Support, seeking sanctions against Plaintiff and its counsel pursuant to Rule 11 and Section 57.105 of the Florida Statutes. The stated basis for seeking sanctions is the lack of evidence to support the "central allegations of the claims asserted" in the Amended Complaint, the crux of which is that Defendants Lewis and Tein "did not disclose information to Plaintiff regarding its now past chairman's activities," and therefore are subject to "claims for RICO and related conspiracy, fraud, aiding and abetting fraud, and breach of fiduciary duty." Defs.' Mot. Sanctions at 2, ECF No. 38-1. Defendants Lewis and Tein view this lawsuit as "nothing more than political retribution against counsel engaged and retained by the Tribe while under control of different officials no longer in these positions, and filed at the behest of their successors as 'payback' for the Lewis Tein Defendants' perceived allegiance to the Tribe's former leadership." *Id.*

On or about September 3, 2014, Defendant Lehtinen filed his Motion for Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and Incorporated Memorandum of Law (ECF No. 273, SEALED). He argues that sanctions are warranted against Plaintiff and its counsel because the three major themes of allegations against Defendant Lehtinen – specifically: (1) that he knowingly failed to report former Chairman Cypress' embezzlement of Tribe funds, (2) that he breached his fiduciary duties to the Tribe by complying with an IRS summons, and (3) that he misrepresented to Tribe members that a reserve fund responsible for paying potential federal tax liabilities exists – "are wholly false or unsupported, and the claims are therefore completely frivolous." Def.'s Mot. Sanctions at 2.

Without ruling on the pending motions for sanctions, and explicitly denying as moot only those motions concerning the substantive claims brought, I dismissed the Second Amended Complaint based upon lack of subject matter jurisdiction on September 30, 2013. *See* Omnibus Order Granting Defs.' Mots. Dismiss, ECF No. 282. Thereafter, on November 22, 2013, Defendants Lewis and Tein moved to supplement the record on Lewis Tein's Rule

3

11 Motion for Sanctions (ECF No. 286), which was granted on May 12, 2014, *see* Order, ECF No. 298. The Tribe's litigation against Defendants is numerous – this action being only one of a handful. Significantly, following the dismissal of this action on jurisdictional grounds, the Tribe filed a substantially identical complaint in a state court action demonstrating that Plaintiff is not relenting with its legal crusade.

**B.    Second Amended Complaint**

The Second Amended Complaint remained the operative complaint until its dismissal on September 30, 2013, much to the ire of the Defendants. As with the Amended Complaint, Plaintiff maintained its claims of federal racketeering, conspiracy to commit racketeering, fraud, aiding and abetting fraud, embezzlement, civil theft, fraudulent misrepresentation, and breach of fiduciary duty against the defendants for allegedly "conspir[ing] with each other and specifically with Defendant CYPRESS to aid, abet, create, advance and perpetrate a complex scheme through which Defendant CYPRESS and the other Defendants either participated, facilitated and/or assisted in stealing, diverting, converting, using, misappropriating, and laundering millions of dollars that belonged to the MICCOSUKEE TRIBE and which were in the care, possession, control, and supervision of the Defendants."  Second Am. Compl. ¶ 2.

To buttress these claims, presumably in an attempt to comply with the Order Granting in Part and Denying in Part Defendants' Motion to Require Plaintiff to File a RICO Case Statement, Plaintiff enhanced its factual averments to include more detailed allegations against Defendants Lewis and Tein and Defendant Lehtinen. Following is a snippet of the more poignant allegations underlying Plaintiff's major themes of liability:

- These Defendants associated with each other over the course of five years for the common purpose of money laundering, mail fraud, and engaging in monetary transactions in criminally derived property from the MICCOSUKEE TRIBE, in order to obtain large sums of money and additional benefits, including but not limited to continued employment and other substantial financial benefits. Second Am. Compl. ¶ 23.

- Defendant CYPRESS, Defendant LEHTINEN, Defendant LEWIS, and Defendant TEIN designed this dual representation scheme in order to use the legal rights and privileges of the MICCOSUKEE TRIBE to protect Defendant CYPRESS in his personal legal matters, to charge the legal fees and expenses of Defendant CYPRESS to the MICCOSUKEE TRIBE, and in the particular case of Defendant LEWIS and

4

Defendant TEIN, to be able to kick back some of their inflated, excessive and fraudulently created legal fees to Defendant CYPRESS. Second Am. Compl. ¶ 28(a).

• By crafting this dual representation, Defendant LEWIS, Defendant TEIN and Defendant CYPRESS created a money laundering/kickback scheme whereby Defendants LEWIS and TEIN would charge exorbitant fees for fictitious, unnecessary, inflated, substandard and exaggerated legal work to funnel a part thereof to Defendant CYPRESS as well as aid Defendant CYPRESS in concealing the withdrawal of millions of dollars belonging to the MICCOSUKEE TRIBE without the knowledge or consent of the MICCOSUKEE TRIBE. Second Am. Compl. ¶ 29.

• In order to legitimize this money laundering/kickback scheme, Defendants LEWIS and TEIN used LEWIS TEIN, P.L., a professional association, created on March 29, 2005, just days before commencing their representation of the MICCOSUKEE TRIBE, for the main purpose of advancing and perfecting the plundering of the MICCOSUKEE TRIBE. Second Am. Compl. ¶ 30.

• Defendant CYPRESS hired Defendant LEWIS, Defendant TEIN, and Defendant LEWIS TEIN, P.L. arbitrarily and without the express knowledge of the governing body of the Miccosukee Government, at a rate that was three times higher than the rate of attorneys with more experience, prestige and expertise in the field for work that was substantially of less value and less professional demand. Second Am. Compl. ¶ 40.

• Unbeknownst to the governing body of the MICCOSUKEE TRIBE, at the time of their hiring in 2005, Defendant CYPRESS, Defendant MARTINEZ, Defendant HERNANDEZ, Defendant LEWIS, Defendant TEIN, and Defendant LEWIS TEIN, P.L. designed, agreed, and implemented a secret scheme for their mutual benefit and to the detriment of the MICCOSUKEE TRIBE. This secret scheme was based on several components.

   o a.    The first component of this secret scheme created in April of 2005, involved Defendant CYPRESS's failure to pay the legal fees for his representation.
   o b.    In exchange, Defendant CYPRESS assigned to Defendant LEWIS, Defendant TEIN, and Defendant LEWIS TEIN, P.L. legal work that was arbitrarily created, fictitious and unnecessary, or sometimes combined with some limited legitimate legal work, under the guise that the work was for "a tribal purpose."
   o c.    In return, Defendant LEWIS, Defendant TEIN and Defendant LEWIS TEIN, P.L. charged the MICCOSUKEE TRIBE unreasonable and excessive legal fees for work that they knew had been created, designed and arbitrarily approved by Defendant CYPRESS.
   o d.    The second component of this secret scheme created in April of 2005, by Defendant CYPRESS, Defendant MARTINEZ, Defendant

HERNANDEZ, Defendant LEWIS, Defendant TEIN, and Defendant LEWIS TEIN, P.L., was a plan under which Defendant CYPRESS would hand-pick Tribal Members who needed legal representation.

o    e.    Defendant CYPRESS would then assign the Tribal Members' legal representation to Defendant LEWIS, Defendant TEIN, and LEWIS TEIN, P.L.

o    f.    Defendant CYPRESS would represent to the Tribal Members that the legal representation would be paid for through "loans" provided by the MICCOSUKEE TRIBE to be paid at a later date by the Tribal Members.

. . .

o    h.    Defendant CYPRESS, Defendant MARTINEZ, Defendant HERNANDEZ, Defendant LEWIS, Defendant TEIN, and Defendant LEWIS TEIN, P.L. knew that these "loans" charged against the MICCOSUKEE TRIBE were not authorized by the MICCOSUKEE TRIBE and against the policies and procedures established by the MICCOSUKEE TRIBE, and that most of the named recipients of these "loans" were not aware or had not agreed to the amounts reflected on the invoices submitted by Defendants LEWIS and TEIN and arbitrarily approved by Defendant CYPRESS."

o    i.    The "loans" described above were never intended to be paid back to the MICCOSUKEE TRIBE.

. . .

o    l. The third component of this secret scheme created in April of 2005, by Defendant CYPRESS, Defendant MARTINEZ, Defendant HERNANDEZ, Defendant LEWIS, Defendant TEIN, and Defendant LEWIS TEIN, P.L. was a "kickback plan" under which Defendant LEWIS, Defendant TEIN, and Defendant LEWIS TEIN, P.L. would return some of their unreasonable and excessive legal fees, derived from the work arbitrarily assigned by Defendant CYPRESS, back to Defendant CYPRESS so he could support his gambling habit, invest in real estate, purchase luxury vehicles, and make some payments on his personal expenses, including a small fraction of the millions of dollars for personal expenses that he had charged on several charge cards issued by the MICCOSUKEE TRIBE . . . .

• Upon information and belief, the following is a list of dates of General Council meetings attended by Defendant LEHTINEN where he presented a legal report and was present during the presentation of the financial report, and failed to disclose the information regarding the depletion by Defendant CYPRESS and MARTINEZ of the funds belonging to the MICCOSUKEE TRIBE. Second Am. Compl. ¶ 305.

• Defendant LEHTINEN, through a pattern of criminal activity, involving fraud, maintained control of the affairs of the Enterprise described above resulting in a loss

of millions of dollars to the MICCOSUKEE TRIBE. These actions by Defendant LEHTINEN, are in direct violation of § 772.103(2) Fla. Stat.

**C.      Findings of Fact Ascertained from Rule 11 Motion Hearing**

Based upon the evidence adduced at the Rule 11 Motion Hearing, (ECF Nos. 382-385, 387-389, 392), it appears that rather than conducting an objective investigation to ascertain whether the Tribe had valid claims against the defendants, Roman initiated the investigation with a conclusion in mind and searched for facts to accommodate his presupposed conclusion. Therefore, Roman's pre-suit investigation was inadequate. Roman simply disregarded and ignored the findings that did not align with his theory of liability.

It would be a mammoth undertaking to recite here the evidence elicited at the multi-day Rule 11 Motion Hearing. Suffice it to say that there was no evidence, or patently frivolous evidence, to support the factual contentions set forth above, which form the basis of Plaintiff's claims against Defendants Lewis Tein and Defendant Lehtinen.

First, there was no evidence of a "loan scheme." While the proper procedures according to the Tribe's policies and procedures may not have been adhered to, there is no doubt that the loan to Tammy Gwen Billie, Jimmie and Louise Bert for legal fees in the *Bermudez* matter were valid because over the course of several years and continuing until today, the Berts have been repaying on the loans. *See* Rule 11 Hr'g Tr. 115-122, June 10, 2014, ECF No. 384. Roman knew or should have known this because (1) relevant documents were found in his office, and (2) he had Jodie Goldenberg, an accountant in the finance department for the Tribe for over 21 years, with whom to consult. Ms. Goldenberg testified that she spoke to Roman about the loans and their validity, but he insisted they were "not approved loans." *Id.* at 123; Rule 11 Hr'g Tr. 180-184, June 17, 2014, ECF No. 389. Moreover, Roman failed to interview others who possessed pertinent information about the loans, including the Tribe's outside auditor who reported the loans to tribal members and the Tribe's former general counsel.

Secondly, Roman had no evidence of a "kickback scheme" involving Defendants Lewis Tein and former Chairman Cypress. Roman testified explicitly that he cannot identify "a single transaction of Lewis and Tein giving money to [former Chairman Cypress]."

> "Q.      Okay. So where is your evidence that any of the monies Lewis Tein earned and was paid for its representation of the Tribe or individual Tribe members was given to Billy Cypress?

> **A.**    **I have never said that all of the money --**
>
> Q.    Any, any.
>
> **A.**    **Can I answer your question?**
>
> Q.    $1, $1.
>
> . . .
>
> Q.    Over eight hours of testimony, you haven't pointed to a single transaction of Lewis and Tein giving money to the chairman, is that right?
>
> *A.*    *That is correct.*
>
> Q.    And you can't point to a single dollar from Lewis Tein going to the chairman, can you?
>
> *A.*    *No, I do not.*

Rule 11 Hr'g Tr. 180-184, June 17, 2014, ECF No. 389 (emphasis added).

According to Roman, three grounds led him to the conclusion that Defendants Lewis Tein were corroborating in a kickback scheme with Billy Cypress: first, the bills for Defendants Lewis Tein's legal services were unreasonably high; second, Michael Diaz told Roman in an off-the-record, haphazard conversation of the existence of a kickback scheme he personally had with Cypress; and third, an unproduced memorandum authored by Roman from a conversation with S1, who, it was later revealed, is a former accounting employee, Jose Tercilla. *See* Rule 11 Hr'g Tr. 217, June 17, 2014. Given Roman's admission of the evidence he lacked, his reliance on these three sources is mystifying, at best, particularly when considered with their surrounding circumstances.

Admittedly, Roman, in his sole discretion, determined that Defendants Lewis Tein's invoices were unreasonably high; however, Roman only deemed matters in which Defendants Lewis Tein billed the Tribe less than $10,000 as reasonable, notwithstanding the nature and complexity of the matter. *See* Rule 11 Hr'g Tr. 60-105, June 17, 2014. This determination was made without any knowledge or regard as to Defendants Lewis Teins' extensive experience in the various legal subject matters on which they provided counsel to the Tribe. *See* Rule 11 Hr'g Tr. 19-34, July 1, 2014, ECF No. 397-1 (providing testimony that Roman was not aware of Defendants Lewis Tein experience in the areas of environmental law, tax law, grand jury matters, and criminal matters, amongst others).

Moreover, Roman could not, or did not, cite one instance where Defendants Lewis Tein's billing actually was fake or fraudulent.

Additionally, Roman disregarded the fact that other lawyers, including himself, had invoices for similar amounts that he did not deem "unreasonable." Roman testified that he charges the Tribe $300,000 monthly, or $3 million a year, for his services. *See* Rule 11 Hr'g Tr. 235-236, June 17, 2014. Without weighing in on the "reasonableness" of this expenditure for the Tribe, suffice it to say that Roman's discriminate selection regarding Defendants Lewis Tein's bill is the unreasonable issue here.

While Roman conversed with Michael Diaz, original counsel to Tammie Gwen Billie in the *Bermudez* matter, who informed Roman of the "kickback scheme" involving former Chairman Cypress and himself, *see* Rule 11 Hr'g Tr. 214, June 17, 2014, Roman failed to further investigate the scheme, and decided not to report Mr. Diaz or former Chairman Cypress to federal authorities, or otherwise pursue legally and ethically the illegalities and professional violations to which they admitted. *Id.* 214-216.

Roman relies upon a conversation he had with defendant Miguel Hernandez ("Hernandez") as support for his allegation that Defendants Lewis Tein and former Chairman Cypress were participants in a kickback scheme. Roman testified that Hernandez suspected Defendants Lewis Tein's involvement because their bills began to "follow the same pattern as Michael Diaz in terms of how high they were getting." Rule 11 Hr'g Tr. Vol. 5, 54-55, June 17, 2014. However, there is an absence of testimony that Hernandez told Roman that he knew Defendants Lewis Tein were involved in a kickback scheme with former Chairman Cypress.

> A.  I asked him [Hernandez] whether this -- you know, did he believe this was a kickback scheme.
>
> **Q.  And what did Mr. Hernandez say?**
>
> A.  He just laughed and did not give me an answer. And when I pressed him, he just laughed.

*Id.* A laugh is insufficient – or patently frivolous – evidence on which to base an allegation of a kickback scheme. Moreover, Hernandez, himself a defendant in this action, never came before the Court to testify that he provided Roman with any of the evidence that is being used against him.

The evidence on which the Tribe bases its claims against Defendant Lehtinen is equally precarious. The Tribe consistently proffered that there exist audio recordings on which Defendant Lehtinen falsely represented that a tax reserve account was created. Between November 2004 when Cypress announced the Reserve B account, through May 2010 when Defendant Lehtinen was terminated as the Tribe's counsel, there were 23 General Council meetings, which were all recorded. Only 13 of these audio recordings were ever produced. While transcripts of the majority of the relevant Council Meetings were produced, they do not support the Tribe's assertion that Defendant Lehtinen falsely made such statements. In fact, the transcripts of the recordings show that Cypress identified the tax reserve account as the Reserve B account. They also show that the amount in the Reserve B account grew to approximately $19.5 million at one time.

The Tribe did produce a witness, Teresa Willie, who testified that she recalled Defendant Lehtinen made false statements about the existence of the account. *See* Rule 11 Hr'g Tr. 84-85, June 26, 2014, ECF No. 392. Ms. Willie testified that she specifically recalled Defendant Lehtinen referencing a tax reserve account that contains millions.

As to its allegations against Defendant Lehtinen regarding disclosures to the IRS, the recordings of the meetings during which the proposal to explain financial records to the IRS are missing. Given the Tribe's assertion that Defendant Lehtinen disclosed documents and information to the IRS without the Tribe's knowledge and consent, these recordings are vital to sustain the reasonableness of including this allegation. Also, the evidence demonstrates that the IRS already had received the disbursement information from a source other than Defendant Lehtinen. Plaintiff and its counsel produced no evidence of any prior inquiry that was undertaken to support the allegation that Defendant Lehtinen made any disclosures without the Tribe's knowledge and consent.

Moreover, the Tribe presented no evidence that Lehtinen would have known about and ever seen the expenditures Cypress made on the Morgan Stanley credit card.

### D.    Rule 11 Sanctions Motions

Because Defendants contend the above was not considered, or wholly disregarded, when Plaintiff sought to file its pleadings in this action, Defendants Lewis Tein and Defendant Lehtinen filed their respective motions for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure seeking various relief, including money damages and

referral to the United States Attorney for investigation into the Tribe's and Roman's alleged acts of obstructing justice, filing a false affidavit, and attempting to suborn perjury and commission of perjury before this Court.[1] *See* Def. Post-Hrg. Supp. Brief at 1, ECF No. 395.

## SANCTIONING AUTHORITY

The power to sanction the attorneys and parties in this matter derives from three[2] distinct sources, each of which possesses different requirements and permits separate

---

[1] Jodie Goldenberg testified that when she refused to provide favorable deposition testimony in alignment with Roman's theory of the case, Roman was instrumental in having her terminated days before her scheduled deposition. Rule 11 Hr'g Tr. Vol. 4, 123-124, June 10, 2014. It is for this behavior that Defendants Lewis Tein seek a referral of the Tribe and Roman to the U.S. Attorney's Office for suborning perjury.

[2] Defendant Lehtinen also seeks sanctions, pursuant to Federal Rule of Civil Procedure 37(b), in the form of striking Plaintiff's claims concerning the General Council proceedings, contempt, and attorney's fees and costs, based upon Plaintiff's failure to provide the audio recordings of General Council meetings as ordered by Magistrate Judge Chris M. McAliley and this Court. Because Plaintiff and Lewis Tein also seeks dismissal pursuant to Federal Rule and Rule Proc. Rule 37(b) in the form of striking Plaintiff's claims concerning the General Council proceedings, contempt, and attorney's fees and costs, based upon Plaintiff's failure to provide the audio recordings of General Council meetings as ordered by Magistrate Judge Chris M. McAliley and this Court. Because Plaintiff's claims have been dismissed based on lack of jurisdiction, and Rule 11, 28 U.S.C. § 1927, and this Court's inherent powers are capable of addressing any other sanctionable conduct by Plaintiff and its counsel for which the audio recordings of the General Council proceedings are germane, I will not evaluate Defendant's motion for discovery sanctions.

Likewise, I do not consider Defendants Lewis Tein's basis for sanctions pursuant to Section 57.105 of the Florida Statutes, which states in pertinent part,

> Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
>
> (a) Was not supported by the material facts necessary to establish the claim or defense; or
>
> (b) Would not be supported by the application of then-existing law to those material facts.

Fla. Stat. § 57.105. Sanctions awarded pursuant to § 57.105 are predicated upon there being a prevailing party; this case has had none. *See Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199, 1205-06 (11th Cir. 2012) (finding no prevailing party where court granted a motion to dismiss for lack of subject matter jurisdiction and did not award a judgment); *see also Wendy's Int'l, Inc. v. Nu-Cape Const., Inc.*, 169 F.R.D. 680, 688 (M.D. Fla. 1996) ("[I]n order to receive attorney fees and costs under F.S. 57.105, two criterion must be met. First, the party must demonstrate to the court that he

sanctions. The three sources, all of which are implicated here, are Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and this Court's inherent authority.

## A.    Rule 11

"Rule 11 sanctions are properly assessed '(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.'" *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). "The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).

"In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995) (citing *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1563 (11th Cir. 1992)). "Accordingly, the court's inquiry focuses only on the merits of the pleading gleaned from facts and law known or available to the attorney at the time of filing." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694-95 (11th Cir. 1995). "If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995).

"A factual claim is defined as frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only patently frivolous evidence is offered to support factual contentions, sanctions can be imposed." *Lawson v. Sec'y Dep't of Corr.*, 563 F. App'x 678, 680 (11th Cir. 2014). "When, however, the evidence supporting a claim is reasonable, but only weak or selfserving, sanctions cannot be imposed." *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 2d

---

or she is a prevailing party (or rather that he or she succeeded on some significant issue in the litigation or was granted relief on the merits of the claim), and second, there must be a complete lack of justiciable issue of fact or law.").

1299, 1308 (S.D. Fla. 2011) *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 503 F. App'x 677 (11th Cir. 2012).

Plaintiff vehemently argues that monetary sanctions imposed under Rule 11 are generally disfavored as being contra to the intended purpose of Rule 11: deterrence as opposed to compensation. However, "[i]f warranted for effective deterrence, an appropriate sanction may include 'an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a result of the Rule 11 violation." *Massengale v. Ray*, 267 F.3d 1298, 1301-02 (11th Cir. 2001) (citing Fed. R. Civ. P. 11(c)(2)). "Also, 'sanctions may be imposed for the purpose of deterrence, *compensation and punishment*.'" *Id.* (quoting *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1334 (11th Cir. 1992) (emphasis supplied)); *see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 636 (11th Cir. 2010) ("If a complaint substantially fails to comply with Rule 11(b), the presumptive sanction is attorneys' fees and expenses.").

Plaintiff and its counsel are correct that Rule 11 imposes certain procedural requirements – for their attendant safeguards – that specify that a motion for sanctions be made separately from any other motion, and that the motion be served on the opposing party twenty-one days before filing it. Fed. R. Civ. P. 11(c)(2); *see also Diamonds.net LLC v. Idex Online, Ltd.,* 254 F.R.D. 475 (S.D.N.Y. 2008) (concluding that movants were not entitled to sanctions against plaintiff for filing allegedly frivolous patent infringement claim since movants failed to comply with Rule 11's procedural requirements mandating that motion for sanctions be made separately from any other motion, and that motion be served on the opposing party twenty-one days before it was filed with the court).

**B.     28 U.S.C. § 1927**

Statutorily, counsel is liable for any excessive costs he induces the opposing party to incur. *See* 28 U.S.C. § 1927. Section 1927 states

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "[T] this section is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).

Rather, "[t]o justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable *and* vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (emphasis in original). "Sanctions are not warranted, however, simply because counsel's performance did not rise to the highest standards of the profession." *Smith v. Grand Bank & Trust of Florida*, 193 F. App'x 833, 836 (11th Cir. 2006) (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)). Therefore, something more than a lack of merit is required; "'[b]ad faith' is the touchstone." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). Bad faith is present "where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).

Moreover, even if counsel's conduct was in bad faith, sanctions are not warranted unless the conduct also multiplied the litigation. *Smith v. Grand Bank & Trust of Florida*, 193 F. App'x 833, 838 (11th Cir. 2006). "Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001); *LaSalle Nat'l Bank v. First Conn. Holding Group, LLC*, 287 F.3d 279, 288 (3d Cir. 2002) (stating that sanctions under 28 U.S.C. § 1927 "are intended to deter an attorney from *intentionally* and unnecessarily delaying judicial proceedings" (emphasis in original))).

## C.    Inherent Authority

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L. Ed. 242 (1821). Accordingly, "it is firmly established that the power to punish for contempts is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (internal quotation marks omitted). "The imposition of sanctions [when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons] transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more

14

drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

"The inherent power 'is both broader and narrower than other means of imposing sanctions.' While the other sanction mechanisms only reach certain individuals or conduct, 'the inherent power extends to a full range of litigation abuses' and 'must continue to exist to fill in the interstices.'" *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, (1991)). Jurists are cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

A court's inherent powers to sanction allow it to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted). Thus, "[t]he key to unlocking a court's inherent power is a finding of bad faith. When considering sanctions under the court's inherent power, the threshold of bad faith conduct 'is at least as high as the threshold of bad faith conduct for sanctions under § 1927.'" *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010) (internal citation omitted) (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1252 (11th Cir. 2007)).

## DISCUSSION

### A.   The Defendants' Rule 11 Sanctions Motion is Properly Considered.

#### 1.   This Court Retains Jurisdiction to Rule on Sanctions Motion as a Collateral Issue.

Following the dismissal of this matter for lack of subject matter jurisdiction, I retained jurisdiction over this matter particularly to decide the pending Rule 11 motions for sanctions. This, I am permitted to do. *See Jackson v. Cintas Corp.*, 425 F.3d 1313, 1316 (11th Cir. 2005) (holding that district court retained jurisdiction to decide employer's motion for Rule 11 sanctions notwithstanding district court's order dismissing former employee's civil rights action and compelling her to arbitrate her claims because the sanctions issue was collateral to merits).

*Massengale v. Ray*, 267 F.3d 1298 (11th Cir. 2001), with similar procedural facts to the instant matter, is instructive on this issue. In *Massengale*, although the district court dismissed Massengale's action with prejudice, it nevertheless opted to consider Kolner's Rule 11 motion for sanctions given that following the dismissal of the action, Kolner filed a motion to reinstate his Rule 11 motion for sanctions, asserting it had remained pending after the district court's reversal of the magistrate judge's report. *Massengale*, 267 F.3d at 1301. The district court agreed and reinstated the Rule 11 sanctions motion because Kolner's motion was based on conduct that occurred prior to the dismissal of the complaint, and the motion warranted review. *Id.* Similar considerations are present here, demonstrating that sanctions can be imposed prior to, or even without, a determination on the merits of the underlying claims.

In ruling upon Defendants' motions for sanctions, I do not confuse the "issue whether a determination of the overall objective frivolity of a claim must be made to sustain a Rule 11 sanction . . . with the issue whether a district court has jurisdiction to decide a Rule 11 motion without there having been a final determination on the merits." Final Written Submission Pl. at 6, ECF No. 396. At this stage, my sole task is to determine the overall objective frivolity of Plaintiff's claims *in light of the facts known to counsel at the time he signed the pleading. Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995). In other words, if sufficient facts do not, and did not, exist on which to base Plaintiff's claim, the claims themselves are objectively frivolous. In this manner, I must evaluate whether Plaintiff and its counsel filed a pleading that has no reasonable factual basis or filed a pleading in bad faith for an improper purpose. Consequently, I wholly reject Plaintiff and its counsel's contention that "[b]ecause the first step addresses objective frivolousness *under the facts – not the facts known pre-suit –* the determination must include consideration of all evidence through trial." Final Written Submission Pl. at 6 (emphasis added).

It is not my charge, at this stage, to determine the propriety of Plaintiff's claims in terms of Defendants' liability. Because this Court lacks subject matter jurisdiction over the underlying claims, I am forbidden from rendering such a ruling. This distinction, too, must be observed. Once observed, it is clear that I can evaluate the evidence presented to determine if any pre-suit investigation was undertaken and how counsel utilized the facts uncovered to inform him in initiating this suit.

### 2.   Ruling on Sanctions Motion Is Not a Due Process Violation

Plaintiff and its counsel argue that the granting of Lewis Tein's Sanctions Motion would violate their due process rights under Rule 11, and therefore, must be denied. Specifically, Plaintiff argues that Defendants Lewis Tein's Motion violates (1) Rule 11's requirement to include a specific description of the offending behavior, (2) Rule 11's requirement to bring the motion for sanctions as a separate motion, and (3) Local Rule 7.1(a)(3)'s requirement to conduct a pre-filing conference with opposing counsel. *See* Final Written Submission Pl. at 10-12, ECF No. 396. Plaintiff and its counsel argue that Defendant Lehtinen's Rule 11 Sanctions Motion also should be denied because his motion violates (2) Rule 11's requirement to bring the motion for sanctions as a separate motion, and (3) Local Rule 7.1(a)(3)'s requirement to conduct a pre-filing conference with opposing counsel. *See* Final Written Submission Pl. at 15.

#### a.   *Specific Description*

Plaintiff further complains that the Sanctions Motions fail to set forth specifically the conduct alleged to have violated Rule 11. However, a review of the Defendants' motions for sanctions show that they directly identify the offending action, namely Plaintiff and its counsel's drafting the First Amended Complaint and Second Amended Complaint to include allegations where the factual bases are without merit. Moreover, Defendants Lewis Tein's Motion to Supplement the Record (ECF No. 286), which is being considered with the original motion as is customary with supplemental information, provides Plaintiff and its counsel with additional grounds Defendants Lewis Tein contend are sanctionable.

This requirement's purpose, along with the others Plaintiff and its counsel have identified that will be discussed *supra*, is to afford the party threatened with sanctions adequate notice of the alleged wrongful conduct. Where this purpose is met, sanctions may issue.

#### b.   *Separate Motion*

Plaintiff and its counsel contend that all events occurring after August 15, 2012 – the date Defendants Lewis Tein served its Rule 11 motion for sanctions on the Tribe's counsel – are not subject to sanctions because Rule 11's safe harbor provision would prohibit such sanctions. Plaintiff and its counsel contend that because the safe harbor period resets with each amended pleading, *see Lawrence v. Richman Grp. of CT LLC*, 620 F. 3d 153, 158 (2d Cir.

2010), Lewis Tein needed to resend a safe-harbor letter and re-file its Motion for Sanctions following the filing of the Second Amended Complaint since the evidence Lewis Tein presented to support an award of sanctions was directed at the allegations in the Second Amended Complaint. This did not occur, and therefore, so says Plaintiff and its counsel, the procedural requirements of Rule 11 have not been satisfied.

To the contrary, the record reveals that this contention is misguided and sanctions can be rightfully imposed based on allegations contained in the Second Amended Complaint. Sanctions are sought in this matter based, in part, upon Plaintiff and its counsel's filing of pleadings – the First and Second Amended Complaints – that have no reasonable factual basis – the first category of sanctionable conduct under Rule 11. "With regard to the first category of cases, [the Eleventh Circuit] noted in *Donaldson* that 'Rule 11 alone should constitute sufficient notice of the attorney's responsibilities since the rule explicitly requires the attorney to certify that a complaint is well grounded in fact." *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 383 (11th Cir. 1992) (quoting *Donaldson*, 819 F.2d at 1560) (rejecting counsel's argument that his due process rights were violated in that he received inadequate notice of the hearing on the Rule 11 motion). "Indeed, while relying on the language just quoted, [the Eleventh Circuit] later stated that '[i]f the district court, therefore, properly found that the appellants' claims lacked any factual basis, then it had no obligation to afford the appellants the procedural safeguards of notice and an opportunity to be heard." *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 383 (11th Cir. 1992) (quoting *Davis v. Carl*, 906 F.2d 533, 535–36 (11th Cir. 1990)).

Nevertheless, Plaintiff and its counsel have been afforded ample notice and had an opportunity to be heard. Indeed, the Tribe and its counsel have been on notice that a claim for Rule 11 sanctions had been lodged against them and the Court had taken the matter under consideration since the dismissal of the underlying case for lack of subject matter jurisdiction. This notice was buttressed by the Order permitting Lewis Tein to supplement the record for the Motion for Sanctions. The supplementation contained information solely addressed at the allegations arising in the Second Amended Complaint.

Plaintiff and its counsel assert that Defendants Lewis Tein's Motion to Supplement (ECF No. 286) does not cure their failure to amend and re-serve the motion for sanctions. Their protest against the legitimacy of the Motion to Supplement concerns their perceived

lack of notice and an opportunity to withdraw, which, undisputedly, are the procedural concerns associated with Rule 11 sanctions. *See In re Sunshine Jr. Stores, Inc.,* 456 F.3d 1291, 1307 (11th Cir. 2006) ("The party subject to sanctions must be afforded the opportunity to justify its actions either orally or in writing."); *Ford v. Strange*, 580 F. App'x 701,714 (11th Cir. 2014) (Plaintiffs' counsel had been given notice and opportunity to respond either verbally or in writing, and thus district court's imposition of sanctions did not violate his due process rights, where defendant provided plaintiffs' counsel with written notice of his intent to seek sanctions, he later filed written motion for sanctions and served it on plaintiffs' counsel, and plaintiffs' counsel filed written response in opposition and did not request hearing or any other additional process).

Here, however, both are present with regard to the Second Amended Complaint. The Tribe and its counsel had continuous notice that sanctions are threatened based on the allegations in its complaint. Rather than departing from the allegations in the face of the motion for sanctions and withdrawing the complaint, or toning down the accusations, the Tribe doubled-down, including more salacious and astonishing allegations in the Second Amended Complaint. Therefore, the Tribe cannot now cry foul that it was blindsided by the prospect that the targets of its accusations are seeking, and have sought, sanctions.

Assuming, *arguendo*, that Plaintiff's argument is correct and the procedural hurdles of Rule 11 have not been cleared with regard to Defendants Lewis Tein's Rule 11 motion for sanctions, I nevertheless have the power to sanction the Tribe and its counsel under 28 U.S.C. § 1927 and this Court's inherent power, which, as noted *supra*, are not burdened by Rule 11's safe-harbor provision.

It is undisputed that Defendant Lehtinen's Rule 11 Sanctions Motion was filed subsequent to the Second Amended Complaint, and is directed at the Second Amended Complaint. Consequently, with regard to this issue, there is no dispute that Defendant Lehtinen's Rule 11 Sanctions Motion is properly before this Court and ripe for adjudication.

   *c.   Pre-filing Conference*

Lastly, Plaintiff asserts that Defendants' Sanctions Motions should be denied because of defense counsel's failure to comply with Local Rule 7.1(a)(3), which requires a pre-filing conference between counsel regarding any motion – except a limited few inapplicable here. The motions that do not require the pre-filing conference - motions for summary judgment,

to dismiss, and others – share the similar trait of being those where the court can surmise that no agreement can be had despite good faith efforts to confer. Similarly, a motion seeking to impose Rule 11 sanctions against counsel and a party possesses this trait. Moreover, inherent in Rule 11 is consultation between the parties because of the 21-day safe harbor procedure that demands correspondence with the potentially offending party prior to the filing of the Rule 11 motion with the Court.

Beyond the fact that the pre-filing conference would have been futile here, a district court possesses the inherent discretion to excuse or overlook non-compliance with certain of the Local Rules for good cause and where justice requires. *See Fils v. City of Aventura*, 647 F.3d 1272, 1283 (11th Cir. 2011).

Importantly, however, this argument fails because contrary to Plaintiff and its counsel's assertion, Defendants Lewis Tein did, indeed, conduct a pre-filing conference with Roman in accordance with Local Rule 7.1(a)(3). *See* Defs.' Mot. Sanctions at 1, ECF No. 38 ("Pursuant to Local Rule 7.1(a)(3), undersigned counsel has conferred with Bernardo Roman, III, counsel for Plaintiff, and is authorized to represent that the Plaintiff objects to the relief sought under Rule 11 as set forth in the attached Motion.").

### B. Plaintiff and Its Counsel Warrant Sanctions for Filing the Second Amended Complaint and the Litigation that Ensued Thereafter.

As detailed above, at the time Roman filed the Tribe's Second Amended Complaint in this Court on November 9, 2012, Roman knew or should have known that he had no reasonable evidentiary basis for the averments in the Second Amended Complaint because there was either no evidence or only patently frivolous evidence to support the factual contentions.

1. Defendants Lewis Tein

The evidence elicited shows that Roman knew or should have known:

- Defendants Lewis Tein did not establish their law firm for the sole purpose of defrauding the tribe;

- A loan was issued to the Berts to fund their legal defense in the *Bermudez* matter, regardless of whether there was adherence to the Tribe's policies and procedures;

- The Berts noted that it was "ok to pay" each of Defendants Lewis Tein's legal bills;

- Defendants Lewis Tein never provided any funds to former Chairman Cypress;

20

- No professional auditor found anything nefarious with the Tribe's accounting as it relates to Defendants Lewis Tein.

These are material facts that directly undermine several allegations contained in the Second Amended Complaint.

Notwithstanding the procedural deficiencies Plaintiff and its counsel contend prevent the imposition of sanctions, Plaintiff and its counsel also submit that, substantively, Defendants' Lewis Tein's motion for sanctions must fail because "the evidence shows that at the time the Complaint, [Amended Complaint] and [Second Amended Complaint] were signed, Plaintiff and its counsel had sufficient information to satisfy that test" – that "the facts known at the time the pleading[s] [were] signed were sufficient to permit a reasonable attorney to infer that the allegations had evidentiary support, or, after discovery, would have evidentiary support." Final Written Submission Pl.'s at 13 (citing Fed. R. Civ. P. 11(b)(3)). The above shows that Plaintiff and its counsel's argument is untenable.

2.  Defendant Lehtinen

Plaintiff and its counsel also argue that Defendant Lehtinen's Rule 11 motion for sanctions fails on its merits "because the evidence showed that Plaintiff and its counsel had evidence of each of [Defendant Lehtinen's alleged violations] at the time the [Second Amended Complaint] was filed." Final Written Submission Pl.'s at 16. Again, the evidence adduced leaves this argument ringing hollow.

The audio recordings that the Tribe contends demonstrate Defendant Lehtinen falsely represented that a tax reserve account was created were never produced. The transcripts of the audio recordings do not show that Defendant Lehtinen made such statements. While Teresa Willie testified that she recalled Defendant Lehtinen made such statements, her testimony is insufficient to protect Roman and the Tribe from sanctions because she was not consulted about Defendant Lehtinen's statements *prior* to the filing of the Second Amended Complaint and because the transcripts of the General Council meetings discredit her testimony.

Likewise, the Tribe and its counsel produced no evidence that Defendant Lehtinen was aware of, endorsed, and failed to disclose any of former Chairman Cypress' spending via the Morgan Stanley credit card. Further, they produced no evidence to contradict that the IRS already had received the disbursement information for which the Tribe assigns

blame to Defendant Lehtinen for disclosing. Importantly, there was no evidence of any prior inquiry undertaken to support the allegation that Defendant Lehtinen made IRS disclosures without the Tribe's knowledge and consent.

"Rule 11 'stresses the need for some prefiling inquiry. . . .'" *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992) (quoting *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987) (en banc)). The failure to investigate the merits of the law and facts of one's case prior to filing a complaint has "constitute[d] reckless behavior sufficient to rise to the level of bad faith." *Smith v. Grand Bank & Trust of Florida*, 193 F. App'x 833, 837 (11th Cir. 2006) (upholding the imposition of sanctions against counsel where an investigation into the law or facts of the case would have revealed that the complaint lacked merit). Therefore, where here, the filing of the Second Amended Complaint occurred after having conducted an investigation that led to results *differing* from that alleged in the Second Amended Complaint, Roman willfully abused the judicial process by conduct tantamount to bad faith sufficient to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and this Court's inherent authority. *See e.g.*, *Footman v. Cheung*, 139 F. App'x 144, 146 (11th Cir. 2005) ("Throughout the litigation, Ollinger demonstrated a consistent pattern of reckless, unprofessional, and unethical conduct including *filing an amended complaint that contained false and unsupported allegations*, filing interrogatory answers that contradicted allegations in the amended complaint, submitting multiple unsworn and un-notarized versions of answers to court interrogatories that purported to be sworn and notarized, and filing a frivolous motion to disqualify the district court judge."). Roman's argument that the suspicions he had were buttressed by a mere few, assailable facts is simply indefensible. *You simply cannot make a silk purse out of a sow's ear.*

Plaintiff is correct that Rule 11's purpose is not to redress personal wrongs or to "clear the name" of a party disparaged by a false allegation, but the purpose is to prevent wayward and emboldened parties and counsel from instituting such frivolous litigation. Thus, while Plaintiff and its counsel vigorously argue that compensation should not be awarded to redress the wrongs done to Defendants, they do not proffer any reason why compensation would not deter them from asserting such baseless allegations in the future. The history of this action, along with the attendant state actions prior and subsequent to the instant matter, indicate that a sizeable monetary sanction, in addition to the non-monetary

sanction of recommendation to the Florida Bar for ethical violations, may be the only deterrence that resonates with Plaintiff and its counsel.

Roman's failure to investigate, or rely upon the facts revealed in his investigation, are inexcusable and merit sanctioning, especially given that there is no justifiable reason for an ignorant filing. *See Mike Ousley Prods., Inc. v. WJBF-TV,* 952 F.2d 380, 383 (11th Cir. 1992) (upholding the imposition of Rule 11 sanctions where counsel "does not claim that he lacked the time to investigate the facts; he was not forced to rely solely on his client, because he could have contacted the two men from whom his client claimed to have received information; and he did not depend on another lawyer"). It cannot be ignored that in this instance, Roman's conduct severely multiplied the litigation, costing both parties significant sums in pursuing discovery and other litigation tools. *See* John Pacenti, *Lewis Tein's Defense Tab Against Miccosukees Tops $1 million,* Daily Business Review, June 5, 2013, http://www.dailybusinessreview.com/id=1202602842299?. "Because [Roman] knowingly or recklessly pursued a frivolous claim based on false and unsupported allegations, [I do] not abuse [my] discretion by imposing sanctions against him pursuant to Rule 11 and 28 U.S.C. § 1927." *Footman v. Cheung,* 139 F. App'x 144, 146 (11th Cir. 2005).

### C.   Yesenia Lara and Yinet Pino Will Not be Sanctioned

Defendants Lewis Tein and Lehtinen urge that Roman, the Law Offices of Bernardo Roman III, and the Tribe, along with Yesenia Lara and Yinet Pino deserve to be sanctioned for their role in asserting the allegations in the Second Amended Complaint and pursuing litigation with regard to them. Specifically, the Defendants contend that because all of the attorneys signed the pleading, participated in discovery, and argued before this Court concerning discovery issues, the dismissal of the underlying claims, and the Rule 11 Sanctions Motion, they all should be liable. Further, the Defendants argue that the Tribe should be sanctioned because its records contradict the allegations contained in the Second Amended Complaint and it permitted the Second Amended Complaint to be filed notwithstanding the blatant contradictions. I concur in the conclusion that Roman, the Law Offices of Bernardo Roman III, and the Tribe merit sanctioning, but depart from this determination where Yesenia Lara and Yinet Pino are involved.

The sanction, if any, "should be imposed on the persons – whether attorneys, law firms, or parties – who have violated the rule or who may be determined to be responsible

for the violation." Fed. R. Civ. P. 11 Adv. Cmmttee Cmt. I am well aware of and understand the hierarchy of a civil litigation firm and the distribution of labor and control between the partners and the associates who work within them. While associates are equally liable for their unethical actions as the partners they serve, they are generally mere executors of the orders delivered by the partners, and not as knowledgeable of and integral to the pre-suit investigation that must occur. The evidence in this matter proves this custom an accurate description of the working relationship between Roman, Lara, and Pino. Lara and Pino were not responsible for deciding whether or not to withdraw any pleading and worked primarily as legal researchers and drafters. While they vigorously argued several motions in this Court, it remained at the behest of Roman and in accordance with their duties as associates of The Roman Law firm to advocate on behalf of their client. There is simply insufficient evidence on which to rule that Lara and Pino were "responsible for the violation."

Lara and Pino did not conduct any pre-suit investigation required by Rule 11 because they reasonably believed that Roman had, and relied upon his representations to vigorously litigate the matter. That Lara and Pino did not testify to these facts on their on behalf does not diminish the weight of the evidence demonstrating that their participation in the ligation was at the behest of their partner and boss, and that they otherwise lacked the bad faith necessary to impose sanctions under 28 U.S.C. § 1927 and this Court's inherent powers.

**D.**     **Attorney's Fees to Defendant Lehtinen as *Pro Se* Litigant**

Defendant Lehtinen advocates for a measure of sanctions to be levied that would compensate him (1) for his loss of income for work performed in assisting his attorney with his defense, and (2) for later serving as his own counsel in his defense.

The Eleventh Circuit has previously considered whether, as a Rule 11 sanction, a district court could award attorney's fees to a *pro se* litigant who is also a lawyer. *Massengale v. Ray*, 267 F.3d 1298 (11th Cir. 2001). In *Massengale*, the district court imposed, pursuant to Rule 11, an attorney's fees award of $25,000 in sanctions to a *pro se* defendant, who also is a lawyer, based on the value of attorney's fees the *pro se* defendant incurred in defending the suit. *Id.* at 1299. The Eleventh Circuit vacated the district court's award of fees, reasoning that "[b]ecause a party proceeding *pro se* cannot have incurred attorney's fees as an expense,

a district court cannot order a violating party to pay a *pro se* litigant a reasonable attorney's fee as part of a sanction." *Id.* at 1302-03. In so holding, the Eleventh Circuit reiterated its prior observation that:

> The word "attorney" generally assumes some kind of agency (that is, attorney/client) relationship. The fees a lawyer might charge himself are not, strictly speaking, "attorney's fees." And, where a lawyer represents himself, legal fees are not truly a "cost" of litigation—no independent lawyer has been hired (or must be paid) to pursue the ... complaint.

*Id.* at 1303 (quoting Ray v. U.S. Dep't of Justice, 87 F.3d 1250, 1251 n.2 (11th Cir. 1996)). I am bound to conclude accordingly. To do otherwise would "violate[] the plain language of Rule 11, and . . . abuse[ my] discretion in imposing [the sanction]." *Id.*

Most every defendant incurs a loss of income given the time he expends for his defense away from his trade or craft. That Defendant Lehtinen's trade is in the law does not make him more entitled to this loss of income while assisting in his defense as a measure of attorney's fees. Additionally, when Defendant Lehtinen opted to proceed *pro se* and terminate representation by counsel, he discontinued incurring attorney's fees under Eleventh Circuit precedent. Therefore, he cannot recover the reasonable value of his time and loss of income, despite being an attorney. While I am sympathetic to Defendant Lehtinen's argument that the time and resources expended on defending himself in this suit were unable to be utilized in another action that could have garnered fees, the opportunity cost of defending oneself in litigation is simply not a recognized measure of attorney's fees under the Rule 11 algorithm.

## CONCLUSION

The oft-quoted adage, "a man who represents himself has a fool for a client," is particularly wise because it recognizes the beneficial nature of having an objective advocate. The role of an attorney is to ensure that the best legal interests of his or her clients are being served. Often, a client's best legal interests are inconsistent with the client's driving emotions. Therefore, the attorney should take great care to remain objective and quell any emotions that would be detrimental to the client's interest. The Tribe did not have such an attorney in Bernardo Roman, III. Consequently, this litigation ensued without the proper and necessary objective preliminary investigation.

For the aforementioned reasons, it is hereby **ORDERED and ADJUGDED** that Defendant Lewis Tein's Motion for Rule 11 Sanctions and Defendant Dexter Lehtinen's Motion for Rule 11 Sanctions are **GRANTED in part and DENIED in part**. Plaintiff Miccosukee Tribe of Indians of Florida, Counsel Bernardo Roman, Esq., and the Law Offices of Bernardo Roman III are **SANCTIONED** in the amount of $975,750.00 owing to Lewis Tein and in the amount of $95,640.00 owing to Dexter Lehtinen, which represent the attorney's fees and costs incurred in this matter, including those accrued for bringing and prosecuting the sanctions motions. *See Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1298 (11th Cir. 2010) ("[A] district court may include costs arising from the sanctions proceedings in the sanctions award."); *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 383-84 (11th Cir. 1992) ("This Court has clearly held that a party can collect the expense of pursuing a Rule 11 claim.").

I recognize the monetary sanctions imposed are sizable. However, considering that upon a finding that a party filed a pleading that has no reasonable factual basis, which unreasonably and vexatiously multiplied the proceeding, an appropriate sanction may be the compensation of attorney's fees incurred in combating the wrongful conduct. Here, the wrongful conduct is the filing of the complaints with no reasonable factual basis to support their allegations. Following a review of the Lewis Tein's Sealed Statement of Attorney's Fees (ECF No. 400, SEALED) and Defendant Lehtinen's Filing of Legal Fees and Expenses Pursuant to Court Order (ECF No. 404, SEALED), it is difficult to parse out – given the sweeping nature of the Tribe's allegations, i.e. Defendants Lewis Tein created their law firm "for the main purpose of advancing and perfecting the plundering of the Miccosukee Tribe," Defendants Lewis Tein devised a money laundering/kickback scheme whereby Defendants Lewis Tein "would charge exorbitant fees for fictitious, unnecessary, inflated, substandard and exaggerated legal work to funnel a part thereof to Defendant Cypress," and Defendant Lehtinen "through a pattern of criminal activity. . .maintained control of the affairs of the [Tribe] . . . resulting in a loss of millions of dollars" – which, if any, of the legal fees incurred were not warranted by the allegations.

IT IS FURTHER **ORDERED and ADJUDGED** that this matter is **REFERRED** to the Florida Bar and the Southern District of Florida professional committee for investigation and appropriate disciplinary action. I understand Defendants' frustration given

the aforementioned circumstances; however, I decline the invitation to refer Roman to the United States Attorney's Office for inquiry into whether he should be criminally charged with any violations of the law. His behavior is egregious and abhorrent, but I will not interfere with the determination of whether it constitutes criminality.

     **DONE and ORDERED** in Chambers at Miami, Florida this 16th day of January 2015.

_Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Chris M. McAliley, U.S. Magistrate Judge*
*Counsel of record*